FILED

MAY - 8 2007
MAY 8, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Barry Gilfand, Aaron Gilfand, Adam Mastrucci and Scott Lowrance, )<br><br>Plaintiffs, )<br><br>v. )<br><br>Sgt. Jeffery Planey, Officer Gregory Barnes, )<br>Officer Demetrios Kereakes, Officer )<br>Vincent Matthews, Officer Matias Padilla, )<br>Officer Paul Powers, Sgt. Dale Kingsley, )<br>Officer Kenneth Carlyon, Officer Frederick )<br>Collins, Officer Christopher Lindahl, )<br>Officer Nicole Mayoski, Officer Ana Pina, )<br>Probationary Officer Donald Lupo, )<br>Probationary Officer Gregory Morabito, )<br>Probationary Officer Sarah Zarcone; and )<br>The City of Chicago, a municipal )<br>corporation, )<br><br>Defendants. ) | **07CV2566**<br>**JUDGE LEINENWEBER**<br>**MAG. JUDGE KEYS** |

## COMPLAINT

NOW COME the plaintiffs, Barry Gilfand, Aaron Gilfand, Adam Mastrucci and

Scott Lowrance ("plaintiffs"), by and through their attorneys, Loftus and Saltzberg, P.C.

and Steven H. Fine, complaining of the defendants Jeffery Planey, Gregory Barnes,

Demetrios Kereakes, Vincent Matthews, Matias Padilla, Paul Powers, Dale Kingsley,

Kenneth Carlyon, Frederick Collins, Christopher Lindahl, Nicole Mayoski, Ana Pina,

Donald Lupo, Gregory Morabito and Sarah Zarcone (collectively, the "officer

defendants"), and the City of Chicago, a municipal corporation (the "City") as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, Title 42, U.S.C. §§1983 and 2000e. Supplemental jurisdiction arises pursuant to 28 U.S.C. §§1331 and 1343(a).

2.      Venue is proper, pursuant to 28 U.S.C. §1391 in as much as the defendants reside or are located in the Northern District of Illinois and the plaintiffs reside in the Northern District of Illinois, and all of the acts and damages complained of herein occurred in the Northern District of Illinois.

## PARTIES

3.      Plaintiffs Barry Gilfand, Aaron Gilfand, Adam Mastrucci and Scott Lowrance are citizens of the United States and residents of the State of Illinois.

4.      Defendants Jeffery Planey, Gregory Barnes, Demetrios Kereakes, Vincent Matthews, Matias Padilla, Paul Powers, Dale Kingsley, Kenneth Carlyon, Frederick Collins, Christopher Lindahl, Nicole Mayoski, Ana Pina, Donald Lupo, Gregory Morabito and Sarah Zarcone were, at all relevant times, employed by the City of Chicago as sworn police officers. Defendants Gregory Barnes, Demetrios Kereakes, Vincent Matthews, Matias Padilla, Paul Powers, Kenneth Carlyon, Frederick Collins, Christopher Lindahl, Nicole Mayoski and Ana Pina are patrol officers; Defendants Jeffery Planey and Dale Kingsley are sergeants; Defendants Donald Lupo, Gregory Morabito and Sarah Zarcone are probationary police officers. All of the Chicago Police Officers are sued in their individual capacities.

2

5.      Defendant CITY OF CHICAGO is a municipal corporation of the State of Illinois and is and was, at all relevant times, the employer of the officer defendants. The City of Chicago maintains, manages and/or operates the Chicago Police Department.

## FACTS

6.      On December 15, 2006, plaintiffs were patrons of Jefferson Tap and Grille, located at 323 N. Jefferson Street, in the City of Chicago, County of Cook, State of Illinois.

7.      While finishing a game of billiards, plaintiffs were attacked, without provocation, by six Chicago Police Officers: Sgt. Jeffery Planey, Officer Gregory Barnes, Officer Demetrios Kereakes, Officer Vincent Matthews, Officer Matias Padilla and Officer Paul Powers ("the assaulting officers"), who were also patrons of the establishment.

8.      The assaulting officers had been consuming alcohol prior to the attack.

9.      On information and belief, one or more of the assaulting officers was carrying a firearm during the attack.

10.      During the assault, the officers pulled plaintiffs to the ground from behind, savagely struck plaintiffs repeatedly about their bodies, kicked plaintiffs numerous times while they were collapsed on the ground and in a prone position, slammed certain plaintiffs forcefully against walls and furniture to facilitate hitting them, carried one plaintiff outside to continue the attack and stole one plaintiff's cellular phone, by means of force, to prevent him from calling for assistance. At times, three to four assaulting officers beat one plaintiff simultaneously.

