1

1                  UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3

4    BARRY GILFAND, AARON GILFAND,   )
     ADAM MASTRUCCI, and SCOTT     )
5    LOWRANCE,                   )
                            )
6           Plaintiffs,       )
                            )
7    vs.                     )  No. 07 C 2566
                            )
8    SERGEANT JEFFREY PLANEY,     )  Chicago, Illinois
     OFFICER GREGORY BARNES,      )  June 3, 2009
9    OFFICER DEMETRIOS KEREAKES,  )  9:30 o'clock a.m.
     OFFICER VINCENT MATTHEWS,    )
10   OFFICER MATIAS PADILLA,     )
     OFFICER PAUL POWERS,        )
11   OFFICER ERIKA WOOSLEY,      )
     SERGEANT DALE KINGSLEY,     )
12   OFFICER KENNETH CARLYON,    )
     OFFICER FREDERICK COLLINS,   )
13   OFFICER NICOLE MAYOSKI,     )
     OFFICER ANA PINA,         )
14   OFFICER JESUS ENRIQUEZ,     )
     OFFICER MICHAEL HOWE,       )
15   OFFICER DONALD LUPO,       )
     OFFICER GREGORY MORABITO, and  )
16   THE CITY OF CHICAGO,       )
                            )
17          Defendants.       )

18

19         TRANSCRIPT OF PROCEEDINGS - MOTION
     BEFORE THE HONORABLE HARRY D. LEINENWEBER
20

21

APPEARANCES:
22

23

24   For the Plaintiffs:     SMITH, JOHNSON & ANTHOLT
                        MS. AMANDA C. ANTHOLT
25                       112 South Sangamon Street
                       Chicago, Illinois 60607
                       312-432-0400

| | | |
|---|---|---|
| 1 | For the Defendants, | LAW OFFICE OF RONALD C. DAHMS |
| 2 | Planey, Kereakes,<br>Matthews, Padilla, | MR. RONALD C. DAHMS<br>20 South Clark Street |
| 3 | and Woosley: | Chicago, Illinois 60603<br>312-541-8991 |
| 4 | | |
| 5 | For the Defendants, | MAYER BROWN LLP |
| 6 | Barnes and Powers; | MR. DAVID COLE<br>MS. JESSICA LYNN FELKER |
| 7 | | 71 South Wacker Drive<br>Chicago, Illinois 60606 |
| 8 | | 312-701-8168 |
| 9 | | |
| 10 | For the Defendants,<br>Responding Officers: | CITY OF CHICAGO<br>OFFICE OF THE CORPORATION COUNSEL |
| 11 | | MR. JORDAN E. MARSH<br>30 North LaSalle Street |
| 12 | | Chicago, Illinois 60602<br>312-744-8362 |
| 13 | | |
| 14 | | |
| 15 | Court Reporter: | FEDERAL OFFICIAL COURT REPORTER<br>MS. KRISTA FLYNN BURGESON |
| 16 | | 219 South Dearborn Street<br>Chicago, Illinois 60604 |
| 17 | | 312-435-5567 |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

1          THE CLERK:  07 C 2566, Gilfand versus Planey.

2          MS. ANTHOLT:  Good morning, your Honor.  Amanda

3    Antholt for the plaintiffs.

4          We are missing one defense counsel, counsel for the

5    responding officers, so perhaps we could hold it.

6          THE COURT:  Sure.

7          MS. ANTHOLT:  Thank you.

8      (The above-mentioned case was passed and was later recalled

9        as follows:)

10         THE CLERK:  07 C 2566, Gilfand versus Planey.

11         MS. FELKER:  Good morning.  Jessica Felker and David

12   Cole for the defendants, Powers and Barnes.

13         MR. COLE:  Good morning.

14         MR. DAHMS:  Good morning, your Honor.  Ronald Dahms

15   for the defendants, Planey, Matthews, Kereakes, Padilla, and

16   Woosley.

17         MS. ANTHOLT:  And good morning again, your Honor.

18   Amanda Antholt for the plaintiffs.

19         Your Honor, we are here on plaintiffs' motion to

20   compel, which seeks an order to compel on three different

21   issues.

