1    UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ILLINOIS
2             EASTERN DIVISION

3

4    BARRY GILFAND, AARON GILFAND,      )
     ADAM MASTRUCCI, and SCOTT          )
5    LOWRANCE,                          )
                                        )
6           Plaintiffs,                 )
                                        )
7    vs.                                )   No. 07 C 2566
                                        )
8    SERGEANT JEFFREY PLANEY,           )   Chicago, Illinois
     OFFICER GREGORY BARNES,            )   April 29, 2009
9    OFFICER DEMETRIOS KEREAKES,        )   9:30 o'clock a.m.
     OFFICER VINCENT MATTHEWS,          )
10   OFFICER MATIAS PADILLA,            )
     OFFICER PAUL POWERS,               )
11   OFFICER ERIKA WOOSLEY,             )
     SERGEANT DALE KINGSLEY,            )
12   OFFICER KENNETH CARLYON,           )
     OFFICER FREDERICK COLLINS,         )
13   OFFICER NICOLE MAYOSKI,            )
     OFFICER ANA PINA,                  )
14   OFFICER JESUS ENRIQUEZ,            )
     OFFICER MICHAEL HOWE,              )
15   OFFICER DONALD LUPO,               )
     OFFICER GREGORY MORABITO, and      )
16   THE CITY OF CHICAGO,               )
                                        )
17          Defendants.                 )

18

19          TRANSCRIPT OF PROCEEDINGS - MOTION
         BEFORE THE HONORABLE HARRY D. LEINENWEBER
20

21   APPEARANCES:

22

23   For the Plaintiffs:    SMITH, JOHNSON & ANTHOLT
                            MS. AMANDA C. ANTHOLT
24                          112 South Sangamon Street
                            Chicago, Illinois 60607
25                          312-432-0400

```
 1    For the Defendants,        LAW OFFICE OF RONALD C. DAHMS
      Planey, Kereakes,          MR. RONALD C. DAHMS
 2    Matthews, Padilla,         20 South Clark Street
      and Woosley:               Chicago, Illinois 60603
 3                               312-609-0060

 4

 5    For the Defendants,        MAYER BROWN LLP
      Barnes and Powers;         MS. JESSICA LYNN FELKER
 6                               MS. LORI E. LIGHTFOOT
                                 71 South Wacker Drive
 7                               Chicago, Illinois 60606
                                 312-782-0600
 8

 9
      For the Defendants,        CITY OF CHICAGO
10    Responding Officers:       OFFICE OF THE CORPORATION COUNSEL
                                 MR. JORDAN E. MARSH
11                               30 North LaSalle Street
                                 Chicago, Illinois 60602
12                               312-744-8362

13

14    For the Defendant,         CITY OF CHICAGO
      City of Chicago:           MR. MATTHEW A. HURD
15                               30 North LaSalle Street
                                 Chicago, Illinois 60602
16                               312-742-0234

17

18
      Court Reporter:            FEDERAL OFFICIAL COURT REPORTER
19                               MS. KRISTA FLYNN BURGESON
                                 219 South Dearborn Street
20                               Chicago, Illinois 60604
                                 312-435-5567
21

22

23

24

25
```

1    THE CLERK:  07 C 2566, Gilfand versus Planey.

2    THE COURT:  Good morning.

3    MS. LIGHTFOOT:  Good morning, your Honor.  Lori

4  Lightfoot and Jessica Felker on behalf of Paul Powers and Greg

5  Barnes.

6    MS. FELKER:  Good morning, your Honor.

7    MR. DAHMS:  Ronald Dahms on behalf of Planey,

8  Kereakes, Woosley, Padilla, and Matthews, defendants.

9    MR. MARSH:  Jordan Marsh on behalf of the responding

10  officer defendants.

11    MR. HURD:  Matt Hurd on behalf of the City of

12  Chicago.

13    MS. ANTHOLT:  Good morning, your Honor.  Amanda

14  Antholt on behalf of plaintiffs.

15    THE COURT:  Are these the guys that were just

16  acquitted yesterday?

17    MS. LIGHTFOOT:  Yes.

18    MS. ANTHOLT:  Yes, sir.

19    MS. LIGHTFOOT:  On all counts.

20    MS. ANTHOLT:  That were charged.

21    MS. LIGHTFOOT:  And if you would like to see the

22  opinion, we are happy to share.

23    MR. HURD:  I do have the opinion with me if you would

24  like to see it.

