# EXHIBIT 29

# Cook County State's Attorney's Office
## Investigations Bureau
### INVESTIGATIVE REPORT

| FILE/CONTROL#: | DOCKET#: | REPORT#: |
|---|---|---|
| 07Q01-0192 | | |
| SUBJECT: | TYPE OF CASE: | DATE DRAFTED: |
| CPD @ Jefferson's Tap & Grill | Professional Standards | 01-16-07 |
| SYNOPSIS OF REPORT: | PERIOD COVERED: | INVESTIGATOR (S): |
| Interview of Adam Mastrucci | Dec. 14 & 15, 2006 | R. Del Real |
| | | G. Perez |

**Interviewed:** Adam Mastrucci
1208 W Jarvis
Chicago, Illinois 60626

**Date and Time:** January 16, 2007 / 3:30PM

**Location:** 53 West Jackson Blvd
Suite 1515
Chicago, Illinois

The following report contains information relative to a current investigation being conducted in conjunction with the Chicago Police Department Office of Professional Standards complaint against police personnel. The complaint alleges that officers, while off duty, committed a series of batteries against complaining witnesses. The alleged offense is alleged to have occurred while at Jefferson's Tap & Grill located at 325 N. Jefferson Street in Chicago and continued outside onto the street.

On January 16, 2007, at 4:45 PM, Investigator Del Real, Investigator Perez, Assistant State's Attorney Tom Bilyk, Attorney Sally H Saltzberg, and victim Adam Mastrucci met at 54 West Jackson Blvd, Suite 1515. This report was recorded in summary form and not verbatim.

Mastrucci was asked to relate any and all events prior to and during the incident. Mastrucci stated that at approximately 10:30 PM on the evening of December 14, 2006, he was contacted by Scott A. Lowrence and asked if he wanted to play pool with Aaron Gilfand and his brother Barry Gilfand at the Jefferson Grill & Tap. According to Mastrucci, when he arrived, he (Scott) was already playing pool with Aaron and Barry. Mastrucci stated that he used to work with Aaron Gilfand at the Board of Trade and knew him well. Mastrucci stated that this was the first time meeting Barry Gilfand.

Mastrucci reported consuming 3 drinks that night, Jack Daniels with ginger ale. Mastrucci stated that they remained playing pool until closing.

C. R. 1002011

ATTACHMENT # 46

Mastrucci stated that when the lights went on, he (Mastrucci) and Aaron were standing by the pool table when a guy approached him and said, "What's up! Are you laughing at us?" Mastrucci stated that he responded by saying, "No, I don't even know you." The guy then asked him, "Do you want trouble?" Mastrucci said, "I don't want any trouble." Mastrucci stated that at that moment he was struck in the temple with a fist. The next thing he remembers is falling to the ground and losing consciousness momentarily. Mastrucci stated that when he regained consciousness, he rolled on the ground and managed to get away from the guy and stand up. Mastrucci then observed Scott being held down by the corner of the pool table and a full nelson arm lock around his neck. Mastrucci tried to go help Scott but was prevented from doing so by an African American who was grabbing him from the back.

Mastrucci described the guy who first came up to them as a white male, a little shorter then him, approximately 6 feet tall, very broad shoulders and well built with a button down shirt that may have been plaid.

Mastrucci stated that after he managed to get away from the bar area, he (Mastrucci) observed Aaron walk towards the vestibule, so he decided to follow him. Mastrucci stated that they both ended up in the vestibule facing one another. Aaron was facing out towards the street and Mastrucci was facing the bar when several guys enter the vestibule behind Mastrucci. At that moment, Mastrucci felt someone throw a punch from behind him and hit Aaron in the face, Aaron's nose exploded and blood splattered everywhere. A grabbing match occurred and Mastrucci stated "I rolled to the ground. I felt someone pick me up from behind and ask me, is everything O.K.?" Then he (Mastrucci) gets punched again. Mastrucci stated "There wasn't a safe spot in the bar and we didn't know who those guys were. While I (Mastrucci) was on the ground, I clenched down blocking and hiding." Mastrucci stated that he does not see Aaron during the attack nor did he see the offender who struck Aaron in the face causing injury to his nose.

Mastrucci states that after the vestibule incident, his recollection became hazy. Mastrucci stated that he remembered thinking Barry was outside, but did not see him. Mastrucci observes both a squad car and a police wagon arrive and quickly leave the scene without rendering assistance. Investigators asked Mastrucci where he was standing when he observed the squad car and police wagon. Mastrucci stated that he was in the vestibule with Aaron. "We were banging on the bar door trying to get into the bar". Mastrucci stated that once staff members allowed them to re-enter the bar, they saw Scott still in the bar. Mastrucci stated that a staff member handed him (Mastrucci) a napkin and he placed it on Aarons face.

Mastrucci stated that they then decided to go to Scott's apartment, not knowing if these guys were still on the street. "We walk over to Scott's apartment and using his keys entered into his vestibule." While in the vestibule, they feel safe and try to go over what just happened. Mastrucci stated that he felt beaten up and decided to leave and take a cab to his girlfriend's house. Mastrucci stated that the first cab refused to pick him up because his clothes were full of blood. The second cab picked him up and he was driven to his girlfriend's house (Rhonda Wood) who resides on Chicago and Franklin Street.

C. R. _b0201_

ATTACHMENT # __46__

Mastrucci stated that he did not seek medical attention; however, suffered a soar jaw until Christmas, a swollen temple, and skid marks on his arm. Mastrucci was asked if he could identify any of the guys involved. He said he didn't think he would be able to.

Investigation continues.

| _R Sdbl #531_ | 1-23-07 |
|---|---|
| INVESTIGATOR(S) | DATE |
| _T. Lynch_ | 1/23/07 |
| SUPERVISOR'S APPROVAL | DATE |

This document is the property of Cook County State's Attorney's Office Investigations Bureau. 100201/
It and its contents are confidential and may not be disseminated outside your agency without authorization.
ATTACHMENT # 46