IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY GILFAND, AARON GILFAND, ADAM MASTRUCCI, AND SCOTT LOWRANCE | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SGT. JEFFERY PLANEY, OFFICER GREGORY BARNES, OFFICER DEMETRIOS KEREAKES, OFFICER VINCENT MATTHEWS, OFFICER MATIAS PADILLA, OFFICER PAUL POWERS, OFFICER ERIKA WOOSLEY, SGT. DALE KINGSLEY, OFFICER KENNETH CARLYON, OFFICER FREDERICK COLLINS, OFFICER NICOLE MAYOSKI, OFFICER ANA PINA, OFFICER JESUS ENRIQUEZ, OFFICER MICHAEL HOWE, OFFICER DONALD LUPO, OFFICER GREGORY MORABITO, and THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 07 C 2566<br><br>Judge Harry Leinenweber<br><br>Magistrate Judge Keys |
| Defendants. | ) ) | |

**DEFENDANTS PAUL POWERS AND GREGORY BARNES' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Lori E. Lightfoot
Jessica L. Felker
Aaron Chait
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

  I.    Plaintiffs Have Abandoned Counts III (Battery) and IV(Assault) of Their Second Amended Complaint ............................................................................................... 2

  II.   Plaintiffs' Claims are Contradicted By the Record ........................................... 2

    A.   Allegations Against Defendant Powers are Contradicted By the Record ....................... 3

      i.    Powers Never Punched Aaron Gilfand Next to the Pool Table .............................. 3

      ii.   Powers Never Attacked Barry Gilfand in the Vestibule ........................................... 4

      iii.  Powers Never Hit or Kicked Barry Gilfand Outside of the Bar .............................. 5

        a.    Contradiction by other testimony and official statements.................................... 5

        b.   Contradiction by video ........................................................................................ 8

        c.    Contradiction by medical records ........................................................................ 9

    B.   Allegations Against Defendant Barnes are Contradicted By the Record .................... 14

      i.    Barnes Never Struck Mastrucci in the Head Near the Pool Table ........................ 14

      ii.   Barnes Did Not Use Excessive Force When He Stopped a Charging Mastrucci ... 15

      iii.  Barnes Did Not Punch Aaron Gilfand in the Nose in the Vestibule....................... 15

      iv.  Barnes Did Not Push or Shove Aaron Gilfand Outside the Bar ............................ 17

    C.   Plaintiffs Assert, Without Proof, That Powers and Barnes Failed to Intervene .......... 18

  III.  Because Plaintiffs' Claims Are Contradicted by the Record, *Scott* Warrants Summary Judgment ........................................................................................................... 19

    A.   Plaintiffs Mistake Fundamental, Factual Contradictions for Mere Credibility Issues.. 19

    B.   Plaintiff's Out-of-Circuit Scott Cases Are Distinguishable......................................... 21

    C.   Plaintiffs Fail to Distinguish Entire Line of Post-Scott Cases Granting Summary Judgment ........................................................................................................... 21

CONCLUSION.................................................................................................. 24

i

## TABLE OF AUTHORITIES

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 2, 24

*Coble v. City of White House*, 634 F.3d 865 (6th Cir. 2011)...................................................... 21

*E.E.O.C. v. Int'l Profit Assocs., Inc.*, 647 F.Supp.2d 951 (N.D.Ill. 2009).................................... 20

*Gonzalez v. City of Elgin*, 578 F.3d 526 (7th Cir. 2009) ............................................................ 10

*Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008).................................................................. 18

*Hinks v. Graco, Inc.*, No. 91 C 5571, 1993 WL 350193 (N.D.Ill. Sept. 3, 1993) ........................ 20

*Johnson v. Moeller*, 269 F.App'x. 593 (7th Cir. 2008) .......................................................... 19, 22

*Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997)........................................ 18

*Lust v. Razzino*, No. 08 C 7346, 2010 WL 845942 (N.D.Ill. March 3, 2010) .............................. 23

*Martinez v. Gade*, No. 07 C 1488, 2009 WL 780225 (N.D. Ill. March 20, 2009) ...................... 14

*Myers v. Thoman*, No. 1:09-cv-0544-JMS-DML, 2010 WL 3944654 (S.D. Ind. Oct. 6, 2010) .... 2

*Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) ............................................................. 2

*Reed v. City of St. Charles, Missouri*, 561 F.3d 788 (8th Cir. 2009)............................................ 23

*Schneider v. Love*, No. 09 C 3105, 2011 WL 635582 (N.D.Ill. Feb. 10, 2011) ........................... 20

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................................... passim

*Stamps v. Hernandez*, No. 08 C 2196, 2010 WL 3713686 (N.D.Ill. Sept. 14, 2010)................... 20

*Timas v. Klaser*, 23 F.App'x. 574 (7th Cir. 2001)........................................................................ 18

*Washington v. Haupert*, 481 F.3d 543 (7th Cir. 2007) ............................................................... 20

*York v. City of Las Cruces*, 523 F.3d 1205 (10th Cir. 2008) ....................................................... 21

ii

## INTRODUCTION

In their Response, Plaintiffs present a misleading mosaic of alleged facts that fail to undermine the overwhelming and blatant contradictions between their allegations and the record. The contrast between the presentation of undisputed facts by Defendants Barnes and Powers and those marshaled by Plaintiffs is not merely a dispute that can be relegated to a genuine issue of material fact. Unable to dissolve these glaring contradictions, Plaintiffs argue, unconvincingly, that they are mere inconsistencies that should be considered at trial, as sources of impeachment, rather than at summary judgment, as evidence that there is no *genuine* issue of material fact in dispute. Plaintiffs are critically mistaken. The contradictions—by other testimony and official statements, security video, and medical records—go directly to the heart of Plaintiffs' allegations and fundamentally belie any notion that either Barnes or Powers has any liability to Plaintiffs, since Plaintiffs' version of the events is too incredible for any reasonable jury to believe. Precedent in this circuit requires this Court to grant summary judgment in favor of Defendants Barnes and Powers.

