IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

| | | |
|---|---|---|
| BARRY GILFAND, AARON GILFAND, ADAM MASTRUCCI, AND SCOTT LOWRANCE | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| SGT. JEFFERY PLANEY, OFFICER GREGORY BARNES, OFFICER DEMETRIOS KEREAKES, OFFICER VINCENT MATTHEWS, OFFICER MATIAS PADILLA, OFFICER PAUL POWERS, OFFICER ERIKA WOOSLEY, SGT. DALE KINGSLEY, OFFICER KENNETH CARLYON, OFFICER FREDERICK COLLINS, OFFICER NICOLE MAYOSKI, OFFICER ANA PINA, OFFICER JESUS ENRIQUEZ, OFFICER MICHAEL HOWE, OFFICER DONALD LUPO, OFFICER GREGORY MORABITO, and THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 07 C 2566<br><br>Judge Harry Leinenweber<br><br>Magistrate Judge Keys |
| Defendants. | ) | |

**DEFENDANT OFF-DUTY OFFICERS PAUL POWERS AND GREGORY BARNES' OMNIBUS RESPONSE TO PLAINTIFFS' MOTIONS *IN LIMINE* NOS. 1-5, 9-11, AND 19**

Defendant Off-Duty Officers Paul Powers and Gregory Barnes submit this Omnibus Response to Plaintiffs' Motions *in Limine* Nos. 1-5, 9-11, and 19.[1]

**I. Response to Plaintiffs' First Motion *in Limine* To Bar Reference to the Dram Shop Lawsuit and Settlement**

In their First Motion *in Limine*, Plaintiffs seek to bar reference to the dram shop lawsuit and the resulting settlement. Defendants Powers and Barnes do not object to excluding reference

---

[1] Defendant Off-Duty Officers Powers and Barnes respond to Plaintiffs' Motions *in Limine* Nos. 7, 8, 12, and 13 in separate responses.

to the settlement of the dram shop lawsuit. However, as set forth in more detail below, the fact that Plaintiffs filed an earlier lawsuit against the bar where the incident at issue here occurred is relevant, is not barred by Rule 404(b), and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

First, it is no secret that Defendants contend that the Gilfand brothers, in particular, have fabricated and/or embellished many of their key allegations against the Off-Duty Officers. Defendants intend to argue that these under/unemployed Plaintiffs were motivated by greed, pure and simple. Defendants should be permitted to cross-examine Plaintiffs regarding the motivation behind filing multiple lawsuits. Plaintiff Scott Lowrance has testified that before the incident concluded one of the bar personnel informed him that the other men involved in the altercation in the bar were off-duty police officers. *Scott Lowrance Dep. 110:9-11* (Ex. A, attached) ("I remember at some point asking Lindsay [Vanderford, a bar employee,] who were those guys. She said they were off-duty police officers."). After learning that the Defendant Off-Duty Officers were members of the Chicago Police Department, Plaintiffs accused the bar owner, Jodi Agee, "of hiring the cops that were in – the off-duty cops that were in there, that they were our employees, that we were protecting them because they're CPD." *Jodi Agee Dep. 61:24-62:3* (Ex. B). Later inside the bar, Plaintiffs immediately threatened to sue the bar in the aftermath of the incident, seemingly more concerned about the possibility of a law suit than in seeking medical attention for the alleged injuries that they now seek damages for. *Jodi Agee Dep. 144:7-8* (Ex. B) ("[I]t was one of the [Gilfand] brothers who said that they were calling an attorney…."). The fact that Plaintiffs threatened to sue the bar minutes after the incident while declining medical attention, and later did sue the bar, is relevant to Plaintiffs' current motivations in bringing this

lawsuit. This evidence also demonstrates that Plaintiffs primary motivation was a financial windfall.

Second, Rule 404(b) does not bar reference to a plaintiff's closely related, prior lawsuit arising out of the same underlying incident. Instead, Rule 404(b) bars reference to prior lawsuits if the sole purpose of the reference to the prior lawsuits is to attack plaintiff's general litigiousness. *See Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 496 (7th Cir. 1998) (reference to prior lawsuit "must tend to show something other than a plaintiff's tendency to sue"). Defendants do not intend to suggest that Plaintiffs have a history of bringing frivolous lawsuits. Defendants instead intend to demonstrate that Plaintiffs, within minutes of the incident, threatened to and eventually did sue the bar. This evidence is directly relevant to Plaintiffs' motives underlying this suit and their claim for damages. It provides the motivation for at least the Gilfand brothers' obvious fabrication of allegations against the Off-Duty Officers and Adam Mastrucci's completely bogus claim of injuries inflicted by the Off-Duty Officers. Thus, the fact of this prior lawsuit is relevant to Plaintiffs' financial motivation for bringing the current lawsuit and their purported damages.

