IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARRY GILFAND, *et al.*,

                 Plaintiffs,

       v.

SGT. JEFFREY PLANEY, *et al.*,

                 Defendants.

Case No. 07 C 2566

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Barry Gilfand, Aaron Gilfand, Adam Mastrucci, and Scott Lowarance's (collectively, the "Plaintiffs") Motion for a New Trial on certain claims. For the reasons stated herein, the Court denies Plaintiffs' motion in its entirety.

## I. BACKGROUND

This civil case stems from a December 2006 bar fight at the Jefferson Tap bar in Chicago, Illinois. In the early morning hours of December 15, 2006, an altercation between Plaintiffs and Off-Duty Chicago Police Officers Jeffrey Planey, Gregory Barnes, Vincent Matthews, Paul Powers, Matias Padilla, Demetrios Kereakes, and Erika Woosley (collectively, the "Off-Duty Officers") ensued. At some point after the fight escalated, someone at the bar called 911. At various points in time, Responding Officers Kenneth Carlyon, Frederick Collins, Nicole Mayoski, Ana Pina, Donald Lupo, and Gregory Morabito (collectively, the "Responding Officers")

arrived at the Jefferson Tap to survey the situation. Allegedly, when Responding Officers Lupo and Collins arrived at the scene, Off-Duty Officer Planey informed them that he had the situation under control and their assistance was not needed. After hearing this, Officers Lupo and Collins left. Later, Responding Officers Mayoski and Pina arrived, however, allegedly Off-Duty Officer Barnes informed them that it was only a minor bar fight. Subsequently, Mayoski and Pina left the scene.

The preceding events are what provided the grounds for this lawsuit. Plaintiffs filed a seven-count Second Amended Complaint against Off-Duty Officers, Responding Officers, and the City of Chicago. Specifically Plaintiffs asserted excessive force claims under 42 U.S.C. § 1983 against all Off-Duty Officers (except Officer Woosley); and the City of Chicago; a § 1983 failure to intervene claim against the Off-Duty Officers, Responding Officers, and the City of Chicago; state law battery claims against the Off-Duty Officers (except Woosley); and state law assault claims against the Off-Duty Officers (except Woosley). Immediately before trial, Plaintiffs voluntarily dismissed Responding Officers Carlyon and Morabito.

On May 7, 2012, the case proceeded to trial. After the Plaintiffs' case-in-chief, the Court granted a directed verdict in favor of the five Responding Officer Defendants – Lupo, Collins, Pina, Mayoski, and Lieutenant Kinsley – as well as Off-Duty Officer Woosely, dismissing them from the case. At the close of

- 2 -

Plaintiffs' evidence, the Court also found that the Plaintiffs failed to present sufficient evidence that the remaining Off-Duty Officers, (other than Defendant Planey) were acting under the color of law at the time of the incident. Ultimately, the case went to the jury against the six remaining Off-Duty Officers (Planey, Barnes, Padilla, Powers, Kereakes, and Matthews) and the City of Chicago on Plaintiffs' Fourth Amendment excessive force claims, Fourth Amendment failure to intervene/investigate claims, state law battery claims, state law assault claims, and state law *respondeat superior* claims.

On May 18, 2012, the jury rendered its verdict. In it, the jury ruled as follows:

| PLAINTIFF AARON GILFAND'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Defendant |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Powers<br>3) Defendant Barnes<br>4) Defendant Padilla<br>5) Defendant Matthews | 1) Plaintiff<br>2) Defendant<br>3) Defendant<br>4) Defendant<br>5) Defendant |
| Assault | 1) Defendant Barnes<br>2) Defendant Matthews | 1) Defendant<br>2) Plaintiff |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

| PLAINTIFF BARRY GILFAND'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Plaintiff |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Powers<br>3) Defendant Barnes<br>4) Defendant Padilla<br>5) Defendant Matthews | 1) Plaintiff<br>2) Defendant<br>3) Defendant<br>4) Defendant<br>5) Defendant |
| Assault | 1) Defendant Barnes<br>2) Defendant Matthews | 1) Defendant<br>2) Plaintiff |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

