IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BARRY GILFAND, *et al.*,

               Plaintiffs,

       v.

SGT. JEFFREY PLANEY, *et al.*,

               Defendants.

Case No. 07 C 2566

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Motions for Costs and Fees. For the reasons set forth herein, the Court (1) denies Defendants Barnes' and Powers' Motion for Fees and Costs [Dkt. 513 & 514]; (2) denies Defendants Woosley's and Kereakes' Motion for Costs; [Dkt. 508]; (3) denies Defendants' City of Chicago's Motion for Costs [Dkt. 498]; and (4) grants in part and denies in part Plaintiffs' Motion for Fees and Costs [Dkt. 509-1.].

## I.  BACKGROUND

This civil case stems from a December 2006 bar fight at the Jefferson Tap bar in Chicago, Illinois.  In the early morning hours of December 15, 2006, an altercation between Plaintiffs and Off-Duty Chicago Police Officers Jeffrey Planey, Gregory Barnes, Vincent Matthews, Paul Powers, Matias Padilla, Demetrios Kereakes, and Erika Woosley (collectively, the "Off-Duty Officers") ensued. At some point after the fight escalated, someone at the bar called 911.  At various points in time, Responding Officers Kenneth

Carlyon, Frederick Collins, Nicole Mayoski, Ana Pina, Donald Lupo, and Gregory Morabito (collectively, the "Responding Officers") arrived at the Jefferson Tap to survey the situation. Allegedly, when Responding Officers Lupo and Collins arrived at the scene, Off-Duty Officer Planey informed them that he had the situation under control and their assistance was not needed. After hearing this, Officers Lupo and Collins left. Later, Responding Officers Mayoski and Pina arrived, however, allegedly Off-Duty Officer Barnes informed them that it was only a minor bar fight. Subsequently, Mayoski and Pina left the scene.

The preceding events are what provided the grounds for this lawsuit. Plaintiffs filed a seven-count Second Amended Complaint against Off-Duty Officers, Responding Officers, and the City of Chicago. Specifically Plaintiffs asserted excessive force claims under 42 U.S.C. § 1983 against all Off-Duty Officers (except Officer Woosley); and the City of Chicago; a § 1983 failure to intervene claim against the Off-Duty Officers, Responding Officers, and the City of Chicago; state law battery claims against the Off-Duty Officers (except Woosley); and state law assault claims against the Off-Duty Officers (except Woosley). Immediately before trial, Plaintiffs voluntarily dismissed Responding Officers Carlyon and Morabito.

On May 7, 2012, the case proceeded to trial. After the Plaintiffs' case-in-chief, the Court granted a directed verdict in favor of the five Responding Officer Defendants – Lupo, Collins,

Pina, Mayoski, and Lieutenant Kinsley – as well as Off-Duty Officer Woosely, dismissing them from the case. At the close of Plaintiffs' evidence, the Court also found that the Plaintiffs failed to present sufficient evidence that the remaining Off-Duty Officers, (other than Defendant Planey) were acting under the color of law at the time of the incident. Ultimately, the case went to the jury against the six remaining Off-Duty Officers (Planey, Barnes, Padilla, Powers, Kereakes, and Matthews) and the City of Chicago on Plaintiffs' Fourth Amendment excessive force claims, Fourth Amendment failure to intervene/investigate claims, state law battery claims, state law assault claims, and state law *respondeat superior* claims.

On May 18, 2012, the jury rendered its verdict. In it, the jury ruled as follows:

| PLAINTIFF AARON GILFAND'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Defendant |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Powers<br>3) Defendant Barnes<br>4) Defendant Padilla<br>5) Defendant Matthews | 1) Plaintiff<br>2) Defendant<br>3) Defendant<br>4) Defendant<br>5) Defendant |
| Assault | 1) Defendant Barnes<br>2) Defendant Matthews | 1) Defendant<br>2) Plaintiff |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

| PLAINTIFF BARRY GILFAND'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Plaintiff |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Powers<br>3) Defendant Barnes<br>4) Defendant Padilla<br>5) Defendant Matthews | 1) Plaintiff<br>2) Defendant<br>3) Defendant<br>4) Defendant<br>5) Defendant |
| Assault | 1) Defendant Barnes<br>2) Defendant Matthews | 1) Defendant<br>2) Plaintiff |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

| PLAINTIFF ADAM MASTRUCCI'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Defendant |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Barnes<br>3) Defendant Padilla<br>4) Defendant Kereakes | 1) Defendant<br>2) Plaintiff<br>3) Defendant<br>4) Defendant |
| Assault | Defendant Matthews | Defendant |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

| PLAINTIFF SCOTT LOWRANCE'S CLAIMS: | DEFENDANTS CHARGED: | JURY VERDICT IN FAVOR OF: |
|---|---|---|
| Fourth Amendment Excessive Force | Defendant Planey | Plaintiff |
| Fourth Amendment Failure to Investigate and Discipline | Defendant City of Chicago | Defendant |
| Battery | 1) Defendant Planey<br>2) Defendant Padilla | 1) Plaintiff<br>2) Plaintiff |
| Assault | Defendant Matthews | Defendant |
| Defendant Planey Acting within the Scope of His Employment | Defendant City of Chicago | Defendant |

## II.  ANALYSIS

### A.  Defendant Powers' and Barnes' Motion for Attorneys' Fees and Costs

Defendant Off-Duty Officers Powers and Barnes move for attorney's fees and expenses pursuant to § 1988 and costs pursuant to Federal Rule of Civil Procedure 54(d).  They argue they are entitled to fees and costs because they are the prevailing parties since Plaintiffs' claims "overwhelmingly failed at trial."  Defs. Powers' and Barnes' Mot. for Attorneys' Fees at 1.

#### 1.  Defendants Powers' and Barnes' Motion for Attorney Fees Under Section 1988

Section 1988 provides that in an action to enforce a provision of Section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  *Leffler v. Meer,* 936 F.2d

- 5 -

981, 984 (7th Cir. 1991). "A prevailing defendant as well as a prevailing plaintiff may be awarded attorney's fees under section 1988." *Id.* A prevailing defendant, however, must demonstrate that "the plaintiff's action was frivolous, unreasonable, or without foundation . . ." *Unity Ventures v. County of Lake,* 894 F.2d 250, 253 (7th Cir. 1990). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe,* 449 U.S. 5, 14 (1980). Instead, the plaintiff's action must be meritless, in the sense that it is groundless or without foundation in order for a court to award fees to a defendant. *Id.* The policy underlying the stringent standard for prevailing defendants is the courts' vigorous enforcement of civil rights laws. *See Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).