3

11.     Throughout the ordeal, plaintiffs did not struggle or resist the assaulting officers in any way. Plaintiffs repeatedly begged the assaulting officers to stop and asked the assaulting officers why they were beating plaintiffs, but the assaulting officers refused to answer.

12.     Plaintiffs repeatedly held their hands up in the air to indicate that they were not resisting the assault, but the assaulting officers would not stop.

13.     At various times during the course of the beating and after the beating stopped, nine Chicago Police Officers: Sgt. Kingsley, Officer Carlyon, Officer Collins, Officer Lindahl, Officer Mayoski, Officer Pina, PPO Lupo, PPO Morabito and PPO Zarcone ("the responding officers"), responded to the scene. On information and belief, the first responding officers who arrived on the scene included Officers Carlyon, Collins, Mayoski, Pina, Lupo and Morabito, in two marked Chicago Police vehicles and one marked Chicago Police Wagon. One of the plaintiffs approached one of the marked squad cars and begged for help as his attackers were also outside. However, after assaulting officer Sgt. Planey spoke with the responding officers, instead of the responding officers conducting even a cursory investigation, they all immediately left the scene without intervening. In fact, the first group of responding officers were so anxious to leave the scene after speaking with assaulting officer Sgt. Planey, that they slammed their squad car door on one plaintiff's coat while he begged them for help. This event was also captured on the video. The first group of responding officers were so anxious to leave the scene that they literally sped away backwards, up the street, while the attack continued. The first group of responding officers never left their vehicles to discuss the assault with the plaintiffs or with anyone else at Jefferson's. The responding officers did

4

not interview any witnesses, did not speak with plaintiffs and did not even enter the premises. The first group of responding officers did not make a report and did not record any statements from anyone at the scene.

14.     After the attack, defendant responding officers Sgt. Kingsley, Officer Lindahl and PPO Sarah Zarcone came to the scene and were verbally abusive to plaintiffs. They refused to take statements from plaintiffs, failed to interview witnesses, refused to pursue the assaulting officers who had fled the premises and termed the matter a simple bar fight. Responding officers Sgt. Kingsley, Officer Lindahl and PPO Zarcone ignored the obvious severity of the beating.

15.     As a result of the attack, plaintiffs all sustained severe physical injuries including, but not limited to: broken ribs, broken and bruised facial bones, injured vertebrae and spinal discs, injured shoulder and neck, injured elbow, serious damage to the hips, bruises, contusions and scrapes. Some of the injuries are likely to be permanent.

16.     Also as a result of the attack, plaintiffs all sustained severe emotional injuries including, but not limited to, fear of additional attack, fear of retaliation by the defendants, fear of other members of the Chicago Police Department, fear of strangers, humiliation and other emotional injuries.

17.     Security video cameras captured much of the attack on video tape. The Chicago Police Department had access to the tape and to several witnesses, within a few days of the beating.

18.     Within approximately one week of the attack, Chicago Police Officers, not named herein, on information and belief, attempted to intimidate certain plaintiffs by, *inter alia,* approaching one plaintiff's sister and banging on her door for 30 minutes after

5

10:00 at night. Plaintiff and his sister do not have the same last name and plaintiff did not provide his sister's address to the Chicago Police Department. Another unnamed Chicago Police Officer tracked down one of the plaintiffs at his home and demanded that the plaintiff accompany him for an immediate interview by Chicago Police.

19.     On information and belief, not one of the assaulting officers reported the misconduct of any of the other assaulting officers.

20.     Plaintiffs voluntarily gave statements to the Chicago Police Department's Office of Professional Standards ('OPS"). Plaintiffs also gave OPS access to their medical records. OPS assured plaintiffs that it would investigate the matter immediately.

21.     Despite OPS's assurances to the plaintiffs, OPS did not even immediately report the matter to the Cook County State's Attorney Office.

22.     In December, 2006, the Acting Head of OPS even represented that the Superintendent of Police, Philip Cline, was aware of the incident and would act quickly. Despite its assurances and despite the confirming video tape of the incident, OPS failed to take any action against any of the officers for more than three months. During that time, the officer defendants retained their authority as sworn police officers, were allowed to carry their guns and badges and received their Chicago Police paychecks.

23.     On March 23rd, 2007, only after the media exposed the incident, the assaulting officers were stripped of their police authority, but retained their pay. As of today's date, the City of Chicago has still not taken any action against any of the responding officers. On information and belief, as of today's date, all of the officer defendants are still receiving their paychecks as employees of the City of Chicago. OPS has utterly failed to maintain communication with the plaintiffs.