22         The first two are -- the first issue and the third

23   issue relate to the responding officers only, and their

24   counsel is on their way over.

25         THE COURT:  Okay.

1          MS. ANTHOLT:   The second issue is the financial

2    discovery, which defense counsel raised briefly in our last

3    hearing before your Honor, and after that we held the meet and

4    confer conference.

5          Defendants have -- we were unable to reach resolution

6    on the heart of that discovery.  Defense counsel did file a

7    response yesterday in which they claim that we had not

8    exhausted the meet and confer obligations under the rules.  I

9    believe we had.  In fact, we had several lengthy conferences

10   and we had not been able to come to an agreement on the bulk

11   of the issues.  There were a couple of compromises that I

12   proposed on subset issues.  They did not respond.  I wrote a

13   letter, I sent an E-mail, and I didn't get any response.

14   Almost 3 weeks went by and I took that as a no, and so I went

15   ahead and filed the motion to compel.

16          THE COURT:   Who represents the officers who --

17          MS. FELKER:   I do, your Honor.

18          THE COURT:   Why wouldn't you produce this stuff?

19          MS. FELKER:   What Ms. Antholt is saying is misleading

20   and it misrepresents what we had come to an agreement with.

21          We had said that we would give her 3 years of tax

22   returns.  We were preparing to give her 3 years of tax

23   returns.  We also -- we also agreed to give her auto

24   information.

25          THE COURT:   What?

1       MS. FELKER:  Auto information, what autos they owned,
2   and the blue book value, and what they owed on them.

3       Also, we offered a compromise of giving everything
4   about their house except for the exact address because these
5   officers have serious privacy concerns.  There have been
6   threats made on blogs against them.  We want to preserve their
7   privacy.

8       We found out Ms. Antholt accepted the same agreement
9   from Mr. Marsh, who represents the responding officers, that
10  they could give the property information without the address.
11  She refused it from us.

12      So, we thought we were on the way to compromise, but
13  then she filed this motion.  She sent an E-mail and she said,
14  Let me know if you are going to agree to things at noon.  At
15  then at 5:00 o'clock, they filed the motion to compel.
16  Obviously not in good faith, not compromising, and not trying
17  to reach an agreement.

18      THE COURT:  The only issue is the address of the
19  homes?

20      MS. ANTHOLT:  Your Honor, the issue is that they are
21  not -- they have agreed to give, as I say in the motion, the
22  taxes and information about the cars, but they won't give the
23  general interrogatory response saying, Here is my net worth,
24  and here is what that is made up of.

25      So, they just want to give little pieces without the

1    whole, and in order to --

2           THE COURT:   Are you willing to give her the net

3    worth?

4           MS. FELKER:   We were trying to reach a compromise,

5    because we --

6           THE COURT:   What is the compromise on net worth?

7    They are entitled to it.

8           MS. ANTHOLT:   They wouldn't give it to us.

9           MS. FELKER:   She asked for any asset they owned that

10   was over $2500.   We are trying to reach a compromise about how

11   much information she wanted on those assets.   We never said we

12   wouldn't give that information.   She was asking for more

13   information than -- for more particularized information than

14   we wanted to give because, again, of the grave privacy

15   concerns.

16          We were willing to come to a compromise, but again,

17   she filed this motion, instead of calling -- instead of

18   picking up the phone and calling us about this.

19          MS. ANTHOLT:   Your Honor --

20          MS. FELKER:   In the meantime, she has accused us of

21   violating the Federal Rules of Civil Procedure, and also

22   served another request for production on us because she

23   claimed with no evidence, that we were violating Civil

24   Procedure because we had lots of boxes at the criminal trial

25   that we --

1        MS. ANTHOLT:  Your Honor, counsel is --

2        THE COURT:  Wait, wait, wait.

3        MS. ANTHOLT:  Counsel is mixing up half a dozen

4   different issues.

5        THE COURT:  Let's limit this to the financial

6   discovery.

7        What information are you unwilling to give?

8        MS. FELKER:  Financial information like the exact

9   bank account numbers, addresses, Social Security numbers,

10  anything that would put their privacy at jeopardy.