25    THE COURT:  I thought it sounded familiar in the

1   paper.  I remembered the plaintiffs.  A lawyer for somebody

2   told, at least the Sun Times, that it didn't stop the Civil

3   Case.

4           MS. ANTHOLT:  And it does not.  We go on.

5           MS. LIGHTFOOT:  Hope springs eternal, your Honor.

6           THE COURT:  I happened to read it, I thought it

7   sounded familiar, you said the case was coming up, and it

8   finally did.

9           MS. ANTHOLT:  It did.

10          MS. LIGHTFOOT:  We are here to --

11          THE COURT:  So now you can depose the plaintiffs,

12  right?

13          MS. ANTHOLT:  The plaintiffs have been deposed.  It

14  is the defendant officers.

15          THE COURT:  The defendants, yes.

16          MS. LIGHTFOOT:  Yes.

17          MS. ANTHOLT:  Now we can depose them, and we are

18  looking forward to doing that very soon, I hope.

19          THE COURT:  Fighting words, he said.

20          MS. ANTHOLT:  Yes.

21          MS. LIGHTFOOT:  It is a good opinion, Judge.

22          MS. ANTHOLT:  Your Honor, there are two motions

23  before you today, one is plaintiff's motion to unstay the

24  Monell, and the other is defendant's motion for leave to

25  redepose one of the --

1        THE COURT:  Is there a verb, unstay?

2        MS. ANTHOLT:  Apparently not, but I --

3        THE COURT:  I happened to notice that.

4        MS. ANTHOLT:  I guess I coined the phrase.

5        THE COURT:  Yes, I was wondering.

6        MS. ANTHOLT:  I guess to lift the stay.

7        THE COURT:  I think I understood what you meant.

8        MR. HURD:  We have been trying to negotiate, meet and

9   confer this out, and I don't know if Ms. Antholt wants to say

10  something before I make my suggestion.

11       MS. ANTHOLT:  My suggestion to counsel this morning

12  on the Monell issues was this:

13       Their motion says basically they have a summary

14  judgment argument that there is no Constitutional violation

15  here because of the under color of law element.  We believe

16  that we have sufficient evidence of that to survive summary

17  judgment.

18       But what I propose is some discovery has been ongoing

19  in this case.  We still need to depose the defendant officers,

20  and there is still other discovery that needs to go forward on

21  the fact discovery in this case.

22       Most of that discovery that needs to be done does not

23  go to the issue of whether or not there was Constitutional

24  violations here, that legal question.

25       So, my suggestion was let's take these defendant

officers' depositions right away, and then let's do summary
judgment on whether or not there is Constitutional violations
here while we are doing the other discovery instead of waiting
six months for the discovery to close and then going through
summary judgment, that way we can work more efficiently to
complete all the nonMonell discovery and we can do summary
judgment on whether or not there are Constitutional violations
to keep us here in Federal Court before your Honor.

If we win, if plaintiff survives that summary
judgment motion, then what would be left would be the Monell
discovery.  Hopefully we could get that done pretty quickly,
like in a couple months.  And then --

THE COURT:  If you survive surgery judgment will the
City pick up the defenses, pay the judgment?

MR. HURD:  No.

There are two groups of officers in this case.  There
is what is called the assaulting officers.

MS. LIGHTFOOT:  Now the acquitted officers.

MR. HURD:  Now the acquitted assaulting officers.

They all said they were not acting within the scope
of their employment and they were not --

MS. ANTHOLT:  They haven't all testified yet, but --

MR. HURD:  They have all in their complaint -- their
answers in the complaint have denied that they were within the
scope of their employment.

1    THE COURT:  That will be your motion for summary

2  judgment.

3    MR. HURD:  And even if we lose that motion, we will

4  not be indemnifying those officers or defending those

5  officers.

6    MS. ANTHOLT:  Although Mr. Marsh's officers were the

7  responding officers who were on duty and acting under color of

8  law.

9    So, if the jury found there were Constitutional

10  violations ongoing while they were there, as we allege, then

11  that would be a different story.

12    So, it certainly is a case where there are strong

13  issues in dispute about whether certain conduct was under

14  color of law and whether it establishes a Constitutional

15  violation.  That certainly will be an issue for summary

16  judgment, no doubt.

17    So, the issue is really timing, and my concern is

18  that I either want to go forward with all the discovery in

19  order to bring this case to resolution as quickly as possible

20  or --

21    THE COURT:  If they are going to file a summary

22  judgment, that is short of Monell, that is probably -- let's

23  probably address that first.