This is precisely the conclusion other courts, including the Supreme Court and the Seventh Circuit, have adopted when faced with a similar record. Plaintiffs fail to distinguish these cases (or do not bother trying), and instead rely on distinguishable cases in which the moving party merely challenges the non-moving party's credibility but does not present record evidence that contradicts the non-moving party's version of the events. This is not a case where either side's story could be adopted by a reasonable jury. It is a case, different in kind, in which no reasonable jury could believe Plaintiffs' story as to Barnes or Powers.

## ARGUMENT

### I.     Plaintiffs Have Abandoned Counts III (Battery) and IV(Assault) of Their Second Amended Complaint

In their Response, Plaintiffs fail to address arguments advanced by Powers and Barnes' from their Memorandum of Law in Support of Their Motion for Summary Judgment (hereinafter, "Memo") regarding Counts III (Battery) or IV (Assault) of Plaintiffs' Second Amended Complaint. That failure is fatal and requires entry of summary judgment in favor of Powers and Barnes as to Counts III and IV. It is settled law that Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Claims not addressed in a summary judgment opposition brief are deemed abandoned. *Palmer v. Marion County*, 327 F.3d 588, 597-99 (7th Cir. 2003) (claim abandoned where plaintiff failed to include it in his district court summary judgment opposition brief) (citations omitted). *See also Myers v. Thoman*, No. 1:09-cv-0544-JMS-DML, 2010 WL 3944654, at *4 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made upon a motion for summary judgment concedes those points.") (citing *Palmer*, 327 F.3d at 597-99). By failing to respond to Powers and Barnes' summary judgment motion as to Counts III (Battery) and IV (Assault), Plaintiffs have abandoned these claims.

### II.    Plaintiffs' Claims Are Blatantly Contradicted by the Record

In their Memo (at 20-43), Defendants Powers and Barnes detailed the numerous ways in which Plaintiffs' other testimony and official statements, the security video, and medical records combined to blatantly contradict Plaintiffs' incredible version of the events. Under these

2

circumstances, the Supreme Court has instructed trial courts to grant summary judgment: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As set forth in the opening memorandum by Powers and Barnes, Plaintiffs do not just tell two conflicting versions of allegations against Powers or Barnes. Their allegations span multiple versions—both under oath and otherwise—and establish a troubling pattern of contradictions that no reasonable jury could believe.

Plaintiffs argue (at 14-25) that these contradictions are illusory. They are not. These contradictions are real, repeated, and fatally undermined by objective evidence.

## A. Allegations Against Defendant Powers Are Blatantly Contradicted by the Record

### i. Powers Never Punched Aaron Gilfand Next to the Pool Table

Plaintiffs argue (at 18) that the "video shows Paul Powers rushing around the pool table *to swing* his closed fist in exactly the direction and location where Aaron's head was located" (emphasis added). A simple viewing of the video establishes that this description of the video is plainly inaccurate. The portion of the video Plaintiffs cite (Camera 6, 3:39:24-26) clearly shows that Powers never swung at Aaron Gilfand. Plaintiffs must realize this fact, since they say the video shows Powers about "to swing" at Aaron Gilfand, as if the video cuts out or the view is obscured so that the actual swing cannot be seen. This is not the case. A single viewing of the video makes clear what Aaron Gilfand himself admitted at the criminal trial: while he was on the floor next to the pool table the man standing over him never touched him. *L.R. 56.1 Statement at ¶ 42*. In the face of Aaron Gilfand's confirmation of what the video reveals, what could be the possible basis for a claim that even Aaron Gilfand does not embrace?

### ii.    Powers Never Attacked Barry Gilfand in the Vestibule

Plaintiffs allege that, while in the vestibule, Barry Gilfand was held up against the wall, smacked a couple of times by Powers and Planey, Planey yelled "a bunch of stuff" such as "get out of here," and Barry Gilfand tried to talk but could not breathe. *L.R. 56.1 Statement at ¶ 43*. This allegation, which is premised solely on Barry Gilfand's self-serving statements, is also blatantly contradicted by the video. The video shows that Barry Gilfand was only in the vestibule for the one second from 3:40:40 to 3:40:41, just enough time for him to walk through, but certainly not enough time for the multitude of things he alleges happened. *Memo at 25*. Plaintiffs attempt to explain away this obvious contradiction by claiming (at 21) that "Barry's testimony to which Defendants cite actually discusses events that occurred in the 'foyer'" (i.e., inside the bar near the front door) and not in the vestibule (i.e., the temporary entryway attached to the front door and just outside the bar).

This is simply not true. Barry Gilfand—under oath, two years after the incident, and after viewing the video numerous times—was specifically asked to distinguish what happened to him in the foyer of the bar from what happened to him inside the vestibule. He said in his deposition that he was "thrown against the wall in the vestibule by [the] throat off the ground, same way that was…done in the bar….Same thing again. Against the wall in the vestibule." *Exhibit 2 to L.R. 56.1 Statement, at 298:22-299:1*. Later in the same deposition Barry Gilfand repeats his allegation that he was held up against the wall, smacked a couple of times, Planey yelled at him, and he attempted to talk—all while inside the vestibule, not the foyer. *Id. at 303:7-304:10*. The video, as well as three other official statements or deposition testimony in which Barry Gilfand does <u>not</u> allege that Powers hit him inside the vestibule, all contradict this version of the events. This Court should not credit Barry Gilfand's newest iteration of what happened simply to stave off summary judgment.