Accordingly, Defendant Off-Duty Officers Powers and Barnes respectfully request that the Court deny Plaintiff's First Motion *in Limine* To Bar Reference to The Dram Shop Lawsuit and Settlement insofar as that Motion seeks to bar reference to the limited fact that Plaintiffs filed a dram shop lawsuit against the bar.

II. **Response to Plaintiffs' Second Motion *in Limine* to Bar Reference to the Criminal Prosecution and Disposition**

In their Second Motion *in Limine*, Plaintiffs seek to bar reference to the criminal prosecution and disposition. Defendants Powers and Barnes do not object to this motion.

However, Defendants Powers and Barnes respectfully request that this Court permit the use of criminal trial testimony and grand jury testimony for the purposes of refreshing testifying witnesses' recollections and/or impeachment. FED. R. EVID. 612, 613. To avoid reference to the criminal prosecution, Defendants Powers and Barnes respectfully suggest that grand jury testimony and criminal trial testimony be referred to as "prior testimony" during the trial and that to the extent that any prior recorded testimony is necessary to refresh recollections or to impeach a witness, all prior recorded testimony be appropriately redacted to review any case captions or other headings which would signify that the testimony arose in the context of a criminal proceeding.

III. **Response to Plaintiffs' Third Motion *in Limine* to Bar Reference to the Death of Paul Powers' Father**

In their Third Motion *in Limine*, Plaintiffs seek to exclude reference to the death of Paul Powers' father. The Motion should be denied because this evidence is plainly relevant and admissible. The death of Defendant Powers' father is a critical fact that explains both why Defendant Powers was crying at the bar and why Plaintiffs instigated the altercation. Plaintiffs have argued that an altercation between the parties was an unprovoked attack by the off-duty police officers. To the contrary, the circumstances which lead to the confrontation between the two groups began when Plaintiffs mocked Powers when he was visibly crying and upset over the death of his father.

There is an approximately 10 minuteg sequence in the videotape, before any physical contact between the parties, in which Powers is visibly upset and is reacting to taunts from the Plaintiffs and other officers are consoling him and tell him to ignore the taunts. *See Pl. Exh. 1, Camera 4 at 3:27:24 to 3:37:37*. Denying the jury an explanation of why Defendant Powers was

4

crying for ten minutes on the video would unfairly suggest that he is unstable.  The Plaintiffs' proffered limited explanation for this passage of the videotape and others in which Powers is obviously upset and crying would be highly prejudicial to Powers because it would be incomplete and allow for improper inferences about Powers' mental state.   In order to give context to this long passage in the videotape, and consistent with their prior testimony, both Powers, Barnes and other off-duty officer defendants would necessarily have to put the circumstances in the context of Powers' grief over his father.

Moreover,  Powers' emotional state over his father's death explains a lot about the actions of other off-duty officers over the course of the incident as reflected both on and off the videotape.   For example, defendant Barnes tried to quell the offensive comments coming from Adam Mastrucci and Aaron Gilfand.  Plaintiffs fail to mention in their Motion that Defendant Barnes told Plaintiffs prior to the incident, but after Plaintiffs had begun mocking Defendant Powers, that Powers was grieving the death of his father, asked Plaintiffs to give Powers a break, and even offered to buy Plaintiffs a drink to diffuse the situation.  *Gregory Barnes Dep. 128:19-20, 129:5-7* (Ex. C) ("I said listen, my buddy's dad just died.  Could you give him a little break....I asked them let me buy you guys a round, buy a shot, it's on me.").  After hearing of the death of Defendant Powers' father, Plaintiff Aaron Gilfand told Barnes: "fuck that pussy." *Gregory Barnes Dep. 128:22* (Ex. C).  In other words, Plaintiffs knew Powers was crying over the death of his father *and because of that* continued to mock him.   In addition, in their prior testimony in related proceedings, other off-duty officers have indicated that they either took certain actions, specifically the protection or expressed concerns about Powers throughout the course of the incident, or did not take certain actions as a result of their concern for a grieving Powers.   Therefore, Plaintiffs' suggestion that defendants be restricted to simply stating what is

5

obvious from the videotape, i.e that Powers was upset, without more, would result in portraying an inaccurate picture of the events of the incident in question, which would be misleading to the jury and highly prejudicial to Powers and the other off-duty officers. Such a parsing of the narrative would also be prejudicial to the other officers because it would deny them credible explanations for many of their actions that night which were directly in response to Powers' expressions of grief.