| PLAINTIFF ADAM MASTRUCCI'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Defendant |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Barnes<br>3) Defendant Padilla<br>4) Defendant Kereakes | 1) Defendant<br>2) Plaintiff<br>3) Defendant<br>4) Defendant |
| Assault | Defendant Matthews | Defendant |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

| PLAINTIFF SCOTT LOWRANCE'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Plaintiff |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Padilla | 1) Plaintiff<br>2) Plaintiff |
| Assault | Defendant Matthews | Defendant |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(a)(1)(a) governs motions for new trials.  It provides that "[t]he court, may, on a motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reasons for which a new trial has heretofore been granted in an action at law in federal court."  FED. R. CIV. P. 59(a)(1)(a).  Succeeding on a Rule 59 motion, however, is a difficult task.  It requires the movant to show that the verdict was against the manifest weight of the evidence, the damages awarded are excessive, or other reasons exist as to why the trial was unfair.  *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010).  A court will only grant a new trial, if "no rational jury" could have rendered the verdict.  *Moore ex rel Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008).

- 5 -

### III. __ANALYSIS__

Plaintiffs request this Court grant their Motion for a New Trial with respect to certain claims. Specifically, Plaintiffs move for a new trial on (1) their *Monell* claim against the Defendant City of Chicago (the "City"); (2) Aaron Gilfand's battery claim against Officer Matthews; (3) their claim that the Defendant Off-Duty Officers were acting under the color of state law; and (4) the jury's compensatory damage award to Aaron Gilfand. Plaintiffs contend a new trial is required on these claims because necessary evidence was improperly excluded pursuant to their *Monell* and color of law claims and the jury's verdict was against the manifest weight of the evidence with respect to Aaron Gilfand's battery claim against Officer Matthews and his compensatory damage award.

### A. *Monell* Claim

Plaintiffs seek a new trial on their *Monell* claim against the City of Chicago alleging that the Court erroneously restricted the testimony of both parties' expert witnesses – Dennis Waller and Jeffrey Noble. Specifically, Plaintiffs argue that the Court should have permitted Plaintiffs to utilize specific examples from the Chicago Police Department's Complaint Register files that reported other instances of excessive force complaints against the named Off-Duty Officer Defendants. Plaintiffs allege this evidence would have discredited the Defendants' expert witness who testified that the City's investigations following complaints of excessive force are reasonable. Plaintiffs also argue this evidence would

have demonstrated how the Chicago Police Department's investigation into such claims is ineffective.

Plaintiffs contend that the Court's finding that these files constituted inadmissible hearsay was erroneous.  Plaintiffs argue that the files themselves are not hearsay, and further allege that even if they were, the testimony relating to the files should have been admissible as "admissions by a party opponent, [from] the City of Chicago."  Pls.' Rule 59 Mot. for New Trial on Certain Claims at 4.

Plaintiffs have mischaracterized the Court's ruling regarding the restriction of the contents of the Complaint Register Files. When determining that Plaintiffs were not permitted to use the specific contents of the files for the individual Off-Duty Officers, the Court determined that if Plaintiffs were unrestricted in their presentation of the contents of more than 80 files, then the City would be forced to call witnesses to rebut the evidence of each file "and the case would go on forever."  Tr. of Proceedings, May 9, 2012 at 22.  This ruling was largely grounded in the Court's concern for an undue delay during trial, a consideration the Court must take into account when determining the admissibility of relevant evidence pursuant to Federal Rule of Evidence 403.  FED. R. EVID. 403.  Because of this concern, the Court allowed Plaintiffs to elicit testimony regarding the files during the direct and cross examinations of the parties' expert witnesses, but restricted Plaintiffs from presenting the specific contents of the individual

files. The Court reasoned that this ruling would allow a witness to testify to his opinion regarding Plaintiffs' allegations that the City "maintained a widespread practice of failing to investigate and discipline officers who used excessive force," without causing an undue delay. Pl.'s Rule 59 Mot. for New Trial on Certain Claims at 3.