Defendants Powers and Barnes argue they are entitled to fees pursuant to Section 1988 because Plaintiffs' claims were frivolous. They contend that "Plaintiffs tacked meritless federal claims on to their already weak state law claims in order to force Powers and Barnes into federal court." Defs. Powers' and Barnes' Mot. for Attorney's Fees at 7. They allege that this Court's decision in *Simmons v. Pryor* and the Third Circuit's decision in *Brown v. Chambersburg* support an award of fees. *Simmons v. Pryor*, No. 91-C-2686, 1992 WL 209283 (N.D. Ill. Aug. 18, 1992); *Brown v. Chambersburg*, 903 F.2d 274 (3d Cir. 1990). The Court does not agree.

- 6 -

In *Simmons*, this Court granted summary judgment to defendants in a Section 1983 false arrest and malicious prosecution case. *Id.* at *2. Subsequently, the defendants moved for fees under Section 1988, alleging plaintiff's claims were frivolous. *Id.* This Court agreed with defendants, finding the named defendants' "limited role" in the plaintiff's arrest persuasive. *Id.* at *3. In *Simmons*, the plaintiff accused defendants of false arrest despite the fact that the defendants did not make the probable cause determination for the plaintiff's arrest, did not testify at the probable cause hearing, and did not even effectuate the arrest. *Id.* Because of this, the Court found all of the plaintiff's assertions regarding his warrantless arrest meritless as they related to the named defendants. *Id.*

In *Chambersburg*, the Third Circuit examined a district court's determination that a plaintiff's excessive force claim was frivolous. In affirming the district court's holding which awarded the defendant fees, the Third Circuit relied on the lack of evidence the plaintiff presented at trial, noting that "only plaintiff's testimony supported his version of the arrest and this testimony was contradicted by every other witness, including disinterested witnesses." *Chambersburg,* 903 F.2d at 278.

The case presently before the Court is distinguishable from *Simmons* and *Chambersburg*. Here, Plaintiffs' claims survived two of Defendants' Motions for Summary Judgment. Additionally, the Plaintiffs' excessive force and failure to intervene claims all

- 7 -

concerned events that took place during a bar fight where all the named Off-Duty Officer Defendants, including Barnes and Powers, were located and seen on surveillance video. Moreover, unlike *Chambersburg*, at trial, Plaintiffs presented surveillance video evidence, medical records, eyewitness testimony, as well as their own testimony. While the Court acknowledges that all Defendants, other than Defendant Planey, were successful in their Motion for a Directed Verdict regarding the Plaintiffs' color of law claims and failure to intervene claims, this success does not in it of itself make Plaintiffs' federal claims frivolous. *See Duran v. Town of Cicero*, No. 01-C-6858, 2012 WL 1279903 at *24-25 (N.D. Ill. April 16, 2012) (denying a defendant's motion for fees under Section 1988 notwithstanding the court's prior grant of the defendants' motion for a directed verdict with respect to the plaintiff's equal protection claims and prior grant of five of the defendants' motions for summary judgment). Indeed, the Seventh Circuit has noted, "[t]here is a significant difference between making a weak argument with little chance of success . . . and making a frivolous argument with no chance of success. As the courts have interpreted § 1988, it is only the latter that permits defendants to recover attorney's fees." *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999).

The Court finds Plaintiffs in this case had a reasonable basis for their claims and thus, refuses to grant Defendants Powers' and Barnes' petition for attorney's fees.

- 8 -

### 2. Defendants Barnes' and Powers' Bill of Costs

Defendants Barnes and Powers have also submitted a bill of costs in which they allege Plaintiffs should be liable to pay since Defendants Powers and Barnes were the prevailing parties. Plaintiffs oppose this bill, arguing that the finding of liability against Defendant Barnes precludes an award of costs.

Federal Rule of Civil Procedure 54(d)(1) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "A party prevails . . . when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. Of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009). A party receives substantial relief even if it doesn't prevail on every claim. *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999).

Defendants Powers and Barnes contend that they are the prevailing parties because the jury did not find Defendant Powers liable for any of the claims Plaintiffs asserted against him and Defendant Barnes was only found liable for one of Plaintiffs' claims.

After the trial the jury found Defendant Barnes liable to Plaintiff Adam Mastrucci for battery and awarded Adam Mastrucci $3,000.00 in compensatory damages and $1,000.00 in punitive damages. Notwithstanding this finding, Barnes claims to be the prevailing party. Both Powers and Barnes also claim that

- 9 -

Plaintiffs' success with respect to other Defendants is irrelevant when determining whether they should be considered the prevailing party.

At the outset, the Court refuses to find Defendant Barnes to be a prevailing party for the purposes of Rule 54. While the Court recognizes that the jury's verdict in this case was mixed, the Court reminds Defendants that "courts have especially broad discretion to award or deny costs in mixed result cases, including cases in which liability was established but recovery was nominal relative to what was sought." *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999). In this case, the Court understands that the Plaintiffs total award of approximately $34,000 was far below the amount the Plaintiffs initially sought. However, the Court finds the jury's award of punitive damages against Defendant Barnes particularly persuasive in its finding that Barnes is not the prevailing party. *See Warfield v. City of Chicago*, 733 F.Supp.2d 950, 954-55 (7th Cir. 2010) (finding a plaintiff was the prevailing party for the purposes of costs despite the defendants' success on a number of plaintiffs' claims in part because the jury's award of punitive damages was substantial); *see also Thomas v. City of Tacoma,* 410 F.3d 644, 648 (9th Cir. 2005) ("[t]he jury's award of punitive damages alone is sufficient to take it out of the nominal category.").