6

24.     As a result of the bad faith investigation of the officer defendants' conduct by the OPS investigators, the complaints and evidence related to plaintiffs' beating were improperly and insufficiently addressed and/or allowed to occur without consequence.

25.     Plaintiffs have been so fearful of additional attempts of retaliation by members of the Chicago Police Department that they have left the City of Chicago, more than once, in an effort to keep safe.

## COUNT I – 42 U.S.C. §1983

### FIRST AMENDMENT/ EXCESSIVE FORCE/EQUAL PROTECTION
### *MONELL* CLAIM
### (Assaulting Officers and the City of Chicago)

26.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

27.     As described in the preceding paragraphs, the conduct of the assaulting officers, acting under color of law and within the scope of their employment, constituted excessive force in violation of the United States Constitution.

28.     The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

29.     The conduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

> a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

7

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiffs;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiffs in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of the assaulting officers;

e.  During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

8

f.   Despite general orders prohibiting police officer misconduct, the
current Superintendent of the Chicago Police Department has testified,
under oath, that CPD's general orders are merely guidelines;

g.   The City of Chicago has negotiated a contract with the police union in
which the City has agreed not to check discipline histories while
conducting internal affairs investigations of officers suspected of
misconduct;

h.   City policymakers are aware of (and condone and facilitate by their
inaction) a "code of silence" in the Chicago Police Department, by
which officers fail to report misconduct committed by other officers,
such as the misconduct at issue in this case;

i.   The City of Chicago and the relevant policymakers have failed to act
to remedy the patterns of abuse described in the preceding sub-
paragraphs, thereby tacitly approving and ratifying the type of
misconduct alleged here;

j.   The City of Chicago acquiesced in a longstanding practice or custom
of failing to discipline officers engaged in illegal conduct from which
the unconstitutional code of silence can be inferred;

k.   The City of Chicago developed and maintained this widespread *de
facto* policy and custom with regard to concealing and/or suppressing
officer misconduct (both on duty and off duty misconduct), including
the use of unlawful force. The concealment and suppression of the
existence of misconduct includes, but is not limited to: failure to

9

sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, and failure to initiate prompt disciplinary procedures related to alleged misconduct; failure to investigate complaints against off-duty officers in the same manner as complaints against citizens, and,

l.   The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians which encouraged the assaulting officers to believe that they could deprive plaintiffs of their Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

30.    As a direct and proximate result of the City of Chicago and the assaulting officers intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiffs have and will suffer lost wages, benefits and entitlements, damage to their careers and reputation, pain, suffering, and humiliation and severe emotional distress and have been deprived of certain rights and privileges as citizens of the United States all in violation of 42 U.S.C. §1983.

WHEREFORE, plaintiffs pray that the Court enter judgment in their favor and against defendants City of Chicago, Sgt. Jeffery Planey, Officer Gregory Barnes, Officer Demetrios Kereakes, Officer Vincent Matthews, Officer Matias Padilla and Officer Paul

10

Powers, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deems appropriate.

### COUNT II – 42 U.S.C. §1983

### DUE PROCESS/FIRST AMENDMENT/ EXCESSIVE FORCE/EQUAL PROTECTION – *MONELL* CLAIM/FAILURE TO INTERVENE (City of Chicago and Responding Officers)

31.    Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

32.    The responding officers did not participate in the brutal attack, but they, acting under color of law and within the scope of their employment, stood by and failed to intervene.

33.    The responding officers who first arrived on the scene were in a position to stop the attack but they failed to do so. Despite the plaintiff's pleas for help, the first responding officers even failed to enter Jefferson's. They did not take statements from any plaintiff, did not speak to witnesses and did not check the interior of Jefferson's where the two other plaintiffs were being attacked. They did not bother to verify Jefferson's license status and they did not speak with Jefferson's personnel. They also did not seek out or interview the individual(s) who had placed the 9-1-1 call. The responding officers who first arrived on the scene and refused to investigate or leave their vehicles were in a position to know that the assaulting officers were engaged in illegal conduct.

34.    The responding officers who first arrived on the scene ignored the plaintiff's pleas for assistance.

11

35.     The responding officers who first arrived on the scene and refused to investigate had a reasonable opportunity to stop the illegal attack, but failed to do so.

36.     The responding officers who arrived after the attack, failed to properly investigate, failed to press charges and failed to even pursue the assaulting officers.

37.     By reason of the responding officers' conduct, all plaintiffs were deprived of rights, privileges and immunities secured to them by the Constitution of the United States and laws enacted thereunder.