11       We were willing to give a list of assets over $2500,

12  we just were, again, having an argument about the

13  particularized information.

14       MR. COLE:  And Judge, if I may add, you don't have to

15  look far to see that giving out personal and specific

16  information about our clients puts them in jeopardy.

17       THE COURT:  I am not quarreling with that.

18       MS. ANTHOLT:  Neither are we.

19       THE COURT:  All I am trying to figure out is what

20  information they want that you are unwilling to give.

21       You have told me you are not going to give the street

22  address of their homes, but you will give their information as

23  to the value of the homes and --

24       MS. FELKER:  Yes, and we told them that.

25       THE COURT:  (Continuing -- and when it was purchased,

1     that sort of thing?

2            MS. FELKER:  Yes.

3            THE COURT:  So that they can --

4            MS. ANTHOLT:  First of all, we offered to hold

5     everything under attorneys' eyes only.  Second of all, we

6     asked if they could give a -- the interrogatory response lists

7     the particular information, including the home address, or

8     they could give us supporting documents, so it was something

9     other than the defendant officers' say so, and that was --

10           THE COURT:  I think you are entitled to some kind of

11    verification of a particular home.

12           MS. ANTHOLT:  The address would allow us to go look

13    at the public documents that are available through the City

14    and County system, either the documents that we will keep

15    under attorneys' eyes only or the supporting documentation

16    that --

17           THE COURT:  What is wrong with attorneys' eyes only?

18    I am just asking.

19           MS. FELKER:  We are -- we want it refrained from any

20    possibility that their address gets out in the public, and so

21    we want to refrain from the point that even though it is taken

22    from attorneys' eyes only, it could get out there.

23           A lot of information has been leaked about them, and

24    we are very serious about securing their privacy.

25           Since they accepted from the City the same compromise

1     about the addresses, we don't understand why they refuse to do
2     it with us.
3           MS. ANTHOLT:  It is a different issue.
4           MR. COLE:  Hold on.
5           MS. FELKER:  I just want to finish.
6           Furthermore, she also has asked for 2006 through 2009
7     bank records, obviously -- and bank statements, and she has
8     asked for any insurance, insurance that --
9           MS. ANTHOLT:  We dropped that one, remember?
10          MS. FELKER:  No.
11          She said she would consider dropping it, but she
12    never officially did.  It is in her -- you can read her
13    motion, but she never said she dropped it in her motion.
14          She has asked for from 2006 through 2009, all monthly
15    statements through the present for all bank accounts,
16    retirement accounts, stocks, bonds, mutual funds, securities,
17    in which you have any ownership interest.
18          Clearly, the Courts have said that you only get an
19    idea of current net worth, and asking for 2006 to 2009 is way
20    more than they are entitled to.
21          THE COURT:  They are entitled to know if they dumped
22    assets, they care entitled to know that.  I suppose they could
23    say any assets you have sold or transferred --
24          MS. ANTHOLT:  And your Honor, along those lines, the
25    issues are a little bit different with counsel's clients to

1   responding officers, which is why I wasn't willing to make all
2   the same compromises.
3           With the responding officers, the City is agreeing to
4   indemnify, so we are not looking to having to collect from
5   them for compensatory damages.
6           THE COURT:  If the City is going to indemnify, they
7   shouldn't have to produce anything.
8           MS. ANTHOLT:  Right.
9           But for her clients, for what we are referring to as
10  the assaulting officers, the City is not indemnifying, so it
11  makes this discovery very different from the --
12          THE COURT:  It is, if you are going to plead
13  impecuniousness.  If they don't, you don't have to plead
14  anything.
15          MS. FELKER:  Correct, but --
16          THE COURT:  Are you going to ask the jury to say that
17  they are poor people and they don't have money?
18          MS. FELKER:  We haven't even breached that point in
19  our decision making yet, but probably, yes.
20          THE COURT:  Okay then.
21          MR. COLE:  And your Honor, we have agreed to provide
22  their tax returns, which should give them more than enough
23  information than they need to determine what --
24          THE COURT:  It won't tell her whether or not they
25  have unloaded assets.