24    MS. ANTHOLT:  Can we do that before -- can't he just

25  do that while we are finishing up the discovery though?  I see

1   no reason to wait on that summary judgment briefing six months

2   or four months or whatever it is going to be.

3           MR. HURD:  Here is my proposal:

4           I propose that we go ahead, we do these four

5   officers' deps, and there are a few other people's depositions

6   we want to do.  And we, the City, agree to file its motion for

7   summary judgment on this color of law issue by August 2nd.

8           Ms. Antholt indicated she only wanted three weeks to

9   respond, that would be August 24th.  Then three weeks for us

10  to reply, that would be September 14th.  In the interim, we

11  continue doing whatever discovery needs to be done, nonMonell

12  discovery, and that way the issue is before your Honor by

13  September 14th.

14          The only other thing that I would suggest we hold off

15  on is counsel has sent out interrogatories to all the officers

16  asking about their financial information, and I think if we

17  can hold off on that until we find out who actually is a

18  defendant.  Mr. Marsh, I believe, has 17 clients, and asking

19  him to get 17 people's -- all their financial information when

20  they may not be defendants in this case, is --

21          MS. ANTHOLT:  You know, the financial issues and the

22  financial discovery is another issue for another day.  We have

23  been trying to work with defense counsel to see if we can come

24  to an agreement.

25          THE COURT:  You don't need that immediately.

1    MS. LIGHTFOOT:  And I think that is really the only

2    other -- there is one other issue I will talk about in a

3    deponent, but that is the rub.

4         If we are -- if my clients are not going to be in

5    this case as it is presently pled, then frankly, I don't want

6    to have to go through -- she sent us a list of interrogatories

7    that has, with sub-parts, probably 20 to 25 to 30 different

8    parts.  I don't want to go through it, frankly.  We are trying

9    to close discovery on --

10        THE COURT:  This has to do with their financial

11   wherewithal?

12        MS. LIGHTFOOT:  That is correct.

13        MR. HURD:  Yes.

14        MS. ANTHOLT:  Your Honor, we have claims against

15   those officers, whether they are here or in State Court, they

16   are going to be against those officers in their individual

17   capacities.  The City is not accepting judgment for them and

18   so we --

19        MR. HURD:  The only thing I would say about that is

20   that we --

21        MS. ANTHOLT:  If I can finish.

22        MR. HURD:  Okay.

23        MS. ANTHOLT:  So, that is discovery that is going to

24   happen.  From our position, we don't want to hold off on that

25   because we have had issues in other cases with when we get

1    close to trial, the officers could -- you know -- sometimes

2    people try to move their funds around, and once that happens,

3    we can't get that information back.  Old bank statements

4    aren't around, that sort of thing.  That has been a problem.

5         So, I think this is sort of a complicated issue, but

6    I think it is an issue to address on a motion, separate

7    motion, when we are paying full attention to it, because it is

8    an important issue.

9         MS. LIGHTFOOT:  I think we were trying to wrap up

10   everything in an agreed fashion.

11        If Ms. Antholt thinks that she is entitled to every

12   penny and piece of paper about my clients for the last five to

13   six years, which is what she posed, our request to get bank

14   reports for our clients, fine, we will deal with it in motion

15   practice.

16        That is fine.

17        MS. ANTHOLT:  The issue now is what to do with the

18   Monell discovery, and I think our position, and I think the

19   City at least is agreeable, is that we should keep going with

20   the fact discovery in the case, try to get that to a close,

21   and let's brief the summary judgment, let's set a schedule to

22   get that decided.

23        THE COURT:  Well, the only -- is it a fair statement

24   that the only defendants that the City won't indemnify are

25   the --

1    MS. ANTHOLT:  Acquitted assaulting officers.

2    MR. HURD:  That is correct.

3    THE COURT:  Everyone else will be indemnified?

4    MS. ANTHOLT:  Well, the assaulting officers and --

5    MR. HURD:  There is a group that is called in the

6    complaint the assaulting officers.  Let me put it this way:

7    The group we are not indemnifying are the off duty

8    officers who were in the bar that night.

9    THE COURT:  Right.

10   So, everybody else can't plead impecuniousness

11   anyway, because they will be indemnified.  The only ones that

12   could --

13   MR. MARSH:  Not for punitive damages, your Honor.

14   MS. LIGHTFOOT:  Nobody can be indemnified for

15   punitive damages.