4

### iii. Powers Never Hit or Kicked Barry Gilfand Outside of the Bar

In their opening memorandum, Defendants Barnes and Powers established overwhelmingly that Powers never kicked, struck, or otherwise physically assaulted Barry Gilfand. Barry Gilfand alleges in his deposition for this case that, on two occasions outside of camera view, Defendant Off-duty Officers, including Powers, hit and kicked him outside of the bar while he was crouched on the ground. These allegations are contradicted by Barry Gilfand's own testimony, the video, and his medical records. Plaintiffs fail to explain away these obvious contradictions.

### a. Contradiction by other testimony and official statements

Barry Gilfand has been asked about these alleged beatings on four different occasions; four stories, each materially different from the others, have emerged. The chart below (originally included in Barnes and Powers' Memo at 11) makes these contradictions readily apparent.

## Barry Gilfand's Changing Story

| SAO Statement 1/4/2007 | JTAG Deposition 1/30/2008 | Deposition for this case 2/23/2009 | Criminal Trial Testimony 3/23 – 3/24/2009 |
|---|---|---|---|
| **1st Alleged Attack: inside vestibule**<br><br>None. | Planey held him against the wall in the vestibule and hit him in the face and the side.<br><br>Powers did not touch him.<br>*L.R. 56.1 Statement at ¶ 45.* | Planey held him against the wall in the vestibule. He tried to tell Planey to stop but he could not breathe. *Id. at ¶ 43.*<br><br>Planey and Powers allegedly hit him in the face and in the side, although he did not actually see Powers hit him. *Id. at ¶ 43.* | None. |
| **2nd Alleged Attack: outside JTAG**<br><br>"[F]orced outside the vestibule and thrown on the ground" where "[f]our or five men started kicking and punching him." *Id. at ¶ 57.* | "[T]he rest of the guys that were with" Planey—"four of them or so"—hit and kicked him as he crouched outside of JTAG.<br><br>Powers was not named as an attacker. *Id. at ¶ 58.* | Planey hits him while he's crouched on the ground outside JTAG.<br><br>He "assume[s]" Powers is also hitting him, but he does not see Powers hit him. *Id. at ¶ 49.* | He was allegedly "getting hit in the arm and shoulder and side" by Planey and Powers as he was crouched down with his coat covering his face.<br>He did not see Powers hit him. *Id. at ¶ 52.* |
| **3rd Alleged Attack: outside JTAG**<br><br>None. | None. | Powers allegedly hit him on the side of his head and shoulder, followed by hits and kicks to his head, arms, back and legs, from a group of Off-duty Officers he could not identify, all while he was covering his head with his coat on the street north of JTAG. *Id. at ¶ 53.* | An unknown number of Off-duty Officers hit him as he is crouched on the ground outside JTAG.<br><br>Powers is not identified. *Id. at ¶ 59.* |

Plaintiffs argue (at 19) that these "statements are not inconsistent; they are simply differing levels of detail." That explanation is belied by the record before this Court. The summary chart shows that Barry Gilfand's stories are fundamentally inconsistent as to, among other things, two key facts that should be consistent in all of these statements, no matter their

length: (1) the number of alleged attacks outside the bar (in some instances, he says one, in some he says two) and (2) whether Powers participated in these alleged attacks (in some instances, he says yes, in some, he says no).

- **Statement to State's Attorney, January 2006.** For example, Plaintiffs argue (at 19) that the two-page summary of Barry Gilfand's interview with the State's Attorney's Office "does not contain all the detail of Barry's 465-page deposition from this case." This truism misses the point. The two-page interview summary, dense with facts, certainly contains facts central to Barry Gilfand's complaint, such as the number of times he was allegedly attacked outside the bar, and by whom. These are not inconsequential details. To suggest that Barry Gilfand was never asked these key questions, or that he was asked them but his answers did not make it into the summary, is disingenuous.

- **Dramshop Action Deposition, January 2008.** Plaintiffs similarly argue (at 19) that Barry Gilfand's JTAG deposition (at over 100 pages long) is "significantly less detailed…than the deposition in this case." This again misses the point, since Barry Gilfand was specifically asked during his JTAG deposition to describe what happened to him outside the bar just after he exited the vestibule. *L.R. 56.1 Statement at ¶ 58.* He described *one* alleged beating, *not two*, and *he did not identify Powers as participating in the alleged beating*. *Id.* Plaintiffs claim (at 19-20) that Barry Gilfand did not identify Powers because he was never asked to. But Barry Gilfand did talk about Powers in that deposition. For example, when later describing Powers, Barry Gilfand once again neglects to identify him as participating in the alleged attack outside the bar. *Ex. 64 at 65:22-66:3.*

7

- **Barry Gilfand's Criminal Trial Testimony, March 2009.** Moreover, Barry Gilfand in his criminal trial testimony also failed to identify Powers as one of the Off-duty Officers who allegedly attacked him outside the bar. *L.R. 56.1 Statement at ¶ 59.*

Given multiple opportunities to identify Powers as one of the participants in the alleged beating(s) outside the bar, and on two occasions after he retained counsel, but close in time to the incident, Barry Gilfand failed to identify Powers as one of the participants. Equally telling is Barry Gilfand's testimony at the criminal trial. Barry had an opportunity to set the record straight. He was in a position to hold one of his alleged attackers criminally liable for his alleged brutal beatings. But when asked if he knew "who it is that hit…[him]," he said "No." *Exhibit 38 to L.R. 56.1 Statement at 248:7-9.*

### b. Contradiction by video

As with Barry Gilfand's ever-changing testimony, the video evidence contradicts Plaintiffs' allegation that Powers attacked Barry Gilfand on two separate occasions outside the bar. In particular, the video shows Barry Gilfand after the alleged beatings occurred (1) standing within a few feet of Powers, with neither one bothered by the other's presence, even though moments before Powers was allegedly attacking him; (2) aggressively gesturing, with arms raised, at bar employees; and (3) walking on the sidewalk outside the bar without any splinting or other indication of pain. *Memo at 25-27.*

Plaintiffs fail to explain these contradictions by the video record. First, and contrary to Plaintiffs' efforts (at 24) to suggest otherwise, immediately after the alleged beatings outside the bar occurred Barry Gilfand and Powers stood within 10 feet of one another, with no one in between them, and neither one seemed at all concerned by the other's presence. *See Camera 1 at 3:43:58.* Plaintiffs cite (at 24) a later portion of the video (3:44:14) to argue that Barry Gilfand

only approached the vestibule after Powers had moved away. But Plaintiffs fail to explain how, at 3:43:58, an alleged attacker and his alleged victim could have stood within feet of one another, unbothered.