Moreover, all of the off-duty officers should be able to provide a fulsome and truthful explanation about the incident as it unfolded to combat the argument that will likely be propagated by the Plaintiffs that they were the victims of an unprovoked fight. In fact, Aaron Gilfand denies making the provocative "fuck that pussy" statement and Plaintiffs have generally argued that "the fight" between them and the Off-Duty Officers was unprovoked. Plaintiffs spent considerable time during the course of discovery developing their theme of an unprovoked fight. *See, e.g., Melissa Smith Dep. 18:16-22* (Ex. D) (asking bar employee whether the off-duty officers interacted with Plaintiffs prior to the physical altercation); *Lindsay Vanderford Dep. 39:11-40:1* (Ex. E) (asking bar employee whether Powers "was trying to initiate an alteration with someone"). The truth is that Aaron Gilfand's callous response was overheard by other officers and explains why various officers were alerted to the possibility of an altercation and took various actions to guard against a dangerous escalation in the tensions between the two groups. Defendants should be permitted to offer a complete explanation of the events, including why Powers was crying and upset. *See* FED. R. EVID. 106; *U.S. v. Yarrington*, 640 F.3d 772, 780 (7th Cir. 2011) (finding that the "doctrine of completeness, as codified in Federal Rule of Evidence 106, is applied to oral statements," and explaining that "a complete statement is required to be read or heard when it is necessary to (1) explain the admitted portion, (2) place the

6

admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.") (internal quotation marks and citation omitted).

Accordingly, Defendant Off-Duty Officers Powers and Barnes respectfully request that the Court deny Plaintiff's Third Motion *in Limine* to Bar Reference to the Death of Paul Powers' Father.

**IV.     Response to Plaintiffs' Fourth Motion *in Limine* to Bar Reference to Dr. Morganstern's [sic] Unrelated Civil Lawsuit**

In their Fourth Motion *in Limine*, Plaintiffs seek to bar reference to Dr. Morgenstern's Section 1983 lawsuit against several Cook County sheriffs' officers, his refusal to answer any questions regarding this Section 1983 lawsuit, and his walking out of his first deposition. Plaintiffs' Motion is ironic given that Dr. Morgenstern is their hand-picked doctor, who at the time of their decision to seek him out for treatment, had a range of conflicts and potential biases of which Plaintiffs were fully aware, in particular his bias against law enforcement personnel. Having chosen Dr. Morgenstern with his baggage of biases, Plaintiffs are not in any position now to shield these facts from the jury, particularly since they bear directly on his credibility as a medical provider.

Dr. Morgenstern examined Barry and Aaron Gilfand after the incident and will testify about his assessment of their purported injuries. Plaintiffs' Motion should be denied because Dr. Morgenstern's Section 1983 lawsuit, and his corresponding attitude toward police officers, bears directly on his credibility as a witness in this case. In addition, Dr. Morgenstern's relationships with Plaintiffs' initial attorney (Sally Saltzberg represented Dr. Morgenstern in his prior lawsuit against law enforcement) and the Gilfands' father (David Gilfand is Dr. Morgenstern's friend, accountant, and was paid *by Dr. Morgenstern* to create loss of income calculations to be used in Dr. Morgenstern's Section 1983 lawsuit), and the fact that either David Gilfand or Sally

7

Saltzberg (or both) specifically referred Plaintiffs to Dr. Morgenstern for treatment, bear on the integrity of his testimony.

First, Dr. Morgenstern has already admitted his bias against the police, and evidence regarding this bias is relevant and admissible. When asked how he knows Sally Saltzberg, Plaintiffs' initial attorney in this case, Dr. Morgenstern volunteered his prejudice against law enforcement:

> "Well, I hope this doesn't prejudice the case. Something happened to me about ten years ago, and I sued a big law firm in the city, and I won. Because they lied to a judge, and I was put in jail unnecessarily at Cook County. That was the worst experience of my life. And I was there for a while, and I sued the Cook County boys for beating me up and – but I do respect the Chicago Police, ***but I have no respect at all for Cook County Police at all. So if that prejudices the case, I'm sorry***."