A party seeking a new trial based on erroneous evidentiary rulings bears a "heavy burden." *Alverio v. Sam's Warehouse Club*, 253 F.3d 933, 942 (7th Cir. 2001). "The decision whether to admit evidence is a matter peculiarly within the competence of the trial court . . . " *Manuel v. City of Chicago*, 335 F.3d 592, 595 (7th Cir. 2003). To obtain a new trial on the grounds of an erroneous evidentiary ruling, the party must show that such a ruling affected his substantial rights. FED. R. EVID. 103(a). An erroneous ruling will only warrant a new trial where the error "had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *EEOC v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012).

The Court's restriction of the contents of Complaint Register files did not substantially affect the outcome of this trial as Plaintiffs allege. In order for Plaintiffs to have succeeded on their *Monell* claim against the City, it was necessary for Plaintiffs to prove that (1) there was a widespread practice of failing to investigate and discipline officers who used excessive force; (2) the final policymakers were deliberately indifferent to

this practice; and (3) the practice was a moving force behind the constitutional violations alleged at trial. *See generally*, *Zentner v. Dunbar*, 205 F.Supp.2d 924, 925 (N.D. Ill. 2002). As the City aptly points out, "there is no evidence in the record that any of the CR [Complaint Register] files for the defendants were flawed in any of the ways Waller [the Plaintiffs' expert] opines other investigations were deficient." City's Resp. to Pl.'s Mot. for a New Trial at 5. Moreover, Plaintiffs failed to provide any evidence that established that the City's alleged deficient practices caused the alleged constitutional violations in the December 2006 bar fight. As such, the Court does not find its decision limiting the use of the Complaint Register files had a substantially injurious effect on the jury and therefore refuses to grant a new trial on this basis.

### B. Battery Claim

Plaintiffs also argue a new trial is warranted for Plaintiff Aaron Gilfand's battery claim against Officer Matthews. Plaintiffs contend that the jury's verdict in favor of Defendant Matthews was against the manifest weight of the evidence – namely, the surveillance video evidence which showed Defendant Matthews pulling Aaron Gilfand away from the center of the brawl.

When a party moves for a new trial alleging that the jury's verdict was against the weight of the evidence, the party "must demonstrate that no rational jury could have rendered a verdict against [him]." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir.

- 9 -

2006). Courts routinely leave the issue of the credibility and weight of the evidence to the jury and sustain verdicts if "a reasonable basis exists in the record to support the outcome." *Id.* citing *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

Here, Plaintiffs argue that a reasonable jury could not have viewed the video evidence and heard the testimony of Defendant Matthews and found in his favor with respect to Aaron Gilfand's battery claim. However, in their Motion, Plaintiffs ignore portions of Officer Matthews' testimony. At trial, on direct examination, Plaintiffs questioned Officers Matthews regarding his deposition:

> Q: Were you asked this question? . . . What, if anything did you do when you saw that?
>
> A: I put my hand on his shoulder, and I pulled him back, and I told him this has nothing to do with you, sit the F down.
>
> A: I said that.
>
> Q: And you said that twice to him, didn't you?
>
> A: I could have yes.
>
> Q: And the second time was more of a strike in his chest, wasn't it?
>
> A: No, I didn't hit him.

Pls.' Rule 59 Mot. for a New Trial on Certain Claims, Ex. G at 104.

Later, on cross examination, Officer Matthews also testified:

> Q: Okay. Can you tell me why you did that? Why did you think that he [Aaron] needed to sit down?

> A:    I saw him move towards the pushing and
>       shoving, which when he got to the pushing
>       and shoving, his hands got around Jeff.
>       I think it's Jeff.  Some of my friends.
>       So I grabbed him and I pulled him back
>       out of the pile and put him in the chair
>       and told him to stay out of it.
>
> Q:    Did you ever punch him?
>
> A:    No.
>
> Q:    Did you ever choke him?
>
> A:    No, I did not.