Barnes and Powers further argue that since Plaintiff prevailed on "only 7% of their claims against Barnes" Barnes should be

treated as the prevailing party. Memo in Supp. of Defs. Powers'
and Barnes' Bill of Costs at 3. They claim that "[t]he Seventh
Circuit has held that a defendant who prevails on six (6) of seven
(7) claims is a "prevailing party" entitled to costs and fees."
*Id.* citing *First Commodity Traders, Inc. v. Heinold Commodities,
Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985). However, the underlying
issue in *First Commodity* was fees, not costs, and in that case the
court dismissed the plaintiff's other six claims. *Id.* Here, the
Court has already denied Defendant Barnes' and Powers' Motion for
Fees and unlike *First Commodity*, in this case, Plaintiffs had five
claims against Barnes that went to the jury. Thus, the Court does
not find *First Commodity Traders* analogous. Instead, the Court is
persuaded by *Ellis v. Country Club Hills*. *Ellis v. Country Club
Hills*, No. 06-C-1895, 2012 WL 4009701 (N.D. Ill. Sept. 12, 2012)
where the court denied a plaintiff's motion for costs and fees, and
directed the parties to bear their own costs since the jury's
verdict was mixed. *Id.* at *1-2. In *Ellis*, the jury returned a
verdict in favor of a plaintiff on only one of his excessive force
claims and awarded a mere $1 in compensatory damages. There, the
court explained that the award of summary judgment to the City and
the not guilty finding as to the other officer constituted a
"split/mixed result verdict" and therefore caused neither party to
truly prevail. *Id.* at *2.

*Ellis* is further supported by the Seventh Circuit decision in
*Testa v. Mundelein*, another case this Court finds relevant. *Testa*

*v. Mundelein*, 89 F.3d 443 (7th Cir. 1996). In *Testa*, the plaintiff lost his § 1983 false arrest claim, but received $1,500 for his state malicious prosecution claim. *Id.* at 444. In affirming the district court's orders for each party to bear its own costs, the Seventh Circuit noted, "[c]onsidering the mixed outcome of the civil rights and malicious prosecutions claims, the decision requiring each party to bear its own costs is within that [court's] discretion." *Id.* at 447.

Barnes and Powers also contend that even if the Court finds Barnes not to be a prevailing party, Powers is still entitled to costs. However, Barnes and Powers fail to segregate the costs required for each of their defenses. This makes sense in light of their assertions that "[a]ll costs itemized in Ex. A to Powers and Barnes' Bill of Costs were necessarily incurred in the defense of both Powers and Barnes." Memo. In Supp. of Defs.' Powers' and Barnes' Bill of Costs at 4. Because of this, and the nature of the claims and the Off-Duty Officer Defendants in this case being interrelated, the Court is unable to find that only Defendant Powers is entitled to costs. *See Edwards, et al. v. Rogowski*, No. 06-C-3110, 2009 WL 742871 (N.D. Ill. March 18, 2009) (denying a defendant's bill of costs even though the defendant was not found liable on any of plaintiff's claims because the defendant failed to show that "the defendants would not have incurred the same expenses had Negron [the defendant found not liable] not been named as a

defendant"). Thus, the Court denies in its entirety, Defendants Barnes' and Powers' Bill of Costs.

### B. Defendants' Woosley and Kereakes Bill of Costs

Defendant Off-Duty Officers Woosley and Kereakes also seek an award of costs. They argue that they are the prevailing parties because the Court dismissed Officer Woosley after it entered its directed verdict and the jury found in favor of Officer Kereakes on all of Plaintiffs' claims.

In addition to the aforementioned cases, in *Shatner v. Cowan*, the court faced the issue of which party should be considered the prevailing party for the purposes of costs where a plaintiff prevailed on some claims against some defendants, but other defendants were dismissed. *Shatner v. Cowan*, No. 00-C-0251, 2009 WL 5210528 at *1-2 (S.D. Ill. Dec. 28, 2009). In denying the dismissed defendants' motion for costs, the court agreed with the plaintiff who stated, "the liable Defendants benefitted from the use of all deposition transcripts and would have incurred these costs whether or not Shatner [the plaintiff] prevailed against the dismissed Defendants." *Id.* The court in *Shatner* further supported this finding noting that "[a]ll of the Defendants – dismissed or liable – were jointly represented in this matter and they jointly incurred expenses." *Id.*

The Court finds the analysis in this case similar to *Shatner*. Here, all of Plaintiffs' claims are related to the December 2006 bar fight. It is undisputed that all Off-Duty Officers were at the

Jefferson Tap during the fight, thereby making it more than likely that their depositions would have been necessary "even if these dismissed Defendants were simply fact witnesses." *Id.* Moreover, Defendants Woosley and Kereakes were jointly represented with Defendants Planey, Matthews, and Padilla, all Defendants which the jury found liable for some of Plaintiffs' claims.

For these reasons and the reasons previously articulated in regards to Defendants Barnes' and Powers' bill of costs, the Court denies Defendants Woosley's and Kereakes' bill of costs in its entirety.

## C. Defendant City of Chicago's Bill of Costs

The Defendant City of Chicago also submits a bill of costs, arguing that it is the prevailing party for the purposes of Rule 54 because the jury rejected Plaintiffs' *Monell* claims. For the reasons previously mentioned in the other Defendants' Motions for Costs, the Court refuses to find the City to be the prevailing party in this litigation.

As further support, the Court finds much of the City's bill unreasonable, and in fact, is appalled with some of the City's careless submissions to the Court. In its bill of costs, [Dkt. 498], the City initially alleged it was entitled to over $90,000.00 in taxable costs from Plaintiffs. Only those costs expressly listed in 28 U.S.C. § 1920 are recoverable. *Perry v. City of Chicago*, No. 08-C-4730, 2011 WL 612342 (N.D. Ill. Feb. 15, 2011). These costs include (1) fees of the clerk and marshal; (2)

fees for printed or electronically recorded transcripts; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies; (5) docket fees under Section 1923; and (6) compensation of court appointed experts.  28 U.S.C. § 1920.

In their objections to the City's costs, Plaintiffs point to a number of excessive and erroneous invoices the City submitted. The Court will address only those which it finds to be the most egregious.

First, the City alleged it was entitled to expert witness costs and costs for treating physicians, totaling $44,911.25. Unless an expert witness is court appointed, the fees "are not recoverable as costs because they are not among the taxable costs itemized in 28 U.S.C. § 1920(6)." *Portman v. Andrews*, 249 F.R.D. 279, 282 (N.D. Ill. 2007).  It was not until Plaintiffs objected to these costs that the City withdrew the $44,911.25, (nearly half of the total amount they originally sought).  While the Court appreciates the City's willingness to revise promptly this unreasonable request, the Court is nonetheless perturbed by a number of other submissions the City has included and not bothered to withdraw or even address.