38.     The conduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

> a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;
>
> b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiffs;
>
> c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiffs in this Count,

12

yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of the responding officers;

e. During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

f. Despite general orders prohibiting police officer misconduct, the current Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h. City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by

13

which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

i. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j. The City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred;

k. The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct, failure to investigate complaints against off-duty officers in the same manner as complaints against citizens; and,

l. The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by

14

officers against civilians which encouraged the responding officers to believe that they could deprive plaintiffs of their Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

39. As a direct and proximate result of the City of Chicago and the responding officers intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiffs have and will suffer lost wages, benefits and entitlements, damage to their careers and reputation, pain, suffering, and humiliation and severe emotional distress and have been deprived of certain rights and privileges as citizens of the United States all in violation of 42 U.S.C. §1983.

WHEREFORE, plaintiffs pray that the Court enter judgment in their favor and against defendants City of Chicago, Sgt. Kingsley, Officer Carlyon, Officer Collins, Officer Lindahl, Officer Mayoski, Officer Pina, PPO Lupo, PPO Morabito and PPO Zarcone, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deems appropriate.

## COUNT III – BATTERY
### (Assaulting Officers)

40. Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

41. As described in the preceding paragraphs, the conduct of the assaulting officers, acting within the scope of their employment as police officers, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing plaintiffs' bodily injuries.

15

42.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

43.     The misconduct described in this Count was undertaken by the assaulting officers within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

44.     As a direct and proximate result of the assaulting officers' acts, plaintiffs were injured, suffering serious bodily injuries, emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering and other damages.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendant assaulting officers Sgt. Jeffery Planey, Officer Gregory Barnes, Officer Demetrios Kereakes, Officer Vincent Matthews, Officer Matias Padilla and Officer Paul Powers, awarding compensatory damages, as well as punitive damages against the individual defendants and any other relief this Court deems just and appropriate.

## COUNT IV – ASSAULT
### (Assaulting Officers)

45.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

46.     As described in the preceding paragraphs, the conduct of the assaulting officers, acting within the scope of their employment as police officers, created a reasonable apprehension of imminent harm, undertaken willfully and wantonly, proximately causing plaintiffs' emotional and other injuries.

47.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiffs' constitutional rights.

16

48. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

49. As a result of the assaulting officers' conduct, plaintiffs had a reasonable apprehension that their lives were in danger.

50. The misconduct described in this Count was undertaken by the assaulting officers within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendant assaulting officers Sgt. Jeffery Planey, Officer Gregory Barnes, Officer Demetrios Kereakes, Officer Vincent Matthews, Officer Matias Padilla and Officer Paul Powers, awarding compensatory damages, as well as punitive damages against the individual defendants and any other relief this Court deems just and appropriate.

## COUNT V – CONVERSION
### (Sgt. Planey)

51. Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

52. In the context of assaulting plaintiff Barry Gilfand, defendant Sgt. Planey, by use of force, assumed control of plaintiff Barry Gilfand's cellular telephone.

53. Sgt. Planey's assumption of control over plaintiff's possession was unauthorized and wrongful.

54. Plaintiff Barry Gilfand had the right to control and retain possession of his cellular telephone, but defendant Sgt. Planey has deprived plaintiff Gilfand of his personal property without his consent.

17

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendant Sgt. Jeffery Planey awarding compensatory damages, as well as punitive damages against him, individually, and any other relief this Court deems just and appropriate.

**COUNT VI –*RESPONDEAT SUPERIOR***
**(City of Chicago)**

55.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

56.     In committing the acts alleged in the preceding paragraphs, the officer defendant were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment.

57.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, plaintiffs respectfully request that the Court enter judgment in their favor and against defendant City of Chicago, in an amount equal to any award against the officer defendants.

**COUNT VI – INDEMNIFICATION**
**(City of Chicago)**

58.     Plaintiffs reallege each of the foregoing paragraphs as if fully stated herein.

59.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

18

60. The officer Defendants are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendant City of Chicago in the amounts awarded to plaintiffs against the officer defendants, as well as any other relief this Court deems just and appropriate.

JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Date: May 8, 2007

Respectfully submitted,
Aaron Gilfand, Barry Gilfand,
Adam Mastrucci and Scott Lowrance,

By: _Sally Saltz_
One of their Attorneys

Sally H. Saltzberg
P. Michael Loftus
Loftus & Saltzberg, P.C.
53 West Jackson, Suite 1515
Chicago, Illinois 60604
(312) 913-2000
Firm No. 32286

Steven H. Fine
53 W. Jackson Blvd, Suite 1515
Chicago, IL 60604
(312) 922-0855
Firm No: 39450