1        MS. ANTHOLT:  Right.

2        THE COURT:  I think the easiest thing to do is just

3   to --

4        Well, I am going to grant the motion subject to

5   attorneys' eyes only, and if it gets out, they will be in

6   trouble.

7        MS. ANTHOLT:  All right.

8        The other issues had to do with the responding

9   officers, and I guess we are still waiting for counsel.

10       THE COURT:  Okay.  I have another matter.

11       We will pass it.

12       MS. ANTHOLT:  Thank you, your Honor.

13      (The above-mentioned case was passed and was later recalled

14       as follows:)

15       THE CLERK:  07 C 2566, Gilfand versus Planey.

16       THE COURT:  Now, what are the issues?

17       MS. ANTHOLT:  Amanda Antholt, again, for the

18   plaintiffs.

19       MR. MARSH:  Jordan Marsh on behalf of the responding

20   officers.

21       I apologize being late.

22       MS. FELKER:  Jessica Felker on behalf of Defendant

23   Powers and Defendant Barnes with David Cole.

24       MR. COLE:  Good morning.

25       MR. DAHMS:  And Ronald Dahms for the Defendants

1    Planey, Matthews, Kereakes, Padilla, and Woosley.

2              MS. ANTHOLT:  The first issue on plaintiffs' motion

3    is to -- is a motion to compel asking the officers whether

4    they have been supervised through the Department's

5    disciplinary programs called the Behavioral Intervention

6    System and the Personnel Concerns Program.  These are programs

7    that provide for more closely monitoring or supervising of

8    officers having problems on the job.

9              It only remains with regard to the responding

10   officers.  All of what we are calling the assaulting officers

11   have responded.

12             Counsel has objected to it.  We believe anything

13   relating to their disciplinary records is relevant to this

14   case, which is about their conduct as Chicago Police

15   Officers.

16             Again, we have offered that this would be covered by

17   the protective order and confidential.  It is discoverable and

18   it is --

19             MR. MARSH:  Judge, this is not disciplinary, as I

20   understand it.

21             MS. ANTHOLT:  What I am asking for, I think, are more

22   germane to mental health issues, and --

23             MR. MARSH:  First of all, it is a -- this is

24   something that is an attempt to see problems ahead of time and

25   solve them before they get to be actual either disciplinary

1  problems or further problems, and if something like that was
2  discoverable, it provides a disincentive to provide that over
3  and potentially it gets into protected and privileged mental
4  health information.

5         It is not disciplinary.  It is something to address
6  problems before they become problems.  And to that extent it
7  is A, not disciplinary, and B, it would defeat the purpose to
8  have that as plaintiffs' eyes only to look at that.  It would
9  create a disincentive to even have that resource for officers,
10 and so for that reason -- and I believe it gets into protected
11 mental health issues.

12        So, I don't believe it is discoverable.

13        MS. ANTHOLT:  We are not seeking --

14        If officers have a number of disciplinary actions
15 against them they get referred into a program, and their
16 supervisors and sergeants and lieutenants meet with them more
17 often, and we would simply ask, have you been involved in
18 these programs, have you been supervised by these programs,
19 and --

20        THE COURT:  You are asking for a yes or no?

21        MS. ANTHOLT:  Essentially, yes.

22        THE COURT:  What is the matter with yes or no?

23        MR. MARSH:  It is really a principled objection, but
24 frankly, I doubt very much if my officers --

25        THE COURT:  Well, there is a protective order.

1  I will grant the motion as long as it is limited to a

2  yes or no and you don't have to produce detailed records

3  showing their interplay between these -- whoever it is they

4  are dealing with.

5  MR. MARSH:  Okay.

6  MS. ANTHOLT:  And your Honor, I don't know if --

7  Mr. Marshal wasn't here for the discussion on the financial

8  discovery, but --

9  THE COURT:  He already lost that one.

10  MR. MARSH:  Well, your Honor, a couple things.

11  THE COURT:  Who do you represent?  I mean --

12  MS. ANTHOLT:  He represents the responding officers

13  who were on duty and who were being --

14  THE COURT:  I thought they already agreed?  They

15  agreed.