16   MR. HURD:  We can't indemnify for punitive damages.

17   MS. LIGHTFOOT:  So, there is --

18   THE COURT:  So, that issue will be -- so you will

19   have to produce that information, unless they get out, right?

20   MS. LIGHTFOOT:  I think we have a strong argument.

21   Particularly the scope of what she is asking for, given that a

22   lot of it is redundant and overlapping, I think we have an

23   argument that it is overly burdensome.

24   THE COURT:  Did you meet and confer on this?

25   MS. LIGHTFOOT:  Well, we have attempted to.  And if

1  we can reach a resolution, we will, but otherwise --

2          THE COURT:  Well, it seems to me that if they have a

3  legitimate shot at punitive damages, and the City will not

4  indemnify, then they are entitled to that information, and

5  they need to have that information to know whether or not to

6  settle the case or not.

7          If they find out these guys don't have any money,

8  then they --

9          MS. LIGHTFOOT:  It is really -- and frankly, on most

10  of them it is going to be, pardon my expression, we don't have

11  a pot to -- whatever in.

12          But the point is --

13          THE COURT:  Or a window to throw it out of, that is

14  the balance of that.

15          MS. LIGHTFOOT:  But the question is how intrusive,

16  frankly, and how far back do these officers have to go.

17          THE COURT:  And that is where you should meet and

18  confer.

19          MS. ANTHOLT:  Absolutely.

20          THE COURT:  And I am going to require you to -- I

21  think you can get that information, I think you need that

22  information in order to try to settle the case, to know if

23  have you a legitimate crack at getting anything, and if you

24  don't, you should know that too, so that won't be a stumbling

25  block in settling the case.

1           But I am not going to require them to literally

2   recreate six years of financial activity.  I am not saying you

3   are requesting that, but it sounds like you might meet and

4   confer.

5           MS. ANTHOLT:  Yes, yes.

6           MS. LIGHTFOOT:  We will do that.

7           THE COURT:  Reduce the amount of work.

8           MS. ANTHOLT:  I think we will be reasonable on this.

9           MS. LIGHTFOOT:  We will meet and confer.

10          THE COURT:  Okay.  Work that out.  And I won't stay

11  discovery on the matter.

12          So, Wanda we have the schedule?  And why do you need

13  so much time for your reply briefs?

14          MR. HURD:  Three weeks.

15          MS. LIGHTFOOT:  It covers the last weeks of August

16  and Labor Day, so we are frankly trying to be realistic.

17  There may be objections.

18          THE COURT:  And you don't have an objection?

19          MS. ANTHOLT:  To their three weeks?

20          I would prefer to get all of this moved up, but

21  because of different scheduling with different defense

22  counsel, they don't see it feasible to get the summary

23  judgment brief filed before August.

24          THE COURT:  So, anyway, the final briefing will be in

25  by September 14th.  We will then give it a ruling date in

1    October.

2          THE CLERK:  October 15th at 9:00.

3          THE COURT:  Acquitted assaulting officers, that is

4    not exactly an oxymoron.

5          MS. LIGHTFOOT:  We then have another small issue,

6    Judge.

7          As your Honor may recall, we recently took over the

8    representation of Gregory Barnes, one of the

9    assaulted/acquitted officers, and that happened I think about

10   a week before the criminal trial started.

11         In the course of talking to Mr. Barnes to get

12   information from him concerning what we would need for

13   representation, we learned that the main eyewitness against

14   him on which the charge -- the claims in this case are based,

15   a woman by the name of Lindsey Vanderford, had solicited at

16   least him, and we believe other officers, because she has an

17   extraordinary number of parking tickets.  This woman had, at

18   last count, I think 80 plus parking tickets to the tune of

19   thousands of dollars.  I didn't add it up.

20         She made the solicitation before the night of the

21   incident, and then she continued to rack up tickets

22   afterwards.

23         When she approached these officers saying, can you

24   give me a break, help me with these tickets, they of course

25   said no, there is nothing we can do about it.

1    THE COURT:  I hope they said that.

2    MS. LIGHTFOOT:  Yes, they did.

3    But the reason -- why is this issue relevant?  Well,

4    Ms. Vanderford was deposed, I believe, in '07, and as you may

5    recall, there was first a Dram Shop action filed against the

6    bar, and then the Civil Rights claim was filed by former

7    counsel within a month of that.