Second, Barry Gilfand's aggressive gesturing—in particular, raising his arms (thereby exposing his allegedly battered ribs) and pointing and gesturing aggressively—is not medically consistent with someone who just received multiple beatings to the ribs and back. *L.R. 56.1 Statement at ¶¶ 90-93, 95.* Plaintiffs concede this argument, since they fail to address it in their Response.

Third, as to Barry Gilfand's apparently pain-free walking, Plaintiffs confusingly argue (at 25) that "Barry never claimed that he was beaten so badly that he had trouble moving or walking." Barry Gilfand never had to claim that he had trouble moving or walking. His description of the beatings—that first Planey and Powers hit him as he crouched down on the ground outside the bar, then four or five Off-duty Officers, including Powers, hit and kicked him in his head, arms, back, and legs—is a description of two savage beatings. *L.R. 56.1 Statement at ¶¶ 49, 53.* Common sense dictates that Barry Gilfand's body would have borne evidence of those beatings. And yet, his thin, Causasian body *had no bruising. L.R. 56.1 Statement at ¶¶ 63, 68, 83.* Two medical experts have offered unchallenged testimony that Barry Gilfand would not have moved the way he does on the video, with no splinting and no apparent signs of pain, had he been subjected to the beatings he describes in his deposition. *L.R. 56.1 Statement at ¶¶ 90-93.*

### c.    Contradiction by medical records

Barry Gilfand's medical records, which reveal *zero* objective signs of injury, *L.R. 56.1 Statement at ¶ 94,* leave absolutely no room for doubt: he was not savagely beaten with punches and kicks to the head, arms, back, and legs by up to five men at a time during two separate

attacks, as well as punched in the face and the side while pushed up against the vestibule, as Barry Gilfand has testified. Rather than explain these medical records, Plaintiffs misunderstand the purpose of the medical records, scramble to downplay Barry Gilfand's injuries, and equivocate about his alleged attempts to correct the record. The facts, however, are clear: Barry Gilfand was never injured; he opportunistically and repeatedly exaggerated an initial (and what Plaintiffs now concede to be incorrect) diagnosis of one *possible* rib fracture by testifying, on three occasions, that he had as many as four rib fractures (or four fractures to the same rib); and only after Defendants' medical experts dismantled Barry Gilfand's allegations of injury have Plaintiffs retreated to their current position. But even this position is contradicted by Barry Gilfand's testimony, Plaintiffs' amended interrogatory answers, and Barry Gilfand's internally inconsistent medical records.

The medical evidence is important at this stage of the case to establish that the beatings never happened and therefore no reasonable jury could find that Powers has liability to Barry Gilfand. This is evidence about liability—not damages, as Plaintiffs suggest. Plaintiffs claim (at 26) that "Defendants ask this Court to deny Barry's excessive force claim because he did not have severe medical injuries." They then cite a case holding that, to survive summary judgment on an excessive force claim, "there is no requirement that plaintiffs show any particular degree of injury." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). Plaintiffs have misunderstood the purpose of Defendants' reliance on the medical records. Defendants do not argue, as was the case in *Gonzalez*, that Plaintiffs were injured, but not injured enough to warrant excessive force. As the medical records make perfectly clear, Barry Gilfand *was not injured at all*. Accordingly, the medical records conclusively prove that Plaintiffs' story—that Barry Gilfand was savagely punched and kicked to the head, arms, back, and legs by up to five men at

a time during two separate attacks, as well as punched in the face and the side while pushed up against the vestibule—is too incredible to be believed.

Plaintiffs offer *no explanation* for the following medical facts, which, especially when taken together, conclusively prove that Barry Gilfand was never subjected to the beatings he described in his deposition for this case: (1) Barry Gilfand did not complain to the paramedics arriving on the scene of rib or back pain or shortness of breath, *L.R. 56.1 Statement at ¶ 62*; (2) paramedics reported no physical signs of trauma, including normal vital signs, no bruising, swelling, or cuts to the face or neck, *L.R. 56.1 Statement at ¶ 63*; (3) he waited four days before seeking medical treatment, *L.R. 56.1 Statement at ¶ 66*; (4) he then complained of "severe" pain (a 7 or 8 on a 10-point scale) mostly in his mid-back, an apparent source of pain he did not report to the paramedics minutes after the incident, *L.R. 56.1 Statement at ¶ 67*; (5) his full-body examination revealed no objective physical signs of trauma, including no bruising, normal respiration (despite his subjective complaint of breathing troubles), normal gait (despite his subjective complaint of generalized body pains), and no lacerations, *L.R. 56.1 Statement at ¶ 68*; (6) he never took any prescription or over-the-counter pain medicine for his allegedly "severe" pain, including never filling the Vicodin he was prescribed based on his subjective complaints, *L.R. 56.1 Statement at ¶ 76*; (7) four days after complaining of "severe" pain, Barry Gilfand, suffering from an unrelated bout of gastroenteritis that caused him to vomit approximately 10 times, returned to the emergency room, this time reporting *zero* pain, *L.R. 56.1 Statement at ¶¶ 78, 81*; (8) pain from a fractured rib is felt immediately and would not disappear after only eight days, and repeated vomiting would put express stress on the ribs and cause increased pain, *L.R. 56.1 Statement at ¶¶ 79, 80*; (9) his full-body examination during his second emergency room visit again revealed no physical signs of trauma, including no bruises, cuts, or swelling, no

11

shortness of breath, no tenderness to his abdomen or back or spine, and normal breath sounds, *L.R. 56.1 Statement at ¶ 83*; (10) Barry Gilfand then waited nearly four months before seeking additional medical attention, and then proceeded to cancel or not show for at least thirteen (13) physical therapy appointments in the following three months, *L.R. 56.1 Statement at ¶¶ 84, 88*.