*Dr. Morgenstern Dep. 7:17-8:2* (Ex. F) (emphasis added). Evidence regarding Dr. Morgenstern's Section 1983 lawsuit is admissible to show his bias against law enforcement. *U.S. v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) ("Extrinsic evidence of a witness' bias, however, is admissible to impeach that witness and is never a collateral issue."); WEINSTEIN'S FED. EVID. § 607.04 (2012) ("Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction.").

Second, Dr. Morgenstern's relationships with Plaintiffs' initial attorney and the Gilfand brothers' father call into question his ability to provide an unbiased assessment of Plaintiffs' purported injuries. As Plaintiffs concede (at 2), in his Section 1983 lawsuit "Dr. Morgenstern was represented by Sally Saltzberg who originally represented Plaintiffs and filed this action in 2007." Plaintiffs also acknowledge (at 2) that "the Gilfands' father [i.e., David Gilfand] was Dr.

8

Morgenstern's account at the time of his lawsuit, Mr. Gilfand was a witness in that lawsuit and got to know Sally Saltzberg."[2] After having worked with Sally Saltzberg on Dr. Morgenstern's Section 1983 lawsuit, David Gilfand referred his sons to Ms. Saltzberg shortly after the incident at issue here. *David Gilfand Dep. 48:2-13* (Ex. G). This web of connections between Dr. Morgenstern, Sally Saltzberg, and Plaintiffs' father, which arose out of Dr. Morgenstern's lawsuit against law enforcement, raises doubts about the integrity of Dr. Morgenstern's assessment of Plaintiffs' alleged injuries.

Accordingly, Defendant Off-Duty Officers Powers and Barnes respectfully request that the Court deny Plaintiff's Fourth Motion *in Limine* to Bar Reference to Dr. Morgenstern's Unrelated Civil Lawsuit.

**V.    Response to Plaintiffs' Fifth Motion *in Limine* to Bar Reference to Inadmissible Citations and Arrests**

In their Fifth Motion *in Limine*, Plaintiffs seek to bar reference to Plaintiffs' numerous arrests and citations, including Plaintiff Aaron Gilfand's D.U.I. sentence issued just months before the incident and court-ordered supervised treatment that he was undergoing *at the time* of the incident in question. Defendants Powers and Barnes agree to exclude any affirmative reference to all of Plaintiffs' prior citations[3] and arrests *except* for Plaintiff Aaron Gilfand's D.U.I. Reference on cross-examination to this D.U.I. is relevant and admissible for impeachment purposes. Aaron Gilfand's D.U.I. sentence and court-ordered treatment is directly relevant to this case. Aaron Gilfand was in the middle of his court-ordered alcohol abuse treatment when the incident at issue here occurred. Records from DUI Professional Providers

---

[2] Plaintiffs neglect to mention that Dr. Morgenstern paid David Gilfand for his accounting work related to the Section 1983 lawsuit. *David Gilfand Dep. 21:23* (Ex. G) ("Dr. Morgenstern paid me for my time.").
[3] Obviously, if in their testimony the Plaintiffs make any statements which directly contradict or bear on their past contact with law enforcement, then Defendants reserve the right to use this past history for impeachment purposes.

show that while he was telling counselors at DUI Professional Providers that he consumed alcohol on only three occasions in the first four months after his D.U.I., he was indeed at the Jefferson Tap drinking just hours after attending one of four court-ordered alcohol abuse treatment sessions. *Defs. Powers-Barnes Ex. 79, at POWERS-CV 000706, 709* (Ex. H). Moreover, Aaron's statement to DUI Professional Providers contradicts his admission to medical personnel involved in the care of his nose that he did drink on a weekly basis. *See Pl. Exh. 10, at 12* (Ex. I) (pre-anesthetic evaluation for nasal surgery notes "ALCOHOL USE" at "5 beers/wk"). Aaron Gilfand's willingness to tell one story about his drinking in order to successfully complete court supervision and another story to his anesthesiologist bears directly on his credibility and is highly relevant.