*Id.* at 128.

In Illinois a person commits battery if he "(a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Bakes v. St. Alexius Medical Center*, 955 N.E.2d 78, 85-86 (Ill. App. Ct. 1st Dist. 2011) citing *Restatement (Second) of Torts* § 13 (1965).  From this, courts have stated that "the wilful touching of the person of another or a successful attempt to commit violence on the person of another constitutes battery." *Id.* citing *Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.*, 623 N.E.2d 1036 (Ill. 1993).  Here, Plaintiffs seem to argue that the mere fact Officer Matthews touched Aaron Gilfand without his consent means that a jury *had* to find Defendant Matthews liable to Aaron for battery.  However, Plaintiffs ignore the elements of civil battery in Illinois which require a defendant to intend "to cause a harmful contact." *Id.*

- 11 -

After reviewing the Officer Matthews' testimony, it is clear that the jury could have reasonably found that the physical contact Officer Matthews made with Aaron Gilfand neither caused bodily harm nor was intending to cause harm, and thus, did not warrant a finding of battery. Because of this, the Court finds that this is not a case in which "no rational jury could have rendered the verdict." *Moore v. Tuleja*, 546 F.3d 423, 427 (7th Cir. 2008).

### C. Color of Law Evidence and Directed Verdicts

Plaintiffs also move for a new trial on the Defendants' actions allegedly being under color of law. Plaintiffs argue that the Court inappropriately conducted a narrow assessment of the color of law issue and this narrow assessment led the Court to grant Defendants' directed verdict. The Court disagrees.

After Plaintiffs' presented their evidence, the Court granted Defendants' Motion for a Directed Verdict finding that all Defendants, with the exception of Off-Duty Officer Planey, were not acting under color of law at the time of the incident. As a result of this ruling, the Court dismissed all of Plaintiffs' § 1983 and failure to intervene claims against the Responding Officers and Off-Duty Officers Padilla, Kereakes, Matthews, Barnes, Powers, and Woosley. Plaintiffs argue this finding was erroneous.

"Rule 50 authorizes a court to enter judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Venson v. Altamirano*, 827 F.Supp.2d 857, 861 (N.D. Ill. 2011) citing FED. R.

CIV. P. 50(a)(1). The question the Court faces is "whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from the evidence is sufficient to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008).

Plaintiffs argue that the Court conducted an inappropriately narrow assessment of Plaintiffs color of law claims by "examining each Officers' specific actions separately." Pl.'s Mot. for a New Trial at 19. Plaintiffs also argue this Court's reliance on *Zienciuk v. City of Chicago* was misplaced. *Zienciuk v. City of Chicago*, No. 01-C-3769, 2002 WL 1998309 (N.D. Ill. Aug. 28, 2002).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "a government official, acting under the color of state law, deprived [him] of a right secured by the Constitution . . . " *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Currie v. Cundiff*, 09-CV-866-MJR, 2012 WL 2711469 at * 5 (S.D. Ill. July 8, 2012) citing *West v. Atkins*, 487 U.S. 42 (1988). "[T]he mere fact that a defendant is a police officer does not mean that he or she acted under the color of state law." *Chavez v. Guerrero*, 465 F.Supp.2d 864, 869 (N.D. Ill. 2006). In determining whether a police officer is acting under color of law or is engaged in

- 13 -

private pursuit, it is "the nature of the specific acts the police officer performed." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995).

Plaintiffs fail to cite any authority to support their assertion that this Court erred in individually analyzing whether each Defendant Officer was acting under color of law. Plaintiffs seem to assert that the Court should have examined the Defendant Off-Duty Officers as a group or a team rather than examine their individual actions to determine whether they were acting under color of law. This proposition lacks merit. It is well established that the inquiry into color of law turns on the individual acts of the individual officers. *See generally*, *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010).