The most troubling submission is the City's inclusion of two invoices for records obtained in cases unrelated to the one at bar. *See* Bill of Costs; Ex. 5 [Docket No. 498-5 at 5.] (a $53.00 medical bill for the case *Brown v. City of Chicago*, *et al.*, No. 04-C-8134.); *see also* Bill of Costs; Ex. 7 [Docket No. 498-7 at 19] (a

$53.00 invoice for phone records incurred in *Paine et al., v. City of Chicago*, No. 06-C-3137).

The Court understands that mistakes happen. This is particularly true given that this case is over four years old and has multiple parties, claims, and a voluminous record. However, in their objections to the City's bill, Plaintiffs clearly notified the City of its errors regarding the inclusion of these unrelated invoices. Despite this notification, the City failed to withdraw these expenses and even failed to offer any explanation as why such invoices were included in the first place. The Court finds this conduct simply inexcusable.

The Court next turns to the City's alleged necessary and reasonable copying costs. In their bill of costs, the City avers that it has incurred over $1,500.00 in exemplification and copy fees. After examining the City's itemizations, however, it is clear that the City simply included every item from the Court's electronic docket for its "copying costs." This itemization includes attorney appearances, waivers of service, and even notices by the parties for their motions. The Court cannot fathom a valid reason a party could find it reasonable and necessary to copy *every* item on a docket. Moreover, even if the City had valid reasons, the City failed to provide any explanation why *any* of this copying was reasonable and necessary. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 149 F.Supp.2d 394, 397 (N.D. Ill. 2001) (denying copying costs due to lack of information regarding "the purpose of

the copies"). "Rule 11 is violated when the parties or their attorneys sign a pleading, motion or other paper that after reasonable inquiry, they know not to be well grounded in fact or not to be warranted by existing law. . . ." *Smith v. CB Commercial Real Estate Group, Inc.*, 947 F.Supp. 1282, 1283-284 (7th Cir. 1996).

Since the Court does not find the City to be a prevailing party for the purposes of Rule 54, the Court does not seek an amended bill from the City or seek any explanation for their careless submissions. However, the Court cautions the City in its future submissions with respect to costs, as the Court believes the submissions here come close to a Rule 11 violation.

### D. Plaintiffs' Fee Petition

Plaintiffs seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988. Specifically, Plaintiffs request an award of $893,072.14 for 2,401.85 hours. Plaintiffs submit such an amount is reasonable because Plaintiffs discounted and eliminated a number of hours that were attributable to Plaintiffs' unsuccessful claims. Defendants argue Plaintiffs' request is unreasonable and the Court should only award $92,647.54 in fees.

"The Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988, allows "the prevailing party" in certain civil rights actions, including suits brought under § 1983, to recover 'a reasonable attorney's fee.'" *Lefemine v. Wideman*, No. 12-168, 2012 U.S. LEXIS 8566 at *4 (U.S. Nov. 5. 2012) citing

*Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992). Courts routinely hold that a plaintiff "prevails . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

Under Title VII, the Court has the discretion to award the prevailing party reasonable attorney's fees, and a prevailing plaintiff should generally be permitted to recover such fees. *See Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). A reasonable fee award is assessed by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" - the "lodestar" figure. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). "The Court must exclude from this calculation hours that were not 'reasonably expended' on the litigation . . . [because] they are excessive, redundant, or otherwise unnecessary." *See Stark III v. PPM Am., Inc.*, No. 01-C-1494, 2003 WL 21223268, at *1 (N.D. Ill. May 23, 2003).

The Court first determines the amount of hours reasonably expended, and then examines whether the requested hourly rate is reasonable. *See id; see also Farfaras v. Citizens Bank & Trust Co. of Chicago*, No. 01-C-8720, 2005 WL 910739 at *1 (N.D. Ill. Apr. 15, 2005).

Here, in light of the jury's verdict in Plaintiffs' favor on nine claims and its award of compensatory and punitive damages, the Court finds Plaintiffs are the prevailing parties for the purposes

- 18 -

of attorneys fees under § 1988. *See Elusta v. City of Chicago*, 760 F.Supp.2d 792, 796 (N.D. Ill. 2010) (finding plaintiffs to be the prevailing party for the purposes of attorneys fees where 4 plaintiffs asserted § 1983 claims against individual police officer defendants, but only one plaintiff ultimately prevailed on his § 1983 claim, and the jury awarded $20,000 in damages).

Plaintiffs request fees for the services of Plaintiffs' attorneys, Mr. Christopher Smith ("Smith"), Mr. Robert Johnson ("Johnson"), Ms. Amanda Antholt ("Antholt"), Mr. James Baranyk ("Baranyk"), Ms. Emily Stine ("Stine"), Ms. Sally Saltzberg ("Saltzberg"), Mr. Steven Fine ("Fine"), and paralegal Ms. Kathleen Johnson-Smith ("Johnson-Smith"). The Court will address each attorney's hours and rate in turn.

### 1. *Reasonableness of Plaintiffs' Attorneys Hours and Hourly Rates*

Defendants object to a number of hours each of the Plaintiffs' attorneys included in their petition, arguing that the hours are excessive, redundant, or otherwise unnecessary. Defendants also argue the requested rate for Baranyk and Saltzberg are unreasonable.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434. "[T]he court may reduce the award where the description of the work performed is inadequate." *Sughayyer v.*

*City of Chicago*, No. 09-C-4350, 2012 U.S. Dist. LEXIS 85384 at *15 (N.D. Ill. June 20, 2012).

Prior to addressing the reasonableness of each attorney's rates and requested hours for fees, the Court considers Defendants' argument that it was unnecessary for four of the Plaintiffs' attorneys – Smith, Johnson, Antholt, and Baranyk - to attend every day of trial. Defendants cite *Sughayyer v. City of Chicago*, No. 09-C-4350, 2012 U.S. Dist. LEXIS 85384 (N.D. Ill. June 20, 2012) as support. The Court finds *Sughayyer* distinguishable and refuses to reduce Plaintiffs' attorneys' hours on this basis. In *Sughayyer*, a single plaintiff filed multiple claims against two individual officers and the City of Chicago. *Id.* at *1-2. In determining that it was unnecessary for the plaintiff to have three attorneys at trial, the Court noted that the case was neither "so complicated or large as to justify three trial attorneys." *Id.* at *19. In the case at the bar, there were four Plaintiffs who originally asserted over thirty claims against approximately fourteen Defendants. In light of this, the Court finds the presence of four attorneys throughout Plaintiffs' trial reasonable.