16  MS. ANTHOLT:  No, we had discussed an agreement, but

17  we were unable to come to a final agreement.

18  Mr. Marsh, I believe, agreed to provide a list of

19  assets but not the total amount of --

20  THE COURT:  If the City is indemnifying them for

21  punitive damages, then --

22  MS. ANTHOLT:  No.

23  MR. MARSH:  No.

24  THE COURT:  No, okay.

25  MR. MARSH:  Not for punitive damages, your Honor.

1          What I told Ms. Antholt while we were discussing this

2   is that we would -- at the appropriate time, we would provide

3   all of the assets, a list of assets, without any identifying

4   characteristics, no bank account numbers, no banks, nothing

5   like that, we would provide the assets, anything over $2500,

6   we would provide that.

7          THE COURT:  And she was willing to accept that, I

8   thought.

9          MR. MARSH:  But what we said, your Honor, is there is

10  no reason to do that before a summary judgment motion is ruled

11  on.  If a summary judgment motion is granted, then there is no

12  relevance to that information because the officers wouldn't

13  even be involved in the case.

14         So, there is a summary judgment scheduled, and we

15  would be happy to provide that if summary judgment is

16  unsuccessful.

17         THE COURT:  What is wrong with that?

18         MS. ANTHOLT:  Our position is that the discovery

19  period is now, and we can't wait until discovery closes to do

20  discovery, unless your Honor tells us that.

21         THE COURT:  Why don't I do that?  I will make an

22  exception.  They are in a different situation than the other

23  ones.

24         MS. ANTHOLT:  The other dispute with the responding

25  officers is whether their interrogatories or their sworn

1  statements would have to include their total estimate of their

2  net worth, which we believe to be appropriate.

3          THE COURT:  As long as the City is not indemnifying,

4  subject to attorneys' eyes only, I will order the production,

5  but after the summary judgment motion is ruled on.

6          MR. MARSH:  And with respect to what Ms. Antholt

7  wants, the problem is she is actually asking us -- she is not

8  asking us for information that is technically in our control,

9  she wants us to calculate what the net worth of our officers

10  are.

11          THE COURT:  Then produce the --

12          MR. MARSH:  I mean, it is not -- I don't think it is

13  incumbent upon us, even after summary judgment, to calculate

14  based on whatever we think our --

15          THE COURT:  As long as they are willing to produce

16  everything, all evidence of everything that they have, all

17  debts and all --

18          MS. ANTHOLT:  Sure.

19          MR. MARSH:  They can do that calculation.

20          THE COURT:  Then that will be delayed until after

21  summary judgment.

22          MR. MARSH:  Okay.

23          MS. ANTHOLT:  Fine.

24          THE COURT:  What else?

25          MS. ANTHOLT:  Just the one last thing that we haven't

1   received, the responding officers' responses to request for

2   production.  We have actually met and conferred on the

3   substantive issues, but we have not received back the actual

4   responses.

5           THE COURT:  When were they do?

6           MS. ANTHOLT:  They were due, I think, last December,

7   Judge.

8           THE COURT:  Okay.

9           MR. MARSH:  Your Honor, what most of that is --

10          MS. ANTHOLT:  We ask that we get actual responses.

11          THE COURT:  When can you get that to her?

12          MR. MARSH:  We will, Judge, we will.  It was getting

13  everybody's cell phone records from their carriers, and that

14  took a long time.

15          We can produce that in 14 days.

16          MS. ANTHOLT:  Great.

17          THE COURT:  Okay.

18          Anything else troubling you?

19          MS. ANTHOLT:  Thank you.

20          MR. MARSH:  Thank you, your Honor, and again, I

21  apologize for being late.

22          MS. ANTHOLT:  Thank you, your Honor.

23          MR. MARSH:  Thank you.

24          MS. FELKER:  Thank you.

25          (Proceedings concluded.)

1                        C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6   /s/Krista Burgeson, CSR, RMR, CRR     June 3, 2009
      Federal Official Court Reporter      Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25