8    In the course of the discovery in the Dram Shop case,

9    there were a couple witnesses that were offered up, let's just

10   have one deposition, since we are deposing Lindsey Vanderford,

11   if you lawyers from the Civil Rights case want to come and

12   participate in that process, you can, which made sense.

13   Well, now fast forward to 2009.  We take over the

14   representation of Mr. Barnes, we find out about this issue

15   regarding Ms. Vanderford, and we think it is -- certainly

16   obviously had we known it then, we would have explored it at

17   her deposition, but not knowing that we --

18   THE COURT:  You want to depose her again?

19   MS. LIGHTFOOT:  Yes, And all we are asking for, your

20   Honor, is two hours, and I think we can get it done in less

21   than that, frankly, but just two hours to recall her, to ask

22   her, specifically about this allegation that we now have, and

23   to probe her, her credibility and her bias on that issue.

24   We believe it is relevant.  As your Honor knows, a

25   witness' credibility is always at issue.  And particularly

with respect to Officer Barnes, Lindsey Vanderford gave this startling testimony frankly in the course of the criminal testimony, and I have characterized it, and I think it is right, as probably the only Perry Mason-esque moment I have ever seen in 20 plus years of practice.

She had repeatedly identified Barnes as being the person who delivered the blow that broke Aaron Gilfand's nose and led to his injuries.

During the course of the criminal trial, because there was a videotape both inside and outside, it became clear by showing her the videotape that at the moment that she says, yes, that is the moment, because there is a moment in the videotape where she is looking into the vestibule, she turns her head, puts her hand on her head, as if to exclaim, Oh my gosh, what have I seen, or what have you, and she identifies that as that very moment she saw the punch being delivered by Defendant Barnes that broke Aaron Gilfand's nose.

Well, at that exact moment, and we had testimony that the videotapes were all synchronized at the same time, Greg Barnes is out on the sidewalk away from the area where the punch supposedly was delivered.

So, this witness' testimony is critical to whether or not there is any liability with respect to Mr. Barnes, and we just want to take her deposition for, as I said, the limited two hours tops on this question about her bias.

1    MS. ANTHOLT:  Your Honor, very briefly can I address
2  this?

3    Putting aside what Ms. Lightfoot just said, which is
4  a characterization, you know, there are issues about what
5  happened when Lindsey Vanderford was on the stand, including
6  that she was not shown the entire portion of the tape.

7    MS. LIGHTFOOT:  That is not accurate.

8    MS. ANTHOLT:  But you know, as Ms. Lightfoot said,
9  they have plenty to impeach this witness with.

10    This witness has given an OPS statement, she has been
11  deposed in this case, including by counsel here for this civil
12  litigation, she has testified at a Grand Jury, and she
13  testified at length in the criminal trial.  She was on the
14  stand for hours.

15    THE COURT:  Had she offered to ameliorate her
16  testimony if they take care of her tickets?  Is that
17  essentially what that is?

18    MS. LIGHTFOOT:  No, she --

19    MS. ANTHOLT:  She was asked in the criminal trial,
20  did you ask these officers for assistance with your parking
21  tickets by Ms. Lightfoot, and she said no.

22    Now, apparently Barnes is going to testify that she
23  did, but I don't know what they are going to ask her about for
24  two hours.  Are you sure you didn't ask the officers for
25  assistance with your parking tickets?

1          We do have broad discovery, but I think it is an

2   abuse of those rules to resubpoena a nonparty, a third-party

3   witness, to keep coming in every time counsel thinks of a new

4   question that they want to ask.  This is such a side issue,

5   and you know, I will leave it at that.  But this witness has

6   testified so many times it seems a little absurd to make her

7   come in for another deposition.

8          THE COURT:  She was asked and she denied it?

9          MS. LIGHTFOOT:  What happened in the course of the

10  criminal trial is I asked the first question to set up the

11  impeachment.  She answered -- she denied that she had

12  solicited the officer's help.

13         I had a whole line of questions that I intended to

14  ask.  The State jumped up and down and objected, and frankly

15  by that point, when I was questioning her, she had already had

16  this moment where her testimony was impeached regarding the

17  identification of Greg Barnes by different counsel, he was

18  represented separately by counsel, by someone else in the

19  criminal case.

20         As I said, your Honor, I don't think we have had

21  adequate opportunity to explore this issue with

22  Ms. Vanderford.  Her testimony is the only, quote, unquote,

23  unbiased testimony that puts liability against Mr. Barnes.