Although all of the above medical facts overwhelmingly contradict Barry Gilfand's claims of being savagely beaten, Defendants Powers and Barnes respectfully ask this Court to pay particularly close attention to two facts: fact (7), above, as well as Barry Gilfand's complete lack of bruising. These facts demonstrates that Barry Gilfand is obviously lying about these supposed attacks. What else could possibly explain how someone could report feeling "severe" pain throughout his body (especially in his back), and yet only four days later, after having recently vomited approximately 10 times, *self-report feeling zero pain?* And how is it possible that a 5'9", 155-pound white male could be savagely beaten all over his body, yet show *zero* bumps, cuts, or bruises immediately after the incident, 4 days later, and 4 days after that?

Plaintiffs' revised story (at 24) is that Barry Gilfand initially thought he only had "bumps and bruises," and not any serious injury, which is why he waited four days before seeking medical treatment. (Of course, as the medical records clearly indicate, he had neither bumps nor bruises. *L.R. 56.1 Statement at ¶¶ 63, 68, 83*. Plaintiffs fail to explain this, too.) It was only after the emergency room doctor told him "that he had fractured ribs," Plaintiffs' story continues (at 25), that Barry Gilfand "believed that he had fractured ribs." On this account, he was just innocently reporting the injuries his doctor told him he had. What Plaintiffs fail to mention is that the emergency room physician diagnosed him with two rib fractures and the radiologist then changed the diagnosis to one *possible* fracture. *L.R. 56.1 Statement at ¶¶ 69, 70*. And yet these

12

facts did not stand in the way of Barry Gilfand testifying that he received *four* rib fractures (or *four* fractures to the same rib).

Moreover, Barry Gilfand did not testify that it was only "bumps and bruises" in his deposition in this case. Barry Gilfand testified that immediately after the accident his "back [was] hurting" and as the day continued, "the ability to just breathe in was starting to hurt more, and my back was starting to hurt more, and I – I wasn't getting better. . . . *[I]t didn't continue to feel like bumps and bruises*. It continued – it started to get worse." *See Exhibit B to Pls.' L.R. 56.1(b)(3)(B) Statement of Additional Facts, Barry Gilfand Dep. 443:13-445:3*. At the criminal trial, a few weeks after his deposition, Barry Gilfand testified that *on the day of the incident*, December 15, 2006, his pain increased and his so-called bumps and bruises "*didn't really seem like they were like just bruises*, *they felt pretty much more like I had some real injuries.*" *Ex. 63 at 270:1-24*.

Plaintiffs' last-ditch attempt to downplay Barry Gilfand's injuries is an embarrassment. Plaintiffs claim (at 25) that "[s]ince the dramshop deposition [in which Barry Gilfand testified he had four rib fractures or four fractures to the same rib], Barry has testified and amended his interrogatory answers to state that he did not in fact have fractures as his treating physician initially told him." There are two glaring problems with this explanation. First, Barry Gilfand's story about having four rib fractures did <u>not</u> change in his subsequent testimony. In both his deposition for this case and his criminal trial testimony, Barry Gilfand again claimed that he had rib fractures. *Ex. 63 at 445:4-12; Ex. 65 at 36:19-37:5*.

Second, Plaintiffs' amended answers to interrogatories, although they do state that Barry Gilfand did not have any rib fractures, repeat Barry Gilfand's lies about his alleged injuries. Plaintiffs state in their amended interrogatory answer that Barry Gilfand suffered "bruising" and

13

"contusions to his head." *Ex. 7 to L.R. 56.1 Statement, at ¶ 3.* But neither the paramedics nor either of Barry Gilfand's emergency room physicians found any bruising or head contusions. *L.R. 56.1 Statement at ¶¶ 63, 68, 83.*

The truth is, Barry Gilfand suffered no injuries because he was never savagely beaten outside the bar by Powers. All he can rely on are his own self-serving statements. This is not enough to survive summary judgment. *See Martinez v. Gade*, No. 07 C 1488, 2009 WL 780225 (N.D. Ill. March 20, 2009) (Leinenweber, J.) (granting summary judgment on excessive force claim where "the medical records refute" arrestee's allegations of abuse and arrestee "offered nothing other than his own self-serving statements that he suffered serious injuries").

**B.  Allegations Against Defendant Barnes Are Blatantly Contradicted by the Record**

**i.  Barnes Never Struck Mastrucci in the Head Near the Pool Table**

Plaintiffs allege (at 11) that Barnes hit Mastrucci in the head during the altercation near the pool table. They rely on Mastrucci's testimony and the video for support. The first lends no support; the second actually disproves their claim.

In the testimony Plaintiffs cite, Mastrucci claims that "[s]omeone hits" him. *Plaintiffs' L.R. 56.1 Statement at ¶ 19.* He does not allege that Barnes hit him. And this is not because he did not know, at the time of his deposition, which officer was Barnes. He identified Barnes as the "big guy who came up and talked to [him]." *Ex. 66, at 365:24-366:12.* Mastrucci's vague accusation is insufficient to state a claim against anyone, let alone Barnes.