Additionally, Aaron Gilfand testified in his deposition in this case that, in his family, "[w]e enjoy an occasional drink here or there, but we're not heavy drinkers." *Aaron Gilfand Dep. 397:15-17* (Ex. J). FED. R. EVID. 608(b). In the event Aaron Gilfand testifies at trial that he is "not [a] heavy drinker[]" or does not have an alcohol problem, or was not intoxicated at the time of the incident, Defendants should be permitted to impeach this testimony by referring to his D.U.I. and court-mandated alcohol abuse treatment, and specifically his claim that he did not drink alcohol on a weekly basis.

## VI. Response to Plaintiffs' Ninth Motion *in Limine* to Bar Reference to Hearsay Testimony from Detectives

In their Ninth Motion *in Limine*, Plaintiffs seek to bar reference to hearsay testimony from detectives. This motion is frivolous and unnecessary. Obviously, all parties to this lawsuit are aware of the rules of evidence and specifically hearsay and its exceptions. Defendants intend to comply with the hearsay rules and its exceptions with every witness and not merely the detectives at issue in this motion. In addition, because Plaintiffs acknowledge (at 1) that these

detectives may testify as impeachment witnesses if trial testimony of other witnesses is contradicted by prior statements made to detectives and memorialized in investigative reports, Defendants Powers and Barnes do not understand the basis for this motion and consider it irrelevant.

**VII. Response to Plaintiffs' Tenth Motion *in Limine* to Bar Reference to Aaron Gilfand's 2008 Termination from Tradelink and Unemployment**

In their Tenth Motion *in Limine*, Plaintiffs seek to bar reference to Aaron Gilfand's 2008 termination from Tradelink and his subsequent receipt of unemployment compensation. Defendants Powers and Barnes do not oppose this motion in its entirety. However, Defendants reserve the right to raise the fact of Aaron Gilfand's unemployment (as opposed to the fact of his termination from Tradelink, any specific details related to this termination or his receipt of unemployment benefits), since that fact is relevant to the motivation for prosecuting this lawsuit, i.e. greed, and underlies Aaron Gilfand's very belated claim that Barnes was the person who punched and broke his nose, when Aaron initially did not make any such identification when called upon to do so soon after the incident. FED. R. EVID. 401, 402. *Compare, e.g.,* Ex. K (three weeks after incident in his OPS statement Aaron Gilfand does not identify Barnes as one of his alleged attackers) *with* Ex. L (twelve days later he is unable to identify Barnes in police photo-spread) *with* Ex. J (two *years* later at his deposition he not only identifies Barnes as one of his alleged attackers but as *the* person who punched him in the nose). Moreover, Defendants reserve the right to introduce evidence related to Aaron Gilfand's termination from Tradelink and his unemployment to the extent that Plaintiffs suggest that Aaron Gilfand's alleged "emotional distress" has precluded him from working.

## VIII. Response to Plaintiffs' Eleventh Motion *in Limine* to Bar Reference to the Plaintiffs' "Failure to Cooperate" with Police Investigators Immediately Following the Assaults

In their Eleventh Motion *in Limine*, Plaintiffs seek to bar reference to the Plaintiffs' failure to cooperate with police investigators immediately following the incident. The Motion should be denied because this evidence undermines Plaintiffs' credibility since it shows that they consulted with each other and their shared attorney before cooperating with the investigation. Also, the timing and number of the Office of Professional Standards (OPS) investigators' attempts to contact Plaintiffs after the incident is plainly relevant to Plaintiffs' claim that the Defendant City of Chicago failed to adequately respond to the Jefferson Tap incident and has not instituted policies to investigate, in a timely manner, allegations of police misconduct.

First, Plaintiffs' refusal to cooperate with OPS investigators in the weeks after the incident is relevant and admissible evidence that shows that Plaintiffs chose to consult with their attorney and "get their story straight" before cooperating with the investigation. Hours after the incident Aaron Gilfand "refused to sign any papers or to allow someone from OPS to interview him." *Defs. Powers-Barnes Ex. 7* (Ex. M). The next day, Aaron Gilfand admitted to an OPS investigator that "he wanted to consult the other victims before providing a statement." *Defs. Powers-Barnes Ex. 9* (Ex. N). On December 22, 2006, Detective Carlos Cortez attempted to interview Barry Gilfand at his apartment. After telling Detective Cortez "to wait at the door as he went back up to his apartment," Barry Gilfand later "returned to the front door while he was having a conversation on his cell phone" and told Detective Cortez "I am not going to give a statement at this time." *Defs. Powers-Barnes Ex. 21, at 2* (Ex. O). Later that day, Plaintiffs' then-attorney, Sally Saltzberg, told Detective Cortez in very emphatic terms that "she did not want her clients to be contacted by any member of the Chicago Police Department or OPS," and that "[i]f any contact was made with her clients, they will not cooperate with either agency."