In making its determination that Defendant Planey could be found by a jury to have acted under color of law, but the other Defendant Off-Duty Officers could not, the Court was persuaded by the fact that Officer Planey displayed his badge and ordered one of the Plaintiffs to leave the bar. The Court noted that Plaintiffs failed to present any similar evidence against the other Off-Duty Officers. Thus, the Court entered a directed verdict in favor of the Defendant Off-Duty Officers (except Planey). *See Pesek v. Marzullo*, 566 F.Supp.2d 834, 839-46 (N.D. Ill. 2008) (granting summary judgment for defendants where plaintiff failed to establish evidence that those defendants were acting under color of law, but refusing to grant summary judgment for another defendant because he

- 14 -

"flashed his badge" and ordered individuals to leave the bar).  As such, the Court rejects Plaintiffs' argument requesting a new trial based on the Court's examination of the acts of the individual Defendant Officers.

Next, Plaintiffs contend that the Court erroneously relied on *Zienciuk v. City of Chicago* to support its decision to grant Defendants' motion for a directed verdict.  *Zienciuk v. City of Chicago*, 2002 WL 1998309 at *1-4.  Plaintiffs argue that *Zienciuk* is distinguishable from their case because in *Ziencuik*, "there were no uses of police authority whether overt or subtle."  Pls.' Mot. for a New Trial on Certain Claims at 19-20.  The Court finds Plaintiffs' reading inaccurate.

In *Ziencuik*, a plaintiff alleged various state law claims and excessive force claims under § 1983 against two Chicago Police Officer defendants and the City of Chicago for a bar fight that occurred while the defendant officers were Off-Duty.  *Ziencuik v. City of Chicago*, No. 01-C-3769, 2002 WL 1998309 at *1-4.  The plaintiff in *Ziencuik* argued that the defendant officers were acting under color of law and alleged that the City was liable because at one point during the brawl, one of the officers stated, "we are the police."  *Id.* at *2.  In granting summary judgment in favor of the City, the court determined:

> The only allegation that comes close to establishing they implicated their state authority is that, after Zienciuk [the plaintiff] asked the bartender to call the police, someone answered, "we are the police."

- 15 -

> Even if such a flippant retort, made well
> after the battery was underway, could be
> interpreted as an assertion of state office,
> "a mere assertion that one is a state officer
> does not necessarily mean that one acts under
> color of state law."

*Id.* at * 5 citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990).

Like *Zienciuk*, here the Defendant Off-Duty Officers, other than Officer Planey, were Off-Duty, not in uniform, did not display their badges, and did not display any weapons. In addition to this, Plaintiffs did not even know that the Off-Duty Officers were police officers until after the altercation was over and the Defendants left the scene. *See Bladdick v. Pour*, No. 09-CV-330-WDS, 2010 WL 5088815 at *4-6 (S.D. Ill. Dec. 8, 2010) (finding an Off-Duty police officer was not acting under color of law when the Off-Duty officer was not in uniform and the plaintiff had "no idea" that the man was an officer until after the fact).

Plaintiffs argue *Stengel v. Belcher*, a case from the Sixth Circuit, is more analogous to their case than *Zienciuk*. *Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975). Notwithstanding *Stengel's* lack of binding authority to this Court, the Court finds Plaintiffs' comparison ludicrous. First, in *Stengel*, the Off-Duty police officer defendant tragically shot and killed two young men and paralyzed a third. Next, the Off-Duty officer in *Stengel* possessed both his Off-Duty weapon and a police issued can of mace at the time the incident occurred. *Id.* at 441. To top it off, the

- 16 -

record in *Stengel* contained a letter addressed to the Off-Duty officer from the Director of the Department of Safety which stated there was "a specific finding that your actions [the Off-Duty officer's] were in the line of duty." *Id.*

It is clear that the facts in this case are not analogous to the facts in *Stengel*. The Court finds the same is true with respect to Plaintiffs' reliance on *Butler v. Corral* where the court denied a defendant Off-Duty officer's summary judgment motion in part because the officer threatened to arrest and shoot the plaintiff. *Butler v. Corral*, No. 98-C-802, 1999 WL 1069246 at *4 (N.D. Ill. Nov. 22, 2009). Here, the Defendant Off-Duty Officers made no such threats. As a result, the Court rejects Plaintiffs assertions that its reliance on *Zienciuk* was improper.