### a. Christopher Smith

Smith requests fees for 507.25 hours at a rate of $400 per hour. Defendants do not object to Smith's rate, but contest a portion of his requested hours. The Court finds many of Defendants' objections regarding Smith's hours lack merit. Defendants' argue that many of these hours should be reduced

- 20 -

because they relate to the claims against Powers and Barnes which were ultimately unsuccessful at trial. The Court finds these claims were sufficiently related to the claims in which Plaintiffs were successful.

The Seventh Circuit has stated, "[n]either the Supreme Court nor this Court has required any correspondence between the degree to which a plaintiff has financially prevailed and the attorney fees awarded to him." *Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir. 1992); *accord, Estate of Borst v. O'Brien*, 979 F.2d 511, 516-17 (7th Cir. 1992) ("We have repeatedly held [] that an attorneys' fee award need not be proportionate to the damage award.").

Here, Plaintiffs received a total of $19,700.00 in compensatory damages and a total of $14,000.00 in punitive damages against four separate Defendant Off-Duty Officers. True, Plaintiffs did not succeed on their claims against the City of Chicago and other Off-Duty Officers. However, the unsuccessful claims against the Defendant Off-Duty Officers were all related to the claims on which Plaintiffs did prevail. Thus, this is a case in which Plaintiff's "claims [against the Off-Duty Officers] for relief . . . involve a common core of facts or [are] based on related legal theories." *Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir. 1992) quoting *Hensley v. Eckerhart*, 461 U.S. 424. Therefore, the Court does not deem the fact that Plaintiffs were only partially successful and equally unsuccessful—against several

Defendants as justification for reducing the Plaintiffs' billable hours. *See Gregory v. Weigler*, 873 F.Supp. 1189, 1194 (C.D. Ill. 1995) (refusing to discount fees for plaintiffs' unsuccessful claims against various officers where the jury awarded $3,000.00 in compensatory damages and $12,750.00 in punitive damages against three officer defendants after the court entered a directed verdict dismissing the City of Jacksonville and another individually named Lieutenant.).

Defendants also object to the 7 hours Smith requests for time spent waiting for the jury. The Court agrees with Defendants' objection with respect to these hours and accordingly reduces Smith's requested hours to 500.25 hours, thereby awarding Smith $200,100.00 in fees (500.25 hours at $400 per hour). *See Warfield v. City of Chicago*, 733 F.Supp.2d 950, 959-60 (N.D. Ill. 2010) (deducting time spent "waiting for the verdict . . . as these hours were not "reasonably expended.").

### b.  Robert Johnson

Johnson requests fees for 334.8 hours at a rate of $400 per hour. Defendants agree to Johnson's requested rate, but object to 107.5 of his requested hours.

Defendants argue Johnson's time spent attending portions of Defendants' criminal trial and reviewing notes from the criminal trial was unreasonable. Defendants point out that Johnson billed 45 hours for attending the criminal trial and again billed 14 hours for reviewing the transcripts and taking notes from the criminal

trial. Defendants argue this is excessive particularly because Baranyk only billed 5.25 hours for reviewing the same transcripts. The Court finds Johnson's attendance at the criminal trial reasonable and as such denies Defendants' objection to the 45 hours spent attending the criminal trial. However, the Court finds Johnson's additional 14 hours for reviewing transcripts and notes excessive in light of his co-counsel reporting 5.25 hours for a similar task. As such, the Court reduces Johnson's 14 hours for reviewing transcripts to 5.25 hours.

Defendants also contest the 43 hours Johnson requests for trial preparation. Defendants argue a portion of these entries are unreasonable because the entries claim to be for trial preparation "for the next day" and on a handful of the dates the next day was a Saturday or Sunday. The Court declines to get bogged down with these semantics and finds it reasonable for Johnson to prepare on a Saturday and Sunday for trial's continuation the following Monday. The Court however, agrees with Defendants' objections to 11 hours Johnson requested for trial preparation where the jury had begun to deliberate. *See Warfield*, 733 F.Supp.2d at 959-60.

Accordingly, the Court reduces 19.75 of Johnson's hours and awards Johnson $126,020.00 in fees (315.05 hours at $400 per hour).

### c. Amanda Antholt

Antholt requests fees for 652 hours at a rate of $350 per hour. Defendants object to 114.76 of Antholt's hours, but do not contest her requested rate.

Defendants object to approximately 71.25 hours of Antholt's hours which relate to her time spent regarding Plaintiffs' claims against Off-Duty Officers Powers and Barnes. Defendants argue such fees are unnecessary because Plaintiffs did not prevail against either Powers or Barnes for the purposes of § 1988. For the reasons previously articulated in Defendants' objections to Smith's hours, the Court finds these hours reasonable. *See generally*, *Wallace*, 957 F.2d at 339.

Defendants also object to approximately 10.01 of Antholt's hours as unreasonable because the tasks involved were clerical in nature and could have been delegated to a non-professional assistant. Examples of these tasks include making phone calls, drafting emails, and creating spreadsheets. The Court agrees with Defendants with respect to these objections and reduces Antholt's hours by 10.01 hours. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (stating the "district court should disallow time spent on what are essentially "clerical" or secretarial tasks.").

Defendants next object to Antholt's time spent with Aaron Gilfand's and Adam Mastrucci's treating physicians. Defendants contend that because Adam Mastrucci and Aaron Gilfand did not prevail on their § 1983 claims, they are not entitled to a fee award under § 1988. In *Elusta v. City of Chicago*, the court addressed virtually an identical argument to the one Defendants assert here. *Elusta v. City of Chicago*, 760 F.Supp.2d 792 (N.D.