24         THE COURT:  What happened to Gilfand?  What is his

25  injury?

1    MS. ANTHOLT:  He had a broken nose.

2    THE COURT:  What happened to the other defendants?

3    MS. ANTHOLT:  The other plaintiffs?

4    THE COURT:  Yes, I mean the other plaintiffs.

5    MS. ANTHOLT:  Okay.

6    Aaron Gilfand had a broken nose, and most of the

7    other injuries were bruises, soreness, those kinds of

8    injuries.

9    One of them has a -- had like a black eye, which was

10   particularly scary for him because that was his only good eye,

11   he is blind in the other eye, and there was a moment he

12   thought he was blind in both eyes.

13   THE COURT:  His eye is okay now?

14   MS. ANTHOLT:  It is all better now.

15   THE COURT:  There are no permanent injuries?

16   MS. ANTHOLT:  No.

17   THE COURT:  Okay.

18   MS. LIGHTFOOT:  The only one who really frankly in

19   our view has a legitimate injury for which he -- he actually

20   sought medical treatment is Aaron Gilfand, and that is why --

21   and the only other witness against Greg Barnes is Aaron

22   Gilfand.

23   Again, I don't have to repeat what the Court said

24   yesterday.  I think there are all sorts of problems with that

25   guy's credibility.

1      MS. ANTHOLT:  Well --

2      MS. LIGHTFOOT:  So, Lindsey Vanderford offers up in

3  theory the one unbiased witness against Greg Barnes, and I

4  think it is critical that we explore this issue.

5      Ms. Antholt is correct that she has --

6      THE COURT:  You just want to explore that?  You don't

7  want to explore the issue that he was outside, you just want

8  to explore the issue whether she sought their help?

9      MS. LIGHTFOOT:  Correct.

10     THE COURT:  You can ask that in two questions, can't

11  you?

12     MS. ANTHOLT:  Right, and so why is that a two-hour

13  deposition?

14     THE COURT:  What is your name?  And did you ask him

15  for help?

16     MS. LIGHTFOOT:  But your Honor --

17     MS. ANTHOLT:  And she has asked that, that was asked

18  at the criminal trial.

19     MS. LIGHTFOOT:  Look, lawyers being lawyers, I was

20  trying to be conservative in saying two hours.  I think we can

21  probably get it done in a half an hour's time.

22     THE COURT:  I will give you that.  I will let you

23  depose her for half hour, for 30 minutes.

24     MS. LIGHTFOOT:  Okay.  Thank you.

25     THE COURT:  And that is assuming that the roadblocks

1   are not -- that there is not an objection to every question.
2   Just let them ask the questions, okay?
3               MS. ANTHOLT:  Okay.
4               THE COURT:  Anything else?
5               It is getting down to where I don't want you to
6   settle this case, it sounds like a fun one to hear.
7               MS. ANTHOLT:  I agree, your Honor.  Let's schedule a
8   trial.
9               MR. HURD:  Would you want to look at the Court's
10  opinion?
11              MS. ANTHOLT:  No, that is not relevant here.
12              MR. HURD:  It is on the Tribune's web site.
13              THE COURT:  And it is a matter of public record.
14              Leave it, we will take a look at it.
15              MS. ANTHOLT:  I don't think it has any bearing on
16  this.
17              THE COURT:  I just have the Sun Times' version, and
18  what this Columnist Brown, I think it was, said.  Fighting
19  words, I know that.
20              MS. LIGHTFOOT:  Yes, yes.
21              There is an interesting background to what Mr. Brown
22  says which we could share with you off the record.
23              THE COURT:  This sounds like a fun case to try.
24              MS. ANTHOLT:  Let's get it there.
25              THE COURT:  Be unreasonable in your settlement.

1           MS. ANTHOLT:  We can do that.

2           MR. HURD:  Not a problem, your Honor.

3           MS. LIGHTFOOT:  That probably won't be an issue, your

4    Honor.

5           MR. MARSH:  Right cast of characters.

6           THE COURT:  Yes.

7           See you in October.

8           (Proceedings concluded.)

9

10

11

12

13

14

15

16              C  E  R  T  I  F  I  C  A  T  E

17

18           I certify that the foregoing is a correct transcript

19    from the record of proceedings in the above-entitled matter.

20

21    /s/Krista Burgeson, CSR, RMR, CRR    April 29, 2009
      Federal Official Court Reporter       Date
22

23

24

25