Plaintiffs also claim that the video (Camera 9 at 3:39:27 to 3:39:30) "shows that Officer Barnes is the person who struck Adam." *Plaintiffs' L.R. 56.1 Statement at ¶ 19.* This is simply not true. At no point on the video, including the portion Plaintiffs cite, does Barnes strike Mastrucci. Instead, the video shows Barnes stepping in between Mastrucci and Planey as

Mastrucci lunges toward Planey. After Barnes prevents Mastrucci from attacking Planey, Mastrucci falls backwards. The video is clear: neither Barnes nor any other Off-duty Officer strikes Mastrucci in the head near the pool table. So, this allegation fails and is an insufficient basis to defeat summary judgment.

### ii.     Barnes Did Not Use Excessive Force When He Stopped a Charging Mastrucci

Plaintiffs allege (at 11) that Barnes "pushed one of the plaintiffs inside the bar." None of the Plaintiffs mentions in his deposition being pushed by Barnes inside the bar. Presumably, Plaintiffs are referring to Barnes' testimony regarding the altercation near the pool table (although they fail to include it in their exhibits). But Barnes' testimony, which is corroborated by the video, does not support an allegation of excessive force against Mastrucci. Barnes describes how Mastrucci "was coming towards [him] or at [him] in an aggressive manner" and he "felt like [Mastrucci] was going to grab...[his] person or do something to...[him] because words had been getting more and more aggressive by Aaron [Gilfand]." *Ex. 67, at 138:20-23, 139:15-16.* The video contradicts a claim of excessive force, since it clearly depicts Mastrucci charging in the direction of Barnes prior to Barnes restraining Mastrucci in self-defense. *Camera 9 at 3:39:22 to 3:39-26.*

### iii.     Barnes Did Not Punch Aaron Gilfand in the Nose in the Vestibule

Plaintiffs claim (at 16-17) that Officer Padilla's confession that he, and not Barnes, punched Aaron Gilfand in the face in the vestibule is unconvincing evidence of Barnes' innocence, since "it is premised on the false assumption that Aaron was only hit once in the vestibule." Plaintiffs have confused the issue. Aaron Gilfand's specific claim is that Barnes is the one who punched him in the face and broke his nose. Although Aaron Gilfand also claims

that a number of punches were thrown by multiple defendants in the vestibule, he specifically alleges that it was one punch that landed and broke his nose.

In addition to Padilla's confession, the video coupled with Lindsay Vanderford's testimony at the criminal trial proves that Barnes could not have been the one who threw the punch. Vanderford was very clear that she saw the punch that broke Aaron's nose occur at a specific point because she turned away in repulsion. That moment is at 3:43:13-3:43:14 and is captured on Camera 6. Vanderford admitted on the stand that Barnes was outside the vestibule at the time she alleged Aaron Gilfand was punched in the face. *L.R. 56.1 Statement at ¶ 21.*

Plaintiffs argue (at 17-18) that defense counsel at the criminal trial "manipulated the video evidence and this witness" by only showing Vanderford a portion of the video in which she is seen watching and then turning away from the vestibule. Plaintiffs claim that Vanderford moments later turned her attention back to the vestibule, and it was as this time that she saw Barnes punch Aaron Gilfand. But this is pure speculation. Vanderford's testimony could not have been clearer. She testified that she saw Aaron Gilfand get punched in the nose at some time between 3:43:00 and 3:43:13. *L.R. 56.1 Statement at ¶ 19.* That is why, at 3:43:13-3:43:14, she is seen turning away from the vestibule with her hand over her forehand in apparent disgust. She had just seen the punch. In fact, defense counsel specifically referenced Vanderford's hand-above-the-forehead gesture when he asked her if this was when she had seen Aaron Gilfand get punched. *Ex. 37 to L.R. 56.1 Statement, at 99:16-100:5.*

Plaintiffs are simply unwilling to accept testimony that squarely contradicts Aaron Gilfand's story. Their "eyewitness" was wrong and the video proves this fact. This is yet another instance in which the objective evidence blatantly contradicts Plaintiffs' suspect and

uncorroborated claims. Barnes was not in two places at the same time—he was outside on the street at the time Aaron Gilfand received the fateful punch, not in the vestibule.

### iv. Barnes Did Not Push or Shove Aaron Gilfand Outside the Bar

Plaintiffs (at 22-23) fail to rebut the evidence clearly contradicting Aaron Gilfand's fabricated allegation that Barnes pushed and shoved him outside the bar. Plaintiffs twist Aaron Gilfand's words at the criminal trial. There he clearly testified that "[r]ight before [he] entered [Lowrance's] building" there were no "words or actions exchanged" between Plaintiffs and Off-duty Officers. *L.R. Statement at ¶ 38.* Plaintiffs unduly emphasize the "*right* before" to claim that Aaron Gilfand was only talking about the seconds immediately preceding his entry into Lowrance's building, and not the moments just before when Barnes allegedly pushed and shoved him. This is an unreasonable twisting of Aaron Gilfand's words. In fact, such a distinction—between the moments right before entering the building (including the supposed shoving incident) and *the moment* immediately before entering the building—was foreign to Aaron Gilfand. He testified at his deposition for this case that it was "after Officer Barnes shoved [him that] the four…[Plaintiffs] ran to Scott's lobby." *Ex. 68, at 174:13-15.*

Moreover, Plaintiffs fail to explain why Aaron Gilfand *never mentions* this supposed pushing incident in either his SAO statement or his dramshop deposition, or why Barry Gilfand, in his deposition for this case and his dramshop deposition, also fails to allege that Barnes pushed or shoved his brother. Plaintiffs trot out the same ineffective explanation they have used before: depositions of different lengths, as well as interview summaries, contain varying degrees of detail, and this pushing incident is one of those details that did not find its way into the other depositions and SAO statement. The same rejoinder applies: a supposed incident of pushing and shoving that serves as a basis for an excessive force claim is not something that would be

excluded from an interview summary, nor is it something that a plaintiff might accidentally leave out of his deposition. And even if the pushing incident were such an inconsequential detail (and it is not), that does not explain why Barry Gilfand, in his 467-page deposition, makes no mention of Barnes pushing or shoving his brother outside the bar.