12

*Defs. Powers-Barnes Ex. 21, at 2* (Ex. O). Finally, on January 6, 2007, over three weeks after the incident, Barry Gilfand, Aaron Gilfand, and Scott Lowrance, *together with their shared attorneys*, finally agreed to give statements to OPS. This chain of events illustrates a centerpiece of Defendants' theory of the case: Plaintiffs have conspired to tell a unified—albeit unbelievable and internally inconsistent—story of the events of that night.

Second, evidence of OPS investigators' failed attempts to contact Plaintiffs after the incident is relevant to counter Plaintiffs' *Monell* claim, which complains of the City's "failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers, [and] failure to promptly record witness statements or preserve evidence." *Defs. Powers-Barnes Ex. 63, at 6-7* (Ex. P). It is also relevant to Plaintiffs' claim that the City and responding officers failed to adequately respond to the incident at Jefferson Tap. *Defs. Powers-Barnes Ex. 63, at 9* (Ex. P) ("City policymakers are aware of (and condone and facilitate by their inaction) a 'code of silence' in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case."). Evidence of OPS' multiple attempts to contact Plaintiffs for interviews, including attempts within hours of the incident, plainly support the City's position that it timely investigates allegations of police misconduct. Plaintiffs' theory is that a bunch of rogue off-duty police officers attacked the Plaintiffs without provocation and were emboldened with the fact that the City of Chicago was deliberately indifferent in investigation and punishing misconduct. The repeated attempts by OPS and the detectives to interview the Plaintiffs in the immediate aftermath of the incident and the Plaintiffs' repeated failure to cooperate, goes right to the heart of the *Monell* claim and belies the argument that the off-duty officers could batter the Plaintiffs with impunity.

13

Accordingly, Defendant Off-Duty Officers Powers and Barnes respectfully request that the Court deny Plaintiff's Eleventh Motion *in Limine* to Bar Reference to the Plaintiffs' "Failure to Cooperate" with Police Investigators Immediately Following the Assaults. Alternatively, if Plaintiffs are willing to stipulate that OPS investigators attempted to contact them on multiple occasions in the three weeks following the incident, but they refused to cooperate, Defendants Powers and Barnes are willing to agree not to call OPS investigators or Chicago Police Department detectives to present this evidence of non-cooperation.

IX. **Response to Plaintiffs' Nineteenth Motion *in Limine* to Bar Improper and Inflammatory Argument Relating to Plaintiff Barry Gilfand's Education and Job History**

In their Nineteenth Motion *in Limine*, Plaintiffs seek (at 2) to bar reference to "the number of colleges Barry [Gilfand] attended, the number and specific types of jobs he has had, the roommates he has had and/or the number of locations he has lived." Defendants Powers and Barnes do not oppose this motion. However, Defendants reserve the right to present evidence regarding, and to refer to, Barry's place of employment, his title, if any, and the *pay* of Barry Gilfand's jobs prior to the incident. As Plaintiffs acknowledge (at 1), "Defendants will argue that this lawsuit is being brought based on greed." Accordingly, the relatively low pay of Barry Gilfand's prior jobs, the length of his employment, and the frequency with which he changed jobs is relevant to his motivation to change his testimony in pursuit of a lawsuit payday. FED. R. EVID. 401, 402. Moreover, if Plaintiffs argue that Barry Gilfand cannot hold down a job because of his "emotional distress" from the incident, evidence regarding Barry Gilfand's education and job history will become relevant to prove that his educational and work history—and not the incident at Jefferson Tap—is to blame for his current employment status.

Dated: April 25, 2012					By: /s/ Lori E. Lightfoot

*Attorneys for Defendants Powers and Barnes*
Lori E. Lightfoot
Dana S. Douglas
Emily M. Emerson
Aaron Chait
Andrew J. Rima
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 25, 2012, the foregoing **Response to Plaintiffs' Motions** *in Limine* **1-5, 9-11, and 19** was served electronically to counsel for all parties.

/s/ Lori E. Lightfoot
One of the Attorneys for Defendants Powers and Barnes