Plaintiffs also argue that the Defendant Off-Duty Officers other than Officer Planey were acting under the color of law because they stated that they were trying to "keep the peace" and "de-escalate" the situation. Plaintiffs allege that these statements show that the Defendants were trying to protect the public and therefore are indicative of actions taken under color of law. Plaintiffs offer no authority to support the fact that comments like these automatically transform an Off-Duty officer's actions into the actions of the State for the purposes of § 1983. As such, the Court is not persuaded.

Finally, Plaintiffs argue that the Court erroneously excluded testimony from Defendant Powers regarding Powers' deposition

- 17 -

testimony. Specifically, Plaintiffs allege the Court erred in sustaining Defendants' objection to the line of questioning regarding why Powers assisted Planey at the time of the incident. At his deposition, Powers testified that part of the reason why he rushed toward Planey during the altercation was because Planey was in a "one on one situation" and Powers "wanted to be there for his safety." Pls.' Mot. for a New Trial on Certain Claims, Ex. Q, at 95. In his deposition, Powers explained that in police training, officers are taught that when there is one subject there should be two officers present. *Id.* Plaintiffs argue this evidence would have shown that Powers was acting under color of law. However, Plaintiffs again fail to cite any authority, and fail to take into account the other evidence that Powers was Off-Duty, not in uniform, did not display a weapon, did not assert that he was an officer, and never threatened to arrest Plaintiffs. Therefore, the Court does not find the exclusion of such evidence had a substantially injurious effect to warrant a new trial. *See Mgmt. Hospitality of Racine, Inc.*, 666 F.3d at 440.

### D. Damages

Plaintiffs conclude their Motion by arguing that the jury's award of compensatory damages was insufficient and that this award reflects "an inconsistent verdict." Pls.' Mot. for a New Trial on Certain Claims at 28. Plaintiffs argue that since the jury found Defendant Planey liable for excessive force and battery to Aaron Gilfand, it was required to fully compensate Aaron Gilfand for his

- 18 -

injuries. Plaintiffs explain that the jury erroneously awarded an insufficient verdict amount because of the prejudicial evidence the jury heard regarding the Defendant Off-Duty Officers' finances.

"The Seventh Amendment to the Constitution requires that the Court accord substantial deference to the jury's assessment of compensatory damages." *Spina v. Forest Pres. Dist. of Cook County*, 207 F.Supp.2d 764, 771 (N.D. Ill. 2002) citing *Ramsey v. American Air Filter Co., Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985). "Underlying this deference to a jury's assessment of damages is the acknowledgment that the actual measure of damages is an exercise of factfinding." *Id.* citing *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989). The jury's award must, nevertheless, be reasonable to be sustained. *Cygnar*, 865 F.2d at 848.

After reviewing the trial testimony, the Court finds the award reasonable. At trial, Aaron Gilfand testified that he believed Defendant Barnes punched him in the face, breaking his nose and splitting his face open. *See* Defs.' Resp. to Pls.' Mot. for a New Trial, Ex. F-1, at 116-117, 127-128, 130-132 149-150. During Aaron's testimony, Plaintiffs' attorney presented various medical records and bills indicating that Aaron had to have surgery for a broken nose.

When the jury returned its verdict, it found Defendant Planey, not Defendant Barnes, liable for excessive force and battery against Aaron. The jury did not find Defendant Barnes liable to Aaron Gilfand for any of his claims. Because of this, it is

plausible that the jury determined that while Planey was liable for battery and excessive force to Aaron, Defendant Planey was not responsible for Aaron's broken nose, and therefore should not be required to pay the entirety of his medical bills.

Thus, the Court denies Plaintiffs' Motion for a New Trial based on the jury's compensatory damage award to Aaron Gilfand.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for a New Trial [DKT 501] is denied.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

**DATE:** 11/13/2012