- 24 -

Ill. 2010). In *Elusta*, four plaintiffs asserted various claims under § 1983 and state law claims against the City of Chicago and individual police officers. Ultimately, the jury in *Elusta* rendered a verdict in favor of one plaintiff on his excessive force claim and one of his state law claims, but found in favor of defendants on the remaining claims. *Id.* at 797. When the plaintiffs in *Elusta* petitioned for fees under § 1988, the defendants argued that the plaintiff who was successful in his § 1983 claim was the only plaintiff entitled to fees. While the court in *Elusta* agreed with the premise of the defendants' argument, it held, "[g]iven that the other plaintiffs' claims about the 2006 search were based on the same facts as Morad's [the successful plaintiff] claims . . . whether the rest of plaintiffs are considered "prevailing parties" or not does not affect what fees would be appropriate." *Id.*

The Court finds the analysis in *Elusta* analogous to this case. The Court recognizes that for the purposes of § 1988, only Barry Gilfand and Scott Lowrance can be considered to be "prevailing plaintiffs." However, because all of the Plaintiffs' claims were based on the same facts as Barry's and Scott's claims, whether Aaron and Adam are considered "prevailing parties" does not affect what fees are appropriate. The Court therefore, rejects Defendants' objections to Antholt's fees for hours spent pertaining to Adam's and Aaron's claims.

Finally, Defendants object to 7 hours Antholt requests for waiting for the jury's verdict and .5 hours spent waiting for a cancelled deposition. The Court agrees with Defendants that this time is unreasonable and accordingly, reduces Antholt's hours for such tasks. *See Warfield*, 733 F.Supp.2d at 959-60.

Thus, the Court reduces Antholt's hours to 634.49 and awards $222,071.50 in fees (634.49 hours at $350.00 per hour).

### d.   James Baranyk

Baranyk seeks fees for 386.8 hours at a rate of $300 per hour. Defendants argue that the appropriate rate for Baranyk is $275 per hour and contest 112.25 of his hours.

Defendants object to 65.25 of Baranyk's hours because Defendants claim these hours relate to unsuccessful claims or unsuccessful Plaintiffs. For the reasons previously articulated, the Court disagrees and refuses to reduce Baranyk's hours for these reasons. *See Wallace*, 957 F.2d at 339; *see also*, *Elusta*, 760 F.Supp.2d at 797.

Defendants also object to 17 of Baranyk's hours because Defendants claim these entries are impermissibly vague. The Court agrees with Defendants' objections with respect to Baranyk's entries that merely state "review case related filings," and entries which include the descriptions "other pm work." *See Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may . . . strike the problematic entries . . . ");

*see also*, *United Cent. Bank v. Kanan Fashions, Inc.*, No. 10-CV-331, 2012 WL 1409245 at *6 (N.D. Ill. Apr. 23, 2012) (reducing hours where entries merely stated "prepared for hearing").

Because of this, the Court reduces Baranyk's requested hours by 17 hours. In addition to this reduction, the Court also strikes Baranyk's entry of 5 hours for jury deliberations. Thus, the Court reduces Baranyk's hours to 364.8 hours.

Defendants also object to Baranyk's requested hourly rate of $300. Defendants argue this rate should be reduced to $275 per hour in light of the amount of time that has passed since Baranyk's last civil rights case, *Thompson v. City of Chicago*, No. 07-C-1130, 2011 WL 2923694 (July 18, 2011), which he worked on with Antholt. In *Thompson*, Antholt was awarded a rate of $325 an hour and Baranyk was awarded a rate of $250 an hour. *Id.* Here, Plaintiffs seek a rate of $350 an hour for Antholt, based on the time that has passed and her additional experience since *Thompson*. However, Plaintiffs seek a rate of $300 an hour for Baranyk; a $50 per hour increase from his awarded rate in *Thompson*. Plaintiffs fail to provide an explanation as to why Antholt deserves a $25 per hour increase and Baranyk deserves a $50 per hour increase. As such, the Court reduces Baranyk's rate to $275 per hour and awards Baranyk $100,320.00 in fees, (364.8 hours at $275.00 per hour).

### e. Emily J. Stine

Stine seeks an award for 38.5 hours at a rate of $200 per hour. Defendants do not object to Stine's rate, but argue that the

Court should strike 3.5 of Stine's requested hours. Defendants contend 2.5 of these hours involve clerical tasks such as composing spreadsheets and investigating addresses. The Court agrees and reduces Stine's hours to 36.5. The Court rejects Defendants' other objection concerning Stine's time spent reading Aaron Gilfand's transcript. Thus, the Court awards Stine $7,300.00 in fees (36.5 hours at $200 per hour).

### f. Sally Saltzberg

Saltzberg petitions the Court for fees for 237.4 hours at a rate of $375.00 per hour. Defendants object to both her rate and hours, arguing that the appropriate rate for Saltzberg is $300 per hour and 92.2 of her hours are unreasonable.

The Court agrees with Defendants' objections regarding the hours Saltzberg seeks for the time she spent dealing the press. *See Dupuy v. McEwen*, 648 F.Supp.2d 1007, 1021 (N.D. Ill. 2009) (subtracting 100.5 hours of plaintiff's fee petition for hours spent communicating with the press because "[g]enerally, attorneys fees are awarded only for time spent on the litigation itself.") Accordingly, the Court reduces 15 hours from Saltzberg's hours.

The majority of Defendants' other objections are grounded on the basis that Saltzberg's entries provide an insufficient description of the tasks performed. The Court disagrees with many of these objections, but concedes that a few of Saltzberg's entries are impermissibly vague. As an example, the Court finds Saltzberg's entries which merely state "prepare for court" and

"deposition preparation" to be similar to the entries in *Kanan Fashions, Inc.*, where the court reduced hours for entries that merely stated "prepared for hearing." *Kanan Fashions, Inc.* No. 10-CV-331, 2012 WL 1409245 at *6. As such, the Court strikes an additional 15.5 hours from Saltzberg's requested hours.

Defendants next argue that Saltzberg requested rate of $375 should be reduced to $300 because Saltzberg has only been practicing civil rights law since 1994 and her involvement in this case was limited to the early stages of the litigation. However, Defendants fail to explain how a reduction to Saltzberg's rate makes sense in light of the fact that in 2007 Saltzberg obtained an hourly rate of $350 in *Klipfel v. Gonzalez*, No. 94-C-6415, 2006 WL 1697009 (N.D. Ill. June 6, 2006). Because of this, and because of Defendants' prior concessions that the Court should award Antholt and Baranyk a $25 increase from the rate they were awarded for a 2011 case, the Court finds Saltzberg's requested rate of $375 reasonable. Pursuant to these findings, the Court awards Saltzberg $77,587.50 in fees (206.9 hours at $375 per hour).