Plaintiffs also appeal to Kevin O'Janovac's testimony for support. But he only says that a group of "people outside on the street walking toward the sidewalk toward the vestibule of [Lowrance's] condo building…were pushing each other a little bit." *Plaintiffs' Exhibit CC at 166.* He does not identify Barnes as being part of this group, and he does not say that Barnes or any other Off-duty Officer was the one doing the pushing. This is evidence that there was "a little bit" of pushing going on—not evidence that Barnes pushed Aaron Gilfand.

## C. Plaintiffs Assert, Without Proof, That Powers and Barnes Failed to Intervene

Powers and Barnes address Plaintiffs' failure to intervene claim on pages 39-43 of their Memo. Plaintiffs offer no response to these arguments. They do not attempt to distinguish *Grieveson v. Anderson*, 538 F.3d 763, 777-78 (7th Cir. 2008), which prevents Plaintiffs from surviving summary judgment on a failure to intervene claim where their complaint fails to tie any specific, alleged inaction by Powers or Barnes (rather than to all of the Off-duty Officers, in general) to a particular injury. Nor do they try to distinguish *Timas v. Klaser*, 23 F.App'x. 574, 579 (7th Cir. 2001) (denying failure to intervene claim where officer "could not have seen and intervened in anything [the assaulting officers] were doing when he was in a different area of the apartment engaged in a different task") or *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997) (denying claim where "the contact between [the alleged attacker] and [the alleged victim]…[was not] so prolonged that [intervening officer] could know or be deliberately

18

indifferent to [attacker's] actions," and intervening officer "could not have undertaken any action to 'un-do' any alleged constitutional violation").

Rather than responding to Powers and Barnes's arguments—including detailed references to the video that prove that Powers and Barnes did not have a realistic opportunity to prevent the episodes of alleged abuse—Plaintiffs merely assert that Powers and Barnes "stood by and watched." These generalized allegations, unsupported by the record, are insufficient. For the reasons explained in Powers and Barnes' Memo (at 39-43), Plaintiffs' failure to intervene claim must fail.

### III. Because Plaintiffs' Claims Are Blatantly Contradicted by the Record, *Scott* Warrants Summary Judgment

As presented in Defendants Powers and Barnes' Memo, and as further explained above, Plaintiffs' scattered and internally inconsistent allegations are so "blatantly contradicted" by other testimony and official statements, video, and medical records, that this Court should reject Plaintiffs' version of the events and grant summary judgment in favor of Powers and Barnes. According to the Supreme Court, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See also Johnson v. Moeller*, 269 F.App'x. 593 (7th Cir. 2008) (applying *Scott* to reject plaintiff's version of events where medical evidence "contradicts [plaintiff's] account of a severe beating").

Plaintiffs present several reasons why *Scott* does not apply to this case. They all fail.

### A. Plaintiffs Mistake Fundamental, Factual Contradictions for Mere Credibility Issues

Plaintiffs argue (at 28-30) that Powers and Barnes are asking this Court to make findings of credibility, which is inappropriate at summary judgment. They cite a number of cases in

which plaintiffs' accounts are inconsistent, but summary judgment is denied because a reasonable jury could nonetheless find these accounts believable. These cases are fundamentally different from the present case, where objective evidence blatantly contradicts Plaintiffs' version of the events.

For example, in *Schneider v. Love*, No. 09 C 3105, 2011 WL 635582 (N.D.Ill. Feb. 10, 2011), the court denied summary judgment because the plaintiff's account of his arrest was believable. Unlike in the present case, the defendant in *Schneider* did not point to any objective evidence in the record that blatantly contradicted plaintiff's story. Accordingly, the case turned on a credibility determination, and so summary judgment was not appropriate. Several other cases on which Plaintiffs rely similarly fail to involve scenarios in which plaintiff's version of the events is blatantly contradicted by record evidence. Accordingly, they are all distinguishable. *See Stamps v. Hernandez*, No. 08 C 2196, 2010 WL 3713686, at *5 (N.D.Ill. Sept. 14, 2010) (denying summary judgment in search-and-seizure case where moving party merely questioned the credibility of the non-moving party, rather than, as here, presenting record evidence blatantly contradicting the non-moving party's version of the events); *Hinks v. Graco, Inc.*, No. 91 C 5571, 1993 WL 350193, at *3 (N.D.Ill. Sept. 3, 1993) (product liability action in which defendant never argues that plaintiff's story is blatantly contradicted by record evidence); *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (denying summary judgment in unlawful arrest case where a reasonable jury could conclude that plaintiffs were merely play-fighting and defendant officers therefore executed an illegal arrest, since defendants did not point to any record evidence contradicting plaintiffs' story); *E.E.O.C. v. Int'l Profit Assocs., Inc.*, 647 F.Supp.2d 951, 981 (N.D.Ill. 2009) (class action employment discrimination case not involving situation in which plaintiff's allegations are blatantly contradicted by the record).

**B.** **Plaintiff's Out-of-Circuit *Scott* Cases Are Distinguishable**

Plaintiffs cite two cases in which out-of-circuit courts have distinguished *Scott*.  But both of these cases involved fact patterns in which the audio recording on which defendants relied was either critically incomplete or otherwise unreliable.  *See Coble v. City of White House*, 634 F.3d 865, 869 (6th Cir. 2011) (distinguishing *Scott*, since in *Scott* "there were no allegations or indications that the [video] recording was doctored or altered in any way, or any contention that what it depicted differed from what actually happened"); *York v. City of Las Cruces*, 523 F.3d 1205, 1210-11 (10th Cir. 2008) (distinguishing *Scott*, since in *York* "only part of the incident involving [plaintiff] and the police officers was captured on an audio tape, portions of which are unintelligible").