### g. Steven Fine

Fine seeks an award of fees for 192.15 hours at a rate of $300 per hour. Defendants do not object to Fine's requested rate, but object to 99.75 of his claimed hours.

The majority of Defendants' objections surrounding Fine's hours lie in the fact that his hours are duplicative of Saltzberg's. The Seventh Circuit has noted that duplicative time

in fee petitions is frequently inappropriate because such time could not reasonably be billed to a client. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Thus, the Seventh Circuit has instructed district courts to "scrutinize a fee petition carefully for duplicative time." *Id.; see also*, *Schlacher v. Law Offices of Philip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009). In the same breath, the Seventh Circuit recognizes that merely because two lawyers bill for the same task does not mean those hours must be deducted. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008).

With these concepts in mind, the Court strikes 34.9 hours of Fine's hours as duplicative. The Court finds these entries unreasonable mainly because the entries are for the exact same dates and involve the exact same tasks as Saltzberg's entries. As an example, on February 8, 2008, Fine claims he spent 4 hours meeting with Adam Mastrucci and Scott Lowrance. Yet, on this same day, Saltzberg billed 4 hours for Adam's and Scott's deposition. Defendants point out that given Saltzberg's and Fine's level of experience, it is unreasonable for both attorneys to bill twice for their attendance at all of the depositions. *See Gibson v. City of Chicago*, --- F.Supp. 2d ---, No. 10-C-5310, 2012 WL 2775025 at *9 (July 6, 2012) (striking as duplicative a portion of plaintiffs' attorneys entries because plaintiffs failed to meet their burden of proof regarding the reasonableness of such entries).

The Court also strikes Fine's 2.5 hour entry for telephone calls with the media, and strikes 8.05 of Fine's hours as impermissibly vague. The Court finds descriptions such as "Re: 1983 cases," "Calls with client & file re," and "continued complaint" insufficient in detail for the purposes of § 1988. *See Kanan Fashions, Inc.*, No. 10-CV-331, 2012 WL 1409245 at *6.

The Court therefore awards Fine $44,010.00 in fees, (146.7 hours at $300.00 per hour).

### h. Kathleen Johnson-Silk

Johnson-Silk is Plaintiffs' paralegal. She seeks fees for 52.95 hours at a rate of $100 per hour. Defendants do not object to the requested rate, but argue that the Court should strike 48.8 of her requested hours as unreasonable. Defendants argue these hours were for clerical tasks that could have been delegated to a non-professional assistant.

The relevant inquiry for requested paralegal fees is "whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996). The Seventh Circuit instructs district courts to disallow time spent on what are essentially "clerical" or secretarial tasks. *Id.; see also Spegon*, 175 F.3d at 552. In this case, the tasks for which Plaintiffs seeks paralegal fees include proofreading, document preparation, organizing files, and copying and faxing documents.

The Court finds these tasks clerical in nature and therefore strikes 41 of Johnson-Silk's 52.95 hours. Thus, the Court awards Johnson-Silk $1,195.00 (11.95 hours at $100.00 per hour).

After examining the reasonableness of each of Plaintiffs' attorneys' hours and rates, the Court finds the Plaintiffs' modified lodestar to equal $778,604.00

### 2. *Increasing or Decreasing Based on Modified Lodestar*

Upon reaching an amount using the lodestar determination, the Court may then adjust that award in light of the plaintiff's "level of success." *See Hensley*, 461 U.S. at 436. In *Hensley*, the Supreme Court set forth the basic approach for district courts to use in determining whether to adjust the modified lodestar amount to account for a party's limited success. *See id.* at 434-38. In a case involving a single claim or related claims, the court is directed to ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434. In so doing, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435; *see also Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998). When a plaintiff obtains an excellent result, his attorney should recover a fully compensable fee (*i.e.*, the modified lodestar amount), and the fee "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. However, "[i]f

. . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. In such a case, the courts have discretion to reduce the modified lodestar amount to reflect the degree of success obtained. *See id.* at 436-37. Notwithstanding this, the Seventh Circuit instructs that, "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011).

Defendants contend that after the Court applies the *Hensley* factors the Court should reduce Plaintiffs' award by 85 percent. Defendants argue that the Plaintiffs' failure to accept a $100,000 settlement offer in 2008 and the fact that only two of the four Plaintiffs prevailed on their § 1983 claims justifies this reduction. Plaintiffs disagree and claim that a reduction to this extent would ignore the purpose of § 1988. Plaintiffs further explain that if the Court compares Plaintiffs' requested fees with the Defendants' fees, a reduction would be inappropriate.

### a. The May 2008 Settlement Offer

Defendants argue the Plaintiffs' rejection of the May 2008 settlement offer is indicative of the Plaintiffs' limited success at trial, and is evidence that supports a reduction in Plaintiffs' fee award. Plaintiffs assert that the Defendants' argument concerning such a settlement offer is not relevant here because an "informal offer is a far cry from a binding Rule 68 offer of

judgment and is not a relevant consideration . . ." Pls.' Reply in Supp. of Pet. for Attorneys' Fees, Costs, and Expenses at 6.

The Court agrees with Plaintiffs insofar as Defendants' settlement offer does not carry the same weight as a Rule 68 offer of judgment. *See Cole v. Wodziak*, 169 F.3d 486, 487-88 (7th Cir. 1999) (finding it was "clear error" when a judge cut more than $26,000 from the lodestar because of a settlement offer because the judge "gave oral negotiations the same effect as a written offer of judgment under Federal Rule Civil Procedure 68."). However, the Seventh Circuit also instructs that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees even where Rule 68 does not apply." *Moriaty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000). "[A]n offer is substantial if . . . the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Id.*

Here, Defendants' allegedly offered Plaintiffs $100,000 in 2008 to settle the case. The jury's total award for Plaintiffs was approximately $34,000. While the Court recognizes that this settlement award is clearly greater than the jury's compensatory and punitive damage award, the Court does take into account that $34,000 plus attorneys' fees "could produce a higher total" than $100,000 without attorneys' fees. *See Carroll v. DeTella*, No. 96-CV-2371, 1999 U.S. Dist. LEXIS 9515 at *8 (N.D. Ill. June 21, 1999). Nonetheless, pursuant to Seventh Circuit precedent, the

Court finds the Plaintiffs' rejection of the 2008 settlement offer evidence that Plaintiffs' attorneys unduly prolonged this litigation and a reduced fee award is appropriate. *See id.* (incorporating the "prolongation-of-litigation factor into the disallowance of trial-related fees incurred . . . because a jury awarded $3,000.00 to the plaintiff but the plaintiff rejected a $5,000.00 settlement offer prior to trial.").