The video in this case, on the other hand, faithfully depicted what happened that morning.  Unlike in *Coble* and *York*, the events it captured blatantly contradict Plaintiffs' allegations.  For instance, video footage of Barry Gilfand moving without pain after his alleged beatings, Barnes outside the vestibule when Aaron Gilfand was punched in the nose, and Barry Gilfand moving through the vestibule too quickly to be held up against the wall and hit—these all blatantly contradict Plaintiffs' version of the event.  Moreover, the defendants in *Coble* and *York* only relied on an (incomplete) audio recording to contradict plaintiff's allegations.  Here, other testimony and official statements, medical evidence, and a video recording all contradict Plaintiffs' claims.

**C.** **Plaintiffs Fail to Distinguish Entire Line of Post-Scott Cases Granting Summary Judgment**

Plaintiffs not only rely on easily distinguishable or irrelevant cases (see above), they also are unable to distinguish *six* § 1983 excessive force cases that rely on *Scott* to grant summary judgment.  In all six of these cases, plaintiff's allegations of excessive force are contradicted by

21

inconsistent testimony, video, or medical records. Because the facts of the present case fall squarely in line with these cases, summary judgment should be granted.

Plaintiffs' feeble attack (at 27) on *Johnson v. Moeller*, 269 F.App'x. 593 (7th Cir. 2008), completely misses the mark.[1] In *Johnson*, both objective medical evidence (plaintiff alleged that he was struck in the head but his medical evaluation, done the same day, revealed only "three bumps and two cuts that had already healed," contradicting his allegation of a severe beating earlier that day) and a video (clearly showing that defendant officer did not hit plaintiff six to eight times as plaintiff alleged) contradict plaintiff's version of the events.

Plaintiffs argue that the medical records and video actually support their allegations. This is nonsense. Video of *Planey* putting Barry Gilfand against the wall in no way supports any claim against Powers or Barnes. As for the medical evidence, Plaintiffs lie about what the records clearly indicate and fail to appreciate the difference between objective and subjective medical evidence. They claim, without citing to any medical record (there is none), that the medical records support their allegations because Barry Gilfand "had soreness in his abdominal area." But nowhere in Barry Gilfand's medical records does he even complain of "soreness in his abdominal area."[2] In any case, such a complaint, even if true (and it is not), is beside the point. Plaintiffs rely on a purely subjective, self-reported "symptom" as proof of injury. But Barry Gilfand's alleged "abdominal soreness," especially when analyzed in the context of his complete lack of any *objective* physical sign of injury, lends no support whatsoever to his medically contradicted claim.

---

[1] Plaintiffs note (at 27) that *Johnson* is an unpublished case—the implication being that its authority is questionable. But as this Court is well aware, a "court may not prohibit or restrict the citation of federal judicial opinions…that have been: (i) designated as unpublished, not for publication, nonprecedential, not precedent, or the like; and (ii) issued on or after January 1, 2007." Fed. R. App. P. 32.1.

[2] As discussed in Powers and Barnes' Memo (at 29-31), Barry Gilfand's self-reported complaints were internally inconsistent: to the paramedic he reported head pain, four days later he reported generalized pain and back pain, and four days after that he reported no pain at all.

*Lust v. Razzino*, No. 08 C 7346, 2010 WL 845942 (N.D.Ill. March 3, 2010), another §
1983 excessive force case in which summary judgment was granted where medical evidence
contradicted plaintiff's claims of abuse, also controls here. Plaintiffs argue (at 26-27) that the
court's holding "firmly rested" on the fact that plaintiff's description of the assaulting officers
did not match defendants, but had little or nothing to do with the fact that plaintiff alleged that
the police kicked him several times in the shoulder and punched him six times in the face—even
though "the relevant medical records show no evidence of any head or shoulder injuries or
trauma." *Lust*, 2010 WL 845942, at *4. Plaintiffs are speculating here. The court in no way
suggests—and certainly does not state—that the blatant contradiction by medical evidence is
mere dicta. In fact, the paragraph of the opinion that cites *Scott* and then applies *Scott* to the
facts discusses both factors. *Id*. at *7 (paragraph beginning "Meanwhile,…").

Plaintiffs (at 29) accurately recount the facts of *Reed v. City of St. Charles, Missouri*, 561
F.3d 788 (8th Cir. 2009), but offer no explanation why the facts of the present case meaningfully
differ. Instead, they simply assert (at 29), without analysis, that *Reed* "fails to support
Defendants' argument in light of the record in this case." Plaintiffs have failed to explain how
the contradictory statements and contradictory medical records warranting summary judgment in
*Reed* are distinguishable from the similarly contradictory record here.

Moreover, Plaintiffs make no mention of three other § 1983 post-*Scott* cases Powers and
Barnes cite in their Memo (at 28-29 n. 8). Like the other cases discussed in this section, the
courts in *Vicks*, *Brady*, and *Chavez* all grant summary judgment on § 1983 claims where medical
evidence contradicts the plaintiff's version of the events.

23

## CONCLUSION

Plaintiffs have wasted enough of this Court's time with their make-believe allegations. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and…it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Plaintiffs' story is so thoroughly contradicted by the record, so untethered from the facts, that no reasonable jury could believe it. Accordingly, Defendants Powers and Barnes respectfully request that this Court grant their motion for summary judgment on Counts I, II, III, and IV.

Respectfully submitted,

Dated: June 14, 2011

By: /s/ Aaron Chait

Lori E. Lightfoot
Jessica L. Felker
Aaron Chait
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
*Attorneys for Defendants Paul Powers and Gregory Barnes*