### b. Plaintiffs' Limited Success at Trial

*Hensley* instructs that where plaintiffs prevail on only some of their interrelated claims, as is the case here, the court "may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. First, the Court must decide whether a downward adjustment of Plaintiffs' lodestar is proper under the circumstances. *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). Second, if the Court deems a reduction appropriate, the Court must determine the reasonable amount to reduce the fees given the results actually obtained by Plaintiffs. *Id.*

Regarding the first inquiry, the Court concludes that while Plaintiffs are the "prevailing parties" for the purposes of Section 1988, they only achieved partial success, thus warranting a downward adjustment of attorneys' fees. Plaintiffs prevailed on only 9 of the 34 claims which were submitted to the jury. Additionally, the jury awarded Plaintiffs a total of approximately $34,000 in both compensatory and punitive damages even though Plaintiffs sought three-to-five times this award. Moreover, the

Court finds it relevant that only two of the four Plaintiffs prevailed on their Section 1983 claims. These facts taken in conjunction with Plaintiffs' rejection of the 2008 settlement cause the Court to conclude a reduction in the lodestar figure is appropriate. *See Gibson v. City of Chicago*, --- F.Supp.2d ---, No. 10-C-5310, 2012 WL 2775025 at *12-13 (N.D. Ill. July 6, 2012) (reducing the lodestar amount 35% where a plaintiff prevailed on his false arrest claim, but failed to prevail on his excessive force and malicious prosecution claims and was only awarded $7,500).

The Court now turns to the difficult task of determining what amount to reduce the lodestar due to Plaintiffs' partial success. The Seventh Circuit admits "[p]recision is impossible to reach in such calculations[.]" *Sottoriva*, 617 F.3d at 976. The lack of precision is largely due to the Supreme Court's express instructions discouraging the use of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley*, 461 U.S. at 435.

Defendants propose a reduction of 85% based on their argument that the Plaintiffs rejected a substantial settlement offer and only two of the four Plaintiffs prevailed in their § 1983 claims. Plaintiffs' argue that no reduction is appropriate. The Court finds both arguments unpersuasive and instead concludes a reduction of 40% is appropriate. The conclusion is based on four main considerations. First, the jury's verdict, while certainly not

insubstantial, was not an "excellent" result for the Plaintiffs. *Id.* Second, Plaintiffs' rejection of the $100,000 settlement offer in 2008 certainly would have had the effect of saving both the parties and the Court time and resources. Third, after comparing the Defendants' fees with the Plaintiffs' fees, the Court finds such an amount reasonable. *See* Pls.' Fee Pet.; Ex. Q, Ex. R, Ex. S. Finally, the Court considers the purpose behind fee shifting statutes such as Section 1988 "which encourage private enforcement of laws designed to advance civil rights." *Gibson*, 2012 WL 2775025 at *13. Based on these considerations, the Court reduces the lodestar amount by 40% ($311,441.60) to $467,162.40.

### 3. Costs

Finally, in their initial petition Plaintiffs seek "taxable costs" and "expenses." Yet, in their petition Plaintiffs fail to articulate whether they are seeking costs under Federal Rule of Civil Procedure 54 or merely expert fee expenses pursuant to Section 1988. It is clear Defendants' were also confused as to Plaintiffs' costs requests. In their response to Plaintiffs' fee petition Defendants stated,

> Defendants request that this Court enter an order providing that each party is to bear his own costs . . . If Plaintiffs chose to pursue their bill of costs in their Reply, rather than agreeing that each side should bear their own costs, these Defendants would like to reserve their right to file a Sur-reply, as many of the costs requested by Plaintiffs in their Petition are clearly objectionable . . .

Certain Defs.' Resp. to Pls.' Pet. for Attorney Fees and Expenses at 18.

In their reply, Plaintiffs' fail to address Defendants' request for each party to bear their own costs and in fact, fail to even mention costs at all. Instead, Plaintiffs merely added the word "Costs" to the title of their reply. *See* [Dkt. 546]. The word "Costs" was however, not in Plaintiffs' original petition for fees. *See* [Dkt. 509-1.]. In addition to this lack of clarity, the Court agrees with Defendants with respect to their objections to some of Plaintiffs' "costs" being unrecoverable pursuant to Rule 54. As an example, Plaintiffs include airline tickets for depositions, medical records, and records from various places of Plaintiffs' employment. *See* [Dkt. 511-14, at 9-12]. These costs are not recoverable under Rule 54 or Section 1988. *See* Fed. R. Civ. P. 54; 28 U.S.C. § 1920; 42 U.S.C. § 1988. Moreover, Plaintiffs failed to supply the Court a Bill of Costs with sufficient information for the Court to determine what costs are reasonable and necessary. Instead, Plaintiffs only attached a spreadsheet as an exhibit to their fee petition. *See* [Dkt. 511-14; Ex. N].

Accordingly, to the extent that Plaintiffs' fee petition also seeks an award of costs, the Court denies such costs. *See Se-Kure Controls, Inc. v. Vanguard Prods. Group*, No. 02-C-3767, 2012 U.S. Dist. LEXIS 97136 at *17 (N.D. Ill. July 5, 2012) ("Simply pointing the Court to an exhibit containing numerous invoices is not sufficient documentation of costs and does not provide the Court

with the information necessary to determine whether the costs were necessary or were made for the sake of convenience.").

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Denies Defendants Barnes' and Powers' Fee Petition and Bill of Costs. [Dkt. 513 & 514];

2. Denies Defendants Woosely's and Kereakes' Bill of Costs. [Dkt. 508];

3. Denies Defendant City of Chicago's Bill of Costs. [Dkt. 498]; and

4. Grants in part and denies in part Plaintiffs' Fee Petition and awards Plaintiffs the sum of $467,162.40 for fees and costs. [Dkt. 509-1.]


**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**    11/19/2012